**Stephanie C. Kucera**, OSB No. 165509
E-Mail: sck@hartwagner.com
**Zachariah H. Allen**, OSB No. 122729
E-Mail: zha@hartwagner.com
**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, OR 97702
Telephone: (541) 548-6044
Fax: (541) 548-6034

      Of Attorneys for Defendants City of
      Medford, Brian Sjothun, Randy Sparacino,
      Justin Ivens, Darrell Graham, Geoff
      Kirkpatrick, Trevor Arnold and Arturo Vega

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **STABBIN WAGON,** an Oregon public benefit corporation; **MELISSA JONES,** an individual; and **SAMANTHA STRONG**, an individual,<br><br>          Plaintiffs,<br><br>    v.<br><br>**CITY OF MEDFORD,** a municipal corporation; **BRIAN SJOTHUN,** an individual; **RANDY SPARACINO,** an individual; **JUSTIN IVENS,** an individual; **DARRELL GRAHAM,** an individual; **GEOFF KIRKPATRICK,** an individual; **TREVOR ARNOLD,** an individual; **ARTURO VEGA,** an individual; **RYAN MALLORY,** an individual; and **JOHN AND JANE DOES 1-9,** individual employees or agents of the City of Medford,<br><br>          Defendants. | Case No. 1:25-cv-01632-MTK<br><br>**DEFENDANTS CITY OF MEDFORD, BRIAN SJOTHUN, RANDY SPARACINO, JUSTIN IVENS, DARRELL GRAHAM, GEOFF KIRKPATRICK, TREVOR ARNOLD AND ARTURO VEGA'S MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

MOTIONS ........................................................................................................... 1

LEGAL MEMORANDUM ................................................................................ 2

   I.   Factual Background ............................................................................... 2

   II.  Legal Standard....................................................................................... 4

   III.  Plaintiffs' First Amendment claim is untimely and fails to state a claim for relief............ 4

      A.  The "Shotgun" complaint fails to plausibly allege that any individual defendant caused a material adverse action against any plaintiff................................................. 5

      B.  Plaintiffs fail to allege a material adverse action against any defendant or any causal connection to protected First Amendment conduct. ..................................................... 6

      C.  Plaintiffs' allegations related to stops, arrests, citations, exclusion orders, other enforcement actions fail to state a claim........................................................... 9

      D.  Plaintiffs' assertion that Defendants' expression of opinion on use of public funds fails to state a claim................................................................................. 9

      E.  Allegations related to surveillance and monitoring fail to state a claim.................... 12

   IV.  Plaintiffs' *Monell* claim fails to state a claim for relief. ................................................. 16

      A.  First Amendment allegations are insufficient to state a claim. ................................... 17

      B.  Fourth Amendment *Monell* allegations are insufficient to state a claim. .................. 19

   V.  Plaintiff's Section 1985(3) conspiracy allegations fail to state a claim for relief............ 21

      A.  Plaintiffs fail to allege facts plausibly showing a conspiracy. ................................... 22

      B.  Plaintiffs fail to articulate a viable claim that Defendants deprived any person or any class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. ..................................................................... 23

      C.  Plaintiffs fail to sufficiently allege any 1983 violation defeats the 1985(3) conspiracy claim because plaintiffs have not alleged suffering the deprivation of any right or privilege of a citizen of the United States. ................................................... 29

   VI.  The "Doe" defendants must be dismissed. ....................................................... 29

   CONCLUSION................................................................................................ 31

**HART WAGNER LLP**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) ............................... 5

*Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................. 5

*AE v. Cnty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) ...................................................................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 4, 5, 17

*Autobidmaster, LLC v. Alpine Auto Gallery, LLC*,
    2015 WL 2381611 (D. Or. May 19, 2015) ............................................................................... 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 4, 22

*Blair v. Bethel School District*, 608 F.3d 540 (9th Cir. 2010) .......................................................... 4

*Bonelli v. Grand Canyon Univ.*, 28 F.4th 948 (9th Cir. 2022) ............................................. 8, 9, 20

*Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) ........................................................................... 7

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) ................................................ 25

*Briley v. California*, 564 F.2d 849 (9th Cir. 1977) ........................................................................ 26

*Burns v. County of King,* 883 F.2d 819 (9th Cir. 1989) ................................................................. 22

*Caldeira v. Cty. of Kauai*, 866 F.2d 1175 (9th Cir. 1989) ...................................................... 22, 29

*Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711 (9th Cir. 1981) ............. 24, 26, 27

*Carey v. Brown*, 447 U.S. 455 (1980) ........................................................................................... 10

*Cassettari v. Nev. Cnty.*, 824 F.2d 735 (9th Cir. 1987) ................................................................. 29

*Cf. Maynard v. City of San Jose*, 37 F.3d 1396 (9th Cir. 1994) ................................................... 28

*Cf. Unity v. City of Springfield*, 2026 U.S. Dist. LEXIS 12592 (D. Or. Jan. 23, 2026) .............. 25

*Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) ............................................................................ 20

*DeSantis v. Pacific Telephone & Telegraph Co.*, 608 F.2d 327 (9th Cir. 1979) ..................... 28, 29

*Dungan v. Cty. of Shasta*, 2025 WL 1093213 (E.D. Cal. Apr. 11, 2025) ................................ 14, 19

*Espinoza v. City of Lompoc*, 2022 U.S. Dist. LEXIS 235382 (C.D. Cal. July 25, 2022) ......... 9, 21

*Faulkner v. Valenzuela*, 2017 U.S. Dist. LEXIS 118145 (E.D. Cal. July 27, 2017) .................... 26

*Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187 (9th Cir. 1970) ................................. 30

*Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) ...................................................................... 17

*Frazier v. Int'l Longshoreman's Union Local #10*, 116 F.3d 1485 (9th Cir. 1997) ..................... 22

*Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054 (C.D. Cal. 2024) ............................................. 23

*Gamble v. Escondido*, 104 F.3d 300 (9th Cir. 1996) ..................................................................... 27

*Gerritsen v. De La Madrid Hurtado*, 819 F.2d 1511 (9th Cir. 1987) ..................................... 24, 29

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ................................................................ 21, 29

*Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041 (9th Cir. 1994) ............................. 10, 11, 12

*Goldsberry v. N. Bay Reg'l Hosp.*, 2025 U.S. Dist. LEXIS 57773
    (E.D. Cal. Mar. 27, 2025) ...................................................................................................... 26

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) ......................................................... 21, 23, 24, 25

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001) ...................................... 13

*Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) ......................................................... 13

*Herd v. Cty. of San Bernardino*, 311 F. Supp. 3d 1157 (C.D. Cal. 2018) .............................. 17, 19

*Holgate v. Baldwin*, 425 F.3d at 671 (9th Cir. 2005) .................................................................... 24

**HART WAGNER LLP**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

*Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468 (2022)..................................................... 4

*Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136 (9th Cir. 2020)................................ 18

*Imamoto v. City & Cty. of Honolulu*, 2025 U.S. Dist. LEXIS 181203
    (D. Haw. Sep. 16, 2025) .............................................................................................. 27

*Kahawaiolaa v. Norton*, 386 F.3d 1271 (9th Cir. 2004)..................................................... 24

*Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621 (9th Cir. 1988) ......................................... 22

*Kealoha v. Espinda*, WL 741570 (D. Haw. Feb. 24, 2017)................................................. 30

*Lacey v. Maricopa*, 693 F.3d 896 (9th Cir. 2012) ........................................................... 22

*Laird v. Tatum*, 408 U.S. 1 (1972)...................................................................... 7, 15

*Larson v. Carpenter*, 2022 U.S. Dist. LEXIS 162876 (D. Or. Sept 9, 2022).............................. 16

*Larson v. Carpenter*, 2022 U.S. Dist. LEXIS 102171 (D. Or. June 8, 2022)............................... 16

*Laycook v. Cty. of Fresno*, 2018 U.S. Dist. LEXIS 177006 (E.D. Cal. Oct. 15, 2018)................ 26

*Lopez v. Arrowhead Ranches*, 523 F.2d 924 (9th Cir. 1975)................................................ 26

*Lukovsky v. City & County of San Francsico*, 535 F.3d 1044 (9th Cir. 2008) ............................. 8

*Mabe v. San Bernardino Cty.*, 237 F.3d 1101 (9th Cir. 2001)............................................... 17

*McCullen v. Coakley*, 573 U.S. 464 (2014) .................................................................. 10

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ............................................. 4, 16, 17

*Mulligan v. Nichols*, 835 F.3d 983 (9th Cir. 2016).................................................. 7, 10, 11

*NAACP v. Alabama*, 357 U.S. 449 (1958)..................................................................... 8

*NAACP* v. *Claiborne Hardware Co.*, 458 U.S. 886 (1982)................................................... 10

*Navarro v. Block*, 72 F.3d 712 (9th Cir. 1995)............................................................... 18

*Nieves v. Bartlett*, 587 U.S. 391 (2019) ................................................................. 9, 21

*Nissen v. Lindquist*, 2017 WL 26843 (W.D. Wash. Jan. 3, 2017) ............................................ 5

*Nunez v. City of Los Angeles*, 147 F.3d 867 (9th Cir. 1998) ................................................ 10

*O'Handley v. Weber*, 62 F.4th 1145 (9th Cir. 2023)......................................................... 23

*Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916 (9th Cir. 2004) ........................................... 29

*Quinn v. Legacy Health*, 2024 U.S. Dist. LEXIS 26802 (D. Or. Feb. 13, 2024) .......................... 30

*Raiser v. City of Murrieta*, 2020 U.S. Dist. LEXIS 204315 (C.D. Cal. Nov. 2, 2020) ............... 27

*Sanchez v. City of Fresno*, 914 F.Supp.2d 1079 (E.D. Cal. 2012) .......................................... 26

*Schultz v. Sundberg*, 759 F.2d 714 (9th Cir. 1985)......................................................... 29

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) .......................................... 21, 23

*Shannon v. Rojas*, 2022 U.S. Dist. LEXIS 251582 (E.D. Cal. Nov. 7, 2022) ............................. 27

*Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir. 2006) ............................................. 15

*Steshenko v. Albee*, 70 F. Supp. 3d 1002 (N.D. Cal. 2014) ................................................ 23

*Thielman v. Kotek*, 2024 WL 2700608 (D. Or. May 24, 2024) ............................................. 15

*Trerice v. Pedersen*, 769 F.2d 1398 (9th Cir. 1985)........................................................ 28

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996).............................................................. 18

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825 (1983)......................... 24

*United States v. Chan-Jimenez*, 125 F.3d 1324 (9th Cir. 1997) ............................................ 20

*United States v. Hays*, 515 U.S. 737 (1995) ................................................................ 26

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)............................................. 11, 13

*United States v. Sandoval*, 200 F.3d 659 (9th Cir. 2000) .................................................. 19

*United States v. Weber*, 599 F. Supp. 3d 1025 (D. Mont. 2022) ............................................ 19

*United States v. Yang*, 958 F.3d 851 (9th Cir. 2020)....................................................... 19

Page iii –

*Wagda v. Town of Danville*, 2016 U.S. Dist. LEXIS 147108 (N.D. Cal. Oct. 24, 2016) ............ 26
*Wallace v. Kato*, 549 U.S. 384 (2007) ....................................................................................... 20
*Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981) ................................................ 2, 4

**Statutes**

42 U.S.C. § 1985(3) ................................................................................................................... 21
42 U.S.C. § 2000e-3(a) .............................................................................................................. 28
42 U.S.C. § 2000e-5 ................................................................................................................... 28
ORS 12.110(1) .............................................................................................................................. 8
ORS 195.530 ............................................................................................................................... 28

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 2, 4, 31
Fed. R. Evid. 201 ........................................................................................................................ 13
U.S. Const. Amend. IV ............................................................................................................... 19

**HART WAGNER LLP**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

## LR 7-1 CERTIFICATE

The undersigned certifies conferring with plaintiffs' counsel in a good-faith effort to resolve the issues presented, but no agreement was reached and the court's ruling is necessary.

## MOTIONS

Plaintiffs bring two claims under 42 U.S.C. § 1983 against the City of Medford and several of its employees, including the former Mayor, former City Manager, several members of the Medford Police Department ("MPD"), and nine unidentified John and Jane Doe defendants (collectively, the "City Defendants"), asserting that the City Defendants retaliated against plaintiffs for their First Amendment protected speech and conduct around homelessness and drug-use issues.

They also assert that the City Defendants entered into a conspiracy under 42 U.S.C. § 1985(3) with a private blogger and podcaster, Ryan Mallory, alleging that all defendants conspired to deprive plaintiffs of their civil rights in retaliation for their advocacy.

Defendants move to dismiss each claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiffs' "shotgun" complaint fails to plausibly allege that any City defendant unlawfully retaliated against any plaintiffs. It also fails to allege that the City maintained any custom, policy, or practice that caused a violation of plaintiff's constitutional rights. There are no facts to plausibly allege a conspiracy against any "class" protected by Section 1985(3). And there are no allegations at all about any of the Doe Defendants.

These motions are supported by the pleadings on file, the following legal memorandum, and the attached declaration of Stephanie C. Kucera ("Kucera Dec.").

Page 1 – **MEDFORD DEFENDANTS' MOTION TO DISMISS**

**LEGAL MEMORANDUM**

In accordance with the standard of review under Fed. R. Civ. P. 12(b)(6), all factual allegations are taken from the face of the complaint and assumed to be true for purposes of this motion. *E.g.*, *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## I.    Factual Background

Plaintiffs Melissa Jones and Samantha Strong describe themselves as activists for causes such as housing rights, LGBTQIA2S+ rights, reproductive justice, drug decriminalization, and harm reduction. (Pl.'s Second Am. Compl. ("SAC") at ¶¶ 12, 13.) In 2020, Jones founded the plaintiff Stabbin' Wagon, a nonprofit public benefit corporation. (SAC at ¶ 56.) The Stabbin' Wagon, named in reference to the syringes handed out to intravenous drug users, provides "harm reduction, public health outreach, and crisis support services to unhoused and at-risk populations throughout Southern Oregon." (SAC at ¶¶ 11, 56.) The Stabbin' Wagon considers itself unique among other similar entities because of its policy of not collaborating with police and provides its services with no requirement for abstinence, "respecting autonomy and self-determination rather than pressuring people into treatment." (SAC at ¶¶ 59, 60.)

Plaintiffs broadly allege that they engaged in expressive "public health outreach and advocacy" that was critical of law enforcement, including "organizing events and protests, speaking at public meetings and public forums, publishing political speech and commentary, conducting harm reduction outreach, recording on-duty police officers, and advocating for systemic housing and health care reforms." (SAC at ¶¶ 62, 64.) The only specific examples provided are: (1) the Stabbin' Wagon recording police activity and posting it to their social media account in July 2021; and (2) plaintiffs "oinking" toy pigs when police spoke at an unspecified Medford City Council meeting. (SAC at ¶¶ 65, 67–72.)

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

Plaintiffs claim that the City was "diametrically opposed" to plaintiffs' views on certain drug-related topics, such as Oregon's Measure 110 decriminalization initiative.  (SAC at ¶ 4.)  Plaintiffs allege that the City, through the MPD and municipal officials, "has engaged in a sustained campaign of harassment, intimidation, and retaliation against Plaintiffs, seeking to suppress their public health work and chill their protected First Amendment activity."  (SAC at ¶ 74.)  This campaign included defendants' "private and public opposition" to the Oregon Health Authority's ("OHA") award of a $1.5 million grant to the Stabbin' Wagon to open a respite center in 2023.  (SAC at ¶¶ 96–100.)

In addition to the allegations about the City Defendants, plaintiffs also allege that they were targeted by co-defendant Ryan Mallory, the founder and owner of a private media entity known as ThiefHunter Labs LLC.  (SAC at ¶¶ 101–153.) The complaint asserts that Mallory was pro-law enforcement, generally aligned with the views of MPD and the City on Oregon's Measure 110 and related issues, and that he has used his online outlets, including the Facebook "Scanner Group" and podcasts, to promote and amplify pro-law enforcement views.  (SAC at ¶¶ 107–113.)  For instance, it alleges that Mallory used his platforms to post negative information about plaintiffs in September 2023, and that he posted news articles to "foment animosity and retaliation against Plaintiffs" in January 2014.  (SAC at ¶¶ 129, 136.)

Each plaintiff alleges three claims for relief.  First, a 42 U.S.C. § 1983 claim for unlawful retaliation in violation of the First Amendment against each of the individual City Defendants: Sparacino (former Medford Mayor); Sjothun (former Medford City Manager) Ivens (Chief of Police); Graham (Deputy Chief of Police); Kirkpatrick (MPD Lieutenant); Arnold (Deputy Chief of Police); and Vega (MPD officer).  (SAC at ¶¶ 15–21; 154–162.)

Second, a Section 1983 claim against the City of Medford under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), claiming that City policies, customs, and practices caused violations of plaintiffs' First and Fourth Amendment rights.

Third, a 42 U.S.C. § 1985(3) claim that each individual defendant joined a conspiracy to violate each plaintiffs' civil rights.

## II.      Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible when it allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept the truth of conclusory legal allegations cast as factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## III.     Plaintiffs' First Amendment claim is untimely and fails to state a claim for relief.

The First Amendment generally prohibits government officials from retaliating against individuals for engaging in protected speech. *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022). To state a retaliation claim, a plaintiff must show that: (1) she engaged in constitutionally protected activity; (2) as a result, she was subjected to an adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted).

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

### A. The "Shotgun" complaint fails to plausibly allege that any individual defendant caused a material adverse action against any plaintiff.

Vicarious liability is inapplicable to Section 1983 claims; a plaintiff must plead facts plausibly establishing that each government-official defendant, through that official's *own individual actions*, has violated the Constitution. *Iqbal*, 556 U.S. at 676 (emphasis added).

The complaint is a mass of undifferentiated, nonspecific, and conclusory allegations of retaliation against three different plaintiffs by seven different named defendants holding different roles with the City over a span of years. "Pleadings that seek to overwhelm defendants with an unclear mass of allegations and make it difficult to impossible for the defendants to make informed responses to the plaintiff's allegations are considered 'shotgun' pleadings.'" *A.B. v. Hilton Worldwide Holdings Inc*., 484 F. Supp. 3d 921, 943 (D. Or. 2020) (citing *Autobidmaster, LLC v. Alpine Auto Gallery, LLC*, No. 3:14-cv-1083-AC, 2015 WL 2381611, at *2 (D. Or. May 19, 2015)). So too "is a complaint that asserts claims against 'multiple defendants without specifying which of the defendants are responsible for which acts or omissions.'" *Id*. (quoting *Nissen v. Lindquist*, No. C16-5093 BHS, 2017 WL 26843, at *4 (W.D. Wash. Jan. 3, 2017)). "[W]hen a pleading fails to allege what role each Defendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations.'" *Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (internal quotation marks omitted)). And a complaint may be a "'shotgun' pleading if it fails to connect its factual allegations to the elements comprising plaintiff's claims such that it denies the parties adequate notice of the allegations supporting each cause of action." *A.B. v. Hilton*, 484 F. Supp. 3d at 943 (citations omitted).

Plaintiffs' complaint fails to allege facts about how each defendant specifically retaliated against each plaintiff. Instead, it broadly and generally asserts that the "City of Medford" was

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

opposed to plaintiffs' views and that the "City of Medford and its agents" or "the City of Medford through its police department and municipal officials and employees" "engaged" in a "sustained campaign of harassment." (SAC at ¶¶ 3, 73, 74.) It then asserts, without differentiation, that "plaintiffs" suffered several distinct types of allegedly adverse retaliatory actions at different times over a span of years, and attempts to hold each defendant liable to each plaintiff for each alleged category of retaliation over that time. (SAC at ¶ 155.)

For example, the complaint blanketly alleges that all defendants retaliated against all plaintiffs with "pretextual stops, unlawful arrests, and targeted citations." (SAC at ¶ 155 g.) However, the only facts about any "arrest" are that Jones was arrested in September 2020 by unidentified MPD officers, not any of defendants. (SAC at ¶ 77.) There are no allegations that Strong (or the Stabbin' Wagon) were ever arrested, stopped, or cited by anybody. And MPD officer Vega is the only defendant alleged to have a connection to *any* "stop" or "citation" of Jones in January 2021. (SAC at ¶ 79.)

For another example, the complaint blanketly alleges that the "MPD" retaliated against all plaintiffs by collecting dossiers about their "social media activity" in a series of allegations that do not even mention defendants Sjothun, Ivens, Arnold, or Vega. (SAC at ¶¶ 82–86.)

Plaintiffs do not plausibly state a claim with a "shotgun" complaint alleging that defendants, as an undifferentiated mass, are each responsible for every discrete act in an alleged "campaign" of retaliation against each plaintiff.

      **B.**    **Plaintiffs fail to allege a material adverse action against any defendant or any causal connection to protected First Amendment conduct.**

Even when they are carefully parsed, plaintiffs' nonspecific and undifferentiated allegations fail to state a retaliation claim, because there are no facts plausibly showing that any

defendant caused an actionable material adverse action against any plaintiff within the two-year statute of limitations.

An adverse action is deemed "material" if the conduct would chill a person of ordinary firmness from continuing to engage in the protected activity. *Boquist v. Courtney*, 32 F.4th 764, 783 (9th Cir. 2022). Normally, a material adverse retaliatory action in the non-employment context is the exercise of governmental power that is "regulatory, proscriptive, or compulsory in nature." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016) (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).

Plaintiffs list seven "adverse actions":

"1) targeted surveillance of protest groups, nonprofit groups, and social media accounts of local activists, including monitoring and documenting the protected speech and associations of Plaintiffs and other activities.

"2) Coordinating with third parties to undermine Plaintiffs' funding and professional relationships;

"3) Harassment;

"4) Patterned exclusion of disfavored service providers from city-sponsored communication channels and funding networks;

"5) Routine coordination between police, code enforcement, and nonprofit partners to marginalize those engaged in advocacy for unhoused and drug-using populations;

"6) Private and public disparagement;

"7) Pretextual stops, unlawful arrests, targeted citations, exclusion orders, and other enforcement actions." (SAC at ¶ 155.)

These can be grouped into three distinct types of conduct: (1) actions directed at plaintiffs, such as stops, arrests, citations; (2) disparagement and opposition to the Stabbin'

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

Wagon's OHA grant award; and (3) monitoring of plaintiffs' social media, speeches, and associations.[1]

Two points frame the analysis.  First, plaintiffs have no standing to assert the First Amendments rights of others. *NAACP v. Alabama,* 357 U.S. 449, 459 (1958).  The allegations about John Malaer and Stephen Douglas (SAC at ¶¶ 145–153) do not conceivably allege any retaliation against *plaintiffs*.  Neither do any of the other scattered allegations about third-parties, *e.g.,*, the arrest of a journalist (*Id.* at ¶ 78), that an MPD officer allegedly threatened an unidentified third-party activist (*Id.* at ¶ 72), or that MPD allegedly "spied on" other "non-violent activists and groups."  (*Id.* at ¶ 152.)

Second, any attempt to allege an adverse material action before September 11, 2023, the date two years prior to the initial complaint, is barred by the statute of limitations.  The statute of limitations for Section 1983 claims "is governed by the forum state's statute of limitations for personal injury actions," which is two years in Oregon.  *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 951 (9th Cir. 2022); ORS 12.110(1).  The "traditional" federal rule of accrual applies, such that the two-year period begins when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *Bonelli*, 28 F.4th at 952 (quoting *Lukovsky v. City & County of San Francsico*, 535 F.3d 1044, 1048 (9th Cir. 2008)).

---

[1] The allegation that defendants engaged in a "Patterned exclusion of disfavored service providers from city-sponsored communication channels and funding networks" does not neatly fit in one of these categories, but it also does not plausibly allege an adverse material action.  The only relevant fact alleged about this are that 'Over the years, MPD has excluded Stabbin' Wagon from official communications."  (SAC at ¶ 81.)  Removing the Stabbin' Wagon—not Strong or Jones—from a mailing list does not plausibly allege an act that would chill a person of ordinary firmness.  Nor, in any event, are there any facts alleged plausibly linking any defendant to the decision or plausibly showing that the decision was taken in response to any of plaintiffs' First Amendment conduct.

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

### C.    Plaintiffs' allegations related to stops, arrests, citations, exclusion orders, other enforcement actions fail to state a claim.

The only alleged "stops," "arrests," "citations," all occurred in 2020 and 2021. (SAC at ¶¶ 77–80.) A First Amendment retaliation claim based on an alleged "seizure" of a person accrue when the seizure happens. *Bonnelli*, 28 F.4th at 954. The two-year statute of limitations bars claims based on the 2020–21 incidents.

Moreover, there are no allegations that Strong or the Stabbin' Wagon were subjected to any of these things at any time: there are no allegations that any defendant caused, participated in, or had anything to do with, the 2020 arrest and 2021 stops and citation of Jones.

The one exception is that MPD officer Vega officer was allegedly involved with a stop of Jones in 2021. (SAC at ¶ 79.) Plaintiffs allege that Vega recognized Jones from an earlier encounter and that the stop was without "probable cause or reasonable suspicion." (*Id.*) These bare, conclusory, and speculative allegations do not plausibly allege that Vega's decision to stop plaintiff was born from hostility to plaintiff's protected speech.[2] *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's injury). There are no facts that Vega knew about or had any hostility for Jones's alleged First Amendment activities (the complaint does not specifically allege *any* expressive conduct by plaintiffs before the stop), which, again, and in any event, occurred well outside the statute of limitations.

### D.    Plaintiffs' assertion that Defendants' expression of opinion on use of public funds fails to state a claim.

---

[2] Nor do they plausibly allege that the stop was without reasonable suspicion or probable cause merely by saying that it was so. *See Espinoza v. City of Lompoc*, No. CV 21-08563 TJH, 2022 U.S. Dist. LEXIS 235382, at *7 (C.D. Cal. July 25, 2022) (allegation that officers lacked reasonable suspicion to detain is a legal conclusion that the Court need not accept as true).

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

Plaintiffs' claim that defendants retaliated by privately and publicly opposing the OHA grant is an impermissible effort to hold defendants liable for exercising their own First Amendment views.

The First Amendment is intended to preserve a "marketplace of ideas in which truth will ultimately prevail," and that marketplace is undermined if "public officials are prevented from responding to speech of citizens with speech of their own." *Mulligan*, 835 F.3d at 989 (citing *McCullen v. Coakley*, 573 U.S. 464 (2014)). Speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection. *NAACP* v. *Claiborne Hardware Co*., 458 U.S. 886, 913 (1982); *Carey* v. *Brown*, 447 U.S. 455, 467 (1980).

Restricting the ability of government decision-makers to engage in speech risks interfering with their ability to effectively perform their duties. *Mulligan*, 835 F.3d at 989. It also ignores the competing First Amendment Rights of the officials themselves. *Id.* It would be the "height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998). Accordingly, "claims involving government speech… warrant a cautious approach," and plaintiffs must meet a "high bar" to show that "speech by government officials is sufficiently adverse to give rise to a First Amendment retaliation claim." *Mulligan*, 835 F.3d at 989.

For those reasons, a public official's statements—*even when defamatory*—made in retaliation for protected speech are generally not actionable under the First Amendment, reputational damage from governmental counter-speech is not enough. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *Mulligan*, 835 F.3d at 989. Plaintiffs must also show (1) that defendants made a decision or took a state action affecting their "rights benefits, relationship or status with the state"; (2) that plaintiffs they were denied or lost a

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

"valuable governmental benefit or privilege"; or (3) that defendants' speech included a "threat, coercion, or intimidation," suggesting that "punishment, sanction, or adverse regulatory action" would imminently follow. *Mulligan*, 835 F.3d at 989–90; *Gini*, 40 F.3d at 1045.

Plaintiffs do not allege any of these things:

"97.… [C]ity of Medford and Medford Police Department leadership, including Defendants Sjothun, Ivens, Arnold, and Kirkpatrick, launched a coordinated effort to undermine and reverse the grant award. Internal emails show officers and city officials disseminated inflammatory, false, and disparaging information about Plaintiffs to other providers, state officials, and community leaders. High-ranking City and MPD officials engaged in a covert campaign to discredit the organization. Communications from Chief Ivens, Deputy Chief Arnold, and others expressed outrage over the award and attempted to mobilize public opposition and influence the OHA to rescind the grant."

"98.     The City's effort to interfere in the grant included communications with external parties, including executives of rival service providers. The campaign included portraying the Stabbin' Wagon as "untrustworthy, unqualified, and politically extreme," and that this was an effort to "deprive Plaintiffs of an essential funding stream and reputational legitimacy."

"99.     Defendants began lobbying OHA and coordinating with other nonprofits… in an effort to halt the grant. Defendants also lobbied their community allies." (SAC. at ¶¶ 97 –99.)[3]

These allegations describe both legitimate ends and constitutionally protected means.

Plaintiffs cannot base their First Amendment claim on defendants' legitimate and constitutionally protected right to counter-speech alone. Defendants did not exercise, or threaten

---

[3] On a Rule 12 motion to dismiss, a court may consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). Footnote 22 of the complaint contains a link to an October 29, 2023 post on the "Information for Public Use" website, which contains 67 pages of emails showing defendants' efforts to halt the grant. The Court can—and should—notice these emails, which readily confirm what appears on the face of the complaint: (1) defendants were exercising their constitutional rights to oppose the grant by discussing among themselves and others in the community about how to oppose the grant; (2) defendants had no direct ability or authority to halt the grant, leaving them only their right of speech to oppose it.

**HART WAGNER LLP**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

to exercise, *their own* governmental power to deny or withhold any right, benefit, or privilege from plaintiffs, they merely opposed a *state agency*, OHA, awarding $1.5 million to the Stabbin' Wagon.

*Gini* illustrates why this theory fails. 40 F.3d at 1041.  There, a federal court clerk asserted a First Amendment retaliation claim against a Las Vegas police officer who had defamed her to her employer, resulting in her being fired.  *Id*.  The Ninth Circuit affirmed the dismissal of the claim, reasoning that Las Vegas police officer "could not and did not, make any decision or take any state action affecting [plaintiff's] rights, benefits, relationship or status with the state."  *Id*. at 1045.  It was the federal court's—not the Las Vegas police's—decision to terminate the *Gini* plaintiff.  And it was OHA's decision—not defendants'—to award or withhold the grant.

At all events, no plaintiff was denied any governmental right or benefit by *anybody*: the Stabbin' Wagon got its state grant, *despite* defendants' opposition, plaintiffs only contend that the award was "delayed" in response to defendants' speech against it.  (SAC at ¶ 132.)

Plaintiffs do not allege—nor could they—that the award of $1.5 million in state funds to an organization that supported drug users' rights to "autonomy" and that opposed cooperating with police was not a matter of public importance.  Defendants had a constitutional right to oppose (unsuccessfully, it turns out) a grant that they saw as unwise and contrary to the interests of their community.

### E.     Allegations related to surveillance and monitoring fail to state a claim.

The final alleged adverse action is that "[b]y 2022," defendants were monitoring their "online posts, events, and protest activities."  (SAC at ¶ 83.)

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

At the outset, Jones's and the Stabbin' Wagon's retaliation claims based on this "surveillance" theory are barred by the two-year statute of limitations because Jones indisputably knew about this surveillance more than two years prior to filing this suit in September 2025. The complaint asserts that a "whistleblower" MPD sergeant contacted Jones on January 8, 2023, to tell her about Kirkpatrick's "bias" and to show her what he was "circulating." (SAC at ¶¶ 87, 91, 93.)

In their ongoing state court suit against MPD, however, Jones and the Stabbin' Wagon alleged more about this January 8, 2023, message: "Former MPD Sgt. Tom Venables *confirmed to Jones in writing that MPD was spying on her* out of malicious 'bias' against Jones for her Stabbin' Wagon activity and activism." Kucera Dec. at Ex. 1 (FAC at ¶ 25.) (Emphasis added.)

Thus, in their state court pleading, which is both referenced in their complaint (at ¶ 86) and is judicially noticeable in any event, Jones and Stabbin' Wagon expressly assert knowing about the alleged retaliation and injury more than two years before filing this action in September 2025. *Ritchie*, 342 F.3d 907-08 (court may consider documents incorporated in complaint on Rule 12 motion); *Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) (under Fed. R. Evid. 201, courts may take judicial notice of undisputed matters of public record, including documents filed in state courts). Jones and the Stabbin' Wagon should be judicially estopped from asserting in any response that they were unaware of the alleged "spying" after January 8, 2023. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases.").

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

Even if this alleged retaliation was not barred by the statute of limitations, plaintiffs do not allege facts plausibly showing that any defendant caused or participated in surveilling their online activity out of animus for First Amendment conduct.  As elsewhere, the complaint's allegations are, on the main, generalized and undifferentiated allegations, *e.g.*: "MPD maintains a dossier… showing evidence that MPD has collected"; "MPD was collecting and storing information"; "The Medford Police Department has collected".  (SAC at ¶¶ 82, 85.)  Generalized allegations that "MPD" engaged in surveillance are insufficient to plausibly allege that each individual defendant (some of whom did not work at MPD) caused the alleged surveillance.  *See Dungan v. Cty. of Shasta*, No. 2:24-cv-02394-DAD-DMC, 2025 WL 1093213, at *19 (E.D. Cal. Apr. 11, 2025) (generalized retaliatory allegation of monitoring social media activity "are too vague" to survive motion to dismiss).

The only MPD defendants[4] referenced in the "surveillance" allegations are Graham and Kirkpatrick, but the three specific factual allegations about them are sparse and innocuous: (1) Graham received a March 4, 2021, email from "MPD's Divya Fisher" informing about a scheduled protest and forwarded the email to another MPD sergeant (SAC at ¶ 85 a.);   (2) Graham wrote in response that he had reached out to the "Oregon Titan Fusion Center" for information, finding nothing, and stated that he believed Jones was affiliated with the "Siskiyou Abolition Project" (SAC at ¶ 85 b.); and (3) a conclusory statement that Graham and Kirkpatrick monitored Jones' and "Strong's online posts, events, and protest activities."  (SAC at ¶ 83.)

---

[4] Plaintiffs' "surveillance" arguments include an allegation that Sparacino, while mayor, sent a Jefferson Public Radio article to one Scott Clauson at MPD titled, "As Encampment Evictions Begin in Medford, Where are People Supposed to Go" that quoted Jones.  (SAC at ¶ 85 c.) Sparacino wrote that he wanted Clausen to be "aware of what they're saying."  (*Id.*) These facts do not plausibly allege that Sparacino was engaged in "surveillance" or "monitoring" (as distinct from: reading the news), let alone that this somehow a material adverse action against plaintiffs.

**HART WAGNER LLP**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

Not only are these allegations insufficient to allege a retaliation claim, they fail to demonstrate even that plaintiffs have Article III standing to assert one. In *Laird v. Tatum*, the Supreme Court addressed the standing of plaintiffs to assert a First Amendment claim that "their rights were being invaded" by a U.S. Army data-gathering system that collected information about public activities with a potential for civil disorder. 408 U.S. 1, 2, 6 (1972). The Supreme Court concluded that plaintiff's lacked standing to assert a violation of their First Amendment rights by alleging a chilling effect that arose "merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other additional action detrimental to that individual." *Id.* at 11. The Court explained that allegations of a "subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of future harm[.]" *Id.* at 13–14.

That is all plaintiffs have alleged here: there is no allegation that defendants took any action with the public information they were allegedly monitoring and collecting. *See Thielman v. Kotek*, No. 3:23-cv-01639-HZ, 2024 WL 2700608, at *11 (D. Or. May 24, 2024) (finding plaintiffs lacked standing for their First Amendment claim where, "[a]s in *Laird*, Plaintiffs' injuries appear to arise merely from their knowledge that the Secretary of State is gathering publicly-available information").

Even if plaintiffs' failure to allege a "specific present objective harm or a threat of future harm" could somehow be excused, their claims would still fail because plaintiffs have no plausibly alleged that any defendant *intended* to chill any plaintiff by *passively* viewing online posts about public activities. *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1232 (9th Cir. 2006) (in a First Amendment retaliation claim, plaintiff must demonstrate that defendant's

Page 15 – **MEDFORD DEFENDANTS' MOTION TO DISMISS**

"desire to cause the chilling effect was a but-for cause of the defendant's action"). Plaintiffs do not allege that any defendant informed them of the alleged monitoring, but instead that they found out about it via a non-defendant "whistleblower sergeant" and from public records. (SAC at ¶¶ 87–95.) *See Larson v. Carpenter*, No. 2:21-cv-1328-JR, 2022 U.S. Dist. LEXIS 102171, at *6-7 (D. Or. June 8, 2022) (dismissing First Amendment retaliation claim "because the complaint does not allege how plaintiff learned of the investigation and its impact on him, it lacks a plausible assertion showing that defendants acted with the intent to chill plaintiff's speech"); *Larson v. Carpenter*, 2022 U.S. Dist. LEXIS 162876, *9 (D. Or. Sept 9, 2022) (dismissing amended retaliation claim where a third-party, as opposed to defendants, informed plaintiff of the allegedly retaliatory "subpoena and there are no well-plead facts reflecting that defendants intended to chill plaintiff's speech. In fact, there are no allegations evincing contact between defendants and plaintiff, or that indicate defendants attempted, or otherwise desired, to make their conduct known to plaintiff.").

Without a concrete injury, or threat of injury, plaintiffs have no standing to claim a First Amendment violation based on an alleged "surveillance" of public information. No reasonable person of ordinary firmness would be deterred from First Amendment conduct upon learning that the government was viewing *public* social media posts related to plaintiffs' public attendance at events and protests.

### IV. Plaintiffs' *Monell* claim fails to state a claim for relief.

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a municipality may be held liable for constitutional violations under Section 1983, but only where the alleged injuries were caused by the execution of its policy or custom or by those whose edicts or acts may fairly be

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

said to represent official policy. *Id.* at 694. A municipality cannot be held liable under Section 1983 under a *respondeat superior* theory for employing a tortfeasor. *Id.* at 691.

Instead, a plaintiff must show: (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy or custom; (3) the defendant's policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). A "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008).

A *Monell* claim "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Conclusory *Monell* pleadings, without factual detail, are insufficient to survive a motion to dismiss: after *Iqbal*, allegations of *Monell* liability must plausibly: (1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, *i.e.*, show how the deficiency involved was obvious and the constitutional injury was likely to occur. *Herd v. Cty. of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018).

### A.     First Amendment allegations are insufficient to state a claim.

On top of failing to plausibly allege a predicate First Amendment violation, which is itself fatal to this claim, plaintiffs have failed to allege facts plausibly establishing that any violation was taken pursuant to a Medford policy, custom, or practice.

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

"[R]andom acts" or "isolated or sporadic incidents" are insufficient to prove the existence of an unconstitutional custom or practice. *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995); *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The plaintiff must instead demonstrate that the custom or practice in question has "sufficient duration, frequency[,] and consistency that [it] has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. To do so, the plaintiff "must ordinarily point to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1142 (9th Cir. 2020) (citations omitted).

The allegations about the existence of a policy, custom, and practice allegations are conclusory, *e.g.,* "The City of Medford, through its official policymakers, department, and agents, maintained and enforced policies, customs, and practices that caused the above-referenced violations of Plaintiffs' constitutional rights." (SAC at ¶ 165.) This does not suffice, and there are no allegations elsewhere in the complaint to plausibly allege the existence of a municipal policy, custom, or practice, let alone to show how that policy, custom, or practice was deficient, or how it caused plaintiffs' harm.

For instance, the complaint asserts that "The City" adopted a "formal and informal policy to exclude and discredit service providers that refused to collaborate with law enforcement." (SAC at ¶ 167.) But nothing is alleged about any "formal" policy (when it was adopted, what it says, etc.) In fact, the single allegation about excluding "service providers" is that "MPD has excluded Stabbin' Wagon from official communications that were sent to other BHRN member service providers ahead of encampment sweeps[.]" (SAC at ¶ 81.) But plaintiffs allege that the Stabbin' Wagon is unique among other "service providers" in Jackson County because of its policy of not collaborating with police. (SAC at ¶ 60.) Thus, the alleged exclusion of the

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

Stabbin' Wagon is the *only* such instance of alleged exclusion, which is insufficient to allege the existence of an informal policy.

All of plaintiff's "policy, custom, and practice" allegations fail for similar reasons. Plaintiff's allegations are insufficient to allege the existence of similar prior constitutional violations, or to infer that the City was deliberately indifferent to any an "obvious" deficiency that was likely to lead to constitutional injury. *Herd*, 311 F. Supp.3d at 1167.

### B.    Fourth Amendment *Monell* allegations are insufficient to state a claim.

The complaint fails to allege facts sufficient to plausibly show the existence of a policy, custom, or practice that caused any Fourth Amendment violation.

The Fourth Amendment protects individuals against unreasonable governmental searches and seizures. See U.S. Const. Amend. IV. Fourth Amendment search protections arise when an individual has a "reasonable expectation of privacy in the subject of the . . . search." *United States v. Yang*, 958 F.3d 851, 858 (9th Cir. 2020). The threshold inquiries are: (1) was there a subjective expectation of privacy and, if there is, (2) does society see such expectation as reasonable? *United States v. Sandoval*, 200 F.3d 659 (9th Cir. 2000).

There are no facts alleged to plausibly show any "search" of constitutional import. Plaintiffs contend that MPD officers "monitored Jones' and Strong's online posts, events, and protest activities." (SAC at ¶ 83). There are no facts alleged, however, to plausibly claim that Jones or Strong had a reasonable expectation of privacy in their online posts, attendance at public "events," or in their public protest activities. *Dungan v. Cty. of Shasta*, No. 2:24-cv-02394-DAD-DMC, 2025 U.S. Dist. LEXIS 69845, at *20 (E.D. Cal. Apr. 11, 2025) (dismissing Fourth Amendment claims where plaintiff failed to provide sufficient facts to establish a reasonable expectation of privacy in social media posts); *United States v. Weber*, 599 F. Supp. 3d 1025,

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

1033 (D. Mont. 2022) (rejecting Fourth Amendment claim where plaintiff did not introduce evidence about whether the files on his Instagram account were public or private, nor demonstrated whether they had been shared with other users).

A Fourth Amendment seizure occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen. *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997). The shotgun complaint does not allege that Strong was ever seized, and there are no facts that any property of the Stabbin' Wagon was ever seized; the only "seizures" plausibly identified in the complaint involve only Jones (SAC at ¶¶ 77, 80), and any claim based on those 2020–21 acts is time-barred under Oregon's two-year statute of limitations. *Bonelli*, 28 F.4th at 952 (for Fourth Amendment violations, a claim for an illegal search or seizure arises "when the wrongful act occurs ... even if the person does not know at the time that the search was [illegal]"); *Wallace v. Kato*, 549 U.S. 384, 397 (2007) (the statute of limitations upon a § 1983 claim for a false arrest in violation of the Fourth Amendment begins to run at the time the claimant becomes detained pursuant to legal process").

Even if these sundry 2020–21 encounters were not time barred, there are no allegations to show that they were constitutionally infirm, or that it is plausible that they were caused by any Medford policy, custom, or practice.[5] *E.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice

---

[5] The only other alleged incident implicating Fourth Amendment concerns is a 2019 arrest of John Malaer, "a homeless and disability rights advocate." (SAC at ¶ 146.) The complaint, however, does not allege any facts about that arrest, or even claim that it was unconstitutional, but instead only that the resulting citation falsely accused Malaer of being homeless. (*Id.*) Mr. Malaer is the plaintiff in a separate lawsuit pending before this Court, U.S. District Court for the District of Oregon – Medford Division, Case No. 1:20-cv-00049. Plaintiff Malaer's 42 U.S.C. § 1983 claims were dismissed on summary judgment in that case. (Kucera Dec., Exhibit 2, Opinion and Order, ECF 273, 11/9/2023.)

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

or custom."); *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory

arrest claim must plead and prove the absence of probable cause for the arrest."); *Espinoza*, 2022

U.S. Dist. LEXIS 235382, at *7 (allegation that officers lacked "reasonable suspicion" to detain

is a legal conclusion that the Court need not accept as true."). Plaintiffs fail to offer any facts

about any MPD officer training, supervision, or discipline, other than conclusory, generic, and

legally insufficient allegations that there were failures of officer training, supervision, and

discipline. (SAC at ¶¶ 170–172.)

###### V.     Plaintiff's Section 1985(3) conspiracy allegations fail to state a claim for relief.

42 U.S.C. § 1985(3)—part of the Ku Klux Klan Act of 1871—was enacted by the

Reconstruction Congress to protect individuals—primarily black people—from conspiracies to

deprive them of their legally protected rights. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536

(9th Cir. 1992). Section 1985(3) prohibits conspiracies by two or more persons for the purpose

of depriving "any person or class of persons of the equal protection of the laws, or of equal

privileges and immunities under the laws[.]" The statute is "derived from the thirteenth

amendment and covers all deprivations of equal protection of the laws and equal privileges and

immunities under the laws, regardless of its source." *Gillespie v. Civiletti*, 629 F.2d 637, 641

(9th Cir. 1980).

To state a cause of action under Section 1985(3), a complaint must allege facts to

plausibly show: (1) a conspiracy, (2) to deprive any person or a class of persons of the equal

protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of

the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage, or a

deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*,

403 U.S. 88, 102–03 (1971).

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

### A.    Plaintiffs fail to allege facts plausibly showing a conspiracy.

To prove a Section 1985 conspiracy between a private party and the government under section 1983, the plaintiff must show an agreement or "meeting of the minds" by the defendants to violate his constitutional rights." *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989). A claim under this section must allege facts to support the allegation that defendants conspired together; a mere allegation of conspiracy without factual specificity is insufficient. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988). *See Burns v. County of King,* 883 F.2d 819, 821 (9th Cir. 1989) (a plaintiff must state "specific facts" to support the existence of the claimed conspiracy"). "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556-57.

The complaint is devoid of facts about a "meeting of the minds" among the City Defendants. There are no allegations about what was agreed on, the scope of any conspiracy, when it was formed, or how it was formed. Merely alleging that defendants each generally opposed plaintiffs' views and that some defendants took different actions at different times in a years-long timeframe is insufficient to plausibly allege a "meeting of the minds."

*See Frazier v. Int'l Longshoreman's Union Local #10*, 116 F.3d 1485 [reported in full-text format at 1997 U.S. App LEXIS 15469 at *11-12 (9th Cir. 1997) (plaintiff's "evidence shows no more than that some of the various defendants occasionally met with each other and may have discussed [plaintiff's] grievances. This is not sufficient to support an inference either of racial animus or a "meeting of the minds."); *Lacey v. Maricopa*, 693 F.3d 896, 937 (9th Cir. 2012) ("The conclusory conspiracy allegations… do not define the scope of any conspiracy involving [Defendants], what role [they] had, or when or how the conspiracy operated.");

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

*Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015 (N.D. Cal. 2014) ("Plaintiff has not alleged sufficient specific facts regarding the alleged conspiracy, including: (1) a specific agreement between [Defendants]; (2) the scope of the conspiracy; (3) the role of [the Defendants] in the conspiracy; [and] ... (4) ... how the conspiracy operated."); *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1069–70 (C.D. Cal. 2024) (dismissing conspiracy allegations, and stating: what are missing "are plausible allegations—with specific facts—that there was a 'meeting of the minds' or an 'agreement' between the defendants").

Plaintiffs allege that a private blogger and podcaster, Mallory, was a co-conspirator. For all its prolixity, however, the complaint does not allege—even as a conclusion—that Mallory and defendants reached an "agreement" or "meeting of the minds"; it merely alleges a general alignment of their views and mutual awareness of that alignment: *e.g.*, "The city defendants… were aware of Defendant Mallory's pro-law enforcement social media influence and activity"; "Mallory was aware of the City of Medford's disdain for and undermining of Plaintiffs['] advocacy and Stabbin' Wagon's operations." (SAC at ¶¶ 104, 101). Merely alleging that the City defendants' views aligned with those of a private actor is insufficient to allege a conspiratorial "meeting of the minds." *O'Handley v. Weber*, 62 F.4th 1145, 1157 (9th Cir. 2023) (showing alignment "in their missions" between state and private actors does not transform private conduct into state action for purposes of Section 1983 conspiracy claim).

> ### B. Plaintiffs fail to articulate a viable claim that Defendants deprived any person or any class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.

In addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Sever*, 978 F.2d at 1536 (citing *Griffin,*

403 U.S. at 102.)). In *Griffin v. Breckenridge*, the Supreme Court explained that the statute's reference to equal protection and equal privileges and immunities requires a showing of class-based animus that aims to deprive "the equal enjoyment of rights secured by the law to all." 403 U.S. at 102 ("The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." (Emphasis in original.)).

Even though Section 1985(3) has been expanded beyond its narrow historical intent to combat racial animus, the boundary is not unlimited. *Canlis v. San Joaquin Sheriff's Possse Comitatus*, 641 F.2d at 711, 720 . The Supreme Court has made it clear that 42 U.S.C. § 1985(3) is not to be construed as a general federal tort law.[6] *Gerritsen v. De La Madrid Hurtado*, 819 F.2d 1511, 1518–19 (9th Cir. 1987).

In the Ninth Circuit, Section 1985(3) extends to protect non-racial classes in only two circumstances, where either: (1) the courts have designated the class in question a suspect or quasi-suspect classification requiring heightened scrutiny, or (2) Congress has indicated through legislation that the class requires special protection. *Holgate v. Baldwin*, 425 F.3d at 671, 676 (9th Cir. 2005) . Protected classes entitled to heightened scrutiny include classifications based on race, ancestry, alienage and gender. *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1277 (9th Cir. 2004).

The complaint alleges that "Stabbin' Wagon's clients… constitute a protected class under § 1985(3)." (SAC at ¶ 198.) An initial problem for this is that the complaint does not identify

___

[6] It has also cast doubt on whether the law was meant to extend to non-race based animus at all. *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 836 (1983) ("It is a close question whether § 1985(3) was intended to reach any class-based animus other that animus against Negroes and those who championed their cause, most notably Republicans.").

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

this 'class' with any precision or consistency, at turns labeling them as: "people the cops don't like" (*Id.* at ¶ 3);[7] "drug users and homeless people in Medford, Oregon" (¶ 2); "unhoused and at-risk populations throughout Southern Oregon" (¶ 11); people experiencing SUD [substance use disorder] and/or a SMI [serious mental illness] (¶ 178); the "often rural, medically disabled, and economically marginalized" (¶ 199); and "unhoused and drug-using individuals" (¶ 204); and "vulnerable populations in Jackson County." (¶ 57.)

These protean, vague, shifting, and elastic definitions fail to identify any determinate actionable "class." *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) (The statutory term "class" "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors."). Plaintiffs' proposed "class" of its "clients" is a no more than an indefinite post-hoc grouping assembled for purposes of this litigation.[8]

Even if plaintiffs could try to cure that imprecision, the bigger problem is that Stabbin' Wagon's "clients"—no matter how defined—cannot constitute the "class" for their Section 1985(3) claim, because plaintiffs cannot bring a Section 1985(3) claim *without being a member of the class discriminated against*: "The law of this circuit is clear: the plaintiff must be a

---

[7] *Cf. Unity v. City of Springfield*, No. 6:21-cv-00346-AA, 2026 U.S. Dist. LEXIS 12592, at *125 (D. Or. Jan. 23, 2026) ("It is true that 'people who hate all cops' is not a protected class.").

[8] This imprecision also helps defeat plaintiffs' effort to plausibly allege a conspiratorial "meeting of the minds," because co-conspirators must have all been motivated by a discriminatory animus for the class. *Griffin*, 304 U.S. at 102 (plaintiffs must demonstrate a deprivation of a right *motivated* by some racial or perhaps otherwise-*class based*, invidiously *discriminatory animus* behind the conspirator's action (emphasis added)). If one alleged conspirator was motivated by animus for "drug users," another for the "medically disabled," and yet another for "at-risk populations throughout Southern Oregon," there was no conspiracy. Of course, there are no facts to plausibly allege that any City defendant was motivated by animus for any of these distinct groups.

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

member of the class discriminated against to claim the benefits of § 1985(3)." *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 721 (9th Cir. 1981) (citing *Briley v. California*, 564 F.2d 849, 859 (9th Cir. 1977) and *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 927 (9th Cir. 1975)). *See United States v. Hays*, 515 U.S. 737, 743-44 (1995) ("Even if a governmental actor is discriminating on the basis of race, the resulting injury accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct." (Internal quotation marks omitted.)).  However characterized, plaintiffs do not assert that they themselves are members of the "class" of Stabbin' Wagon's "clients."

Even if they were members of their proffered "class," courts in the Ninth Circuit have consistently rejected that the unhoused, disabled, or addicted are a class entitled to heightened scrutiny.  *See Laycook v. Cty. of Fresno*, No. 1:18-cv-01263-LJO-SAB, 2018 U.S. Dist. LEXIS 177006, at *15 (E.D. Cal. Oct. 15, 2018) ("A drug user is not within a suspect or quasi-suspect class nor would such person fall within any category of persons who would be entitled to special protection."); *Faulkner v. Valenzuela***,** No. 2:15-cv-01485 KJM DB P, 2017 U.S. Dist. LEXIS 118145, at *34 (E.D. Cal. July 27, 2017) (plaintiff "has cited no authority, and the court knows of none, proposing that drug addicts are a protected class for equal protection purposes"); *Wagda v. Town of Danville*, No. 16-cv-00488-MMC, 2016 U.S. Dist. LEXIS 147108, at *25 (N.D. Cal. Oct. 24, 2016) (complaint asserted that perceived drug addicts may represent a suspect class entitled to heightened scrutiny, "but the authority is to the contrary"); *Sanchez v. City of Fresno*, 914 F.Supp.2d 1079, 1108 (E.D. Cal. 2012) ("No court has ever held the homeless to be a suspect class under this standard."); *Goldsberry v. N. Bay Reg'l Hosp.*, No. 2:25-cv-0379 CSK P, 2025 U.S. Dist. LEXIS 57773, at *7-8 (E.D. Cal. Mar. 27, 2025) ("Although plaintiff contends he was discriminated against because he was homeless, the homeless are not a suspect class

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

under the Constitution."); *Imamoto v. City & Cty. of Honolulu*, No. 25-cv-00308-DKW-WRP, 2025 U.S. Dist. LEXIS 181203, at *3 (D. Haw. Sep. 16, 2025). ("Homelessness and disability, however, are not protected classes."); *Raiser v. City of Murrieta*, 2020 U.S. Dist. LEXIS 204315, 2020 WL 6392846, at *12 (C.D. Cal. Nov. 2, 2020) (citing cases and finding that "homeless individuals are not a protected class"); *Gamble v. Escondido*, 104 F.3d 300, 307 (9th Cir. 1996) ("The physically disabled are not a protected class for purposes of equal protection under the Fourteenth Amendment."); *Shannon v. Rojas*, No. 2:22-cv-01556-JDP (PC), 2022 U.S. Dist. LEXIS 251582, at *3 (E.D. Cal. Nov. 7, 2022) (being disabled does not constitute a protected class under the Fourteenth Amendment).  Plaintiffs cannot, as they attempt, conjure a "class" entitled to heightened scrutiny by cobbling together sub-classes that are not entitled to heightened scrutiny.

That leaves plaintiffs to rely on their alternative theory that they are bringing their Section 1985(3) claim "as advocates, supporters, and service providers for people experiencing SUD and/or SMI disability[.]"  (SAC at ¶ 191.)  As to be expected from the cited cases, however, no court has held that "advocates, supporters, and service providers" like plaintiffs are a suspect or quasi-suspect class entitled to heightened scrutiny.

Plaintiffs cite a series of federal and state laws and argue that these reflect a "governmental determination" that the Stabbin' Wagon's "clients, as beneficiaries of legislatively conferred rights… constitute a protected class under ¶ 1985(3)."  (SAC at ¶ 198.)  This effort fails for at least two reasons.

First, as seen, this approach to defining the "class" is fundamentally misguided: the Stabbin' Wagon's *clients* cannot be "class" at issue, because plaintiffs cannot maintain a Section 1985(3) claim on behalf of any "class" that they themselves are not members of.  *Canlis*, 641

F.2d at 721.  The question is not whether Congress has indicated that the Stabbin' Wagon's

clients are entitled to "special protection," it is whether Congress has enacted legislation

indicating that "advocates, supporters, and service providers" like plaintiffs are entitled to

"special protection."

The second problem lies in plaintiffs' improper framing of the issue as whether a state or

federal legislature has "conferred rights" on Stabbin' Wagon's clients.  (SAC at ¶ 198.)   The

inquiry is instead whether a *congressional* enactment reflects a "governmental determination"

that members of a certain class "require and warrant special *federal assistance in protecting their*

*civil rights*."  *DeSantis v. Pacific Telephone & Telegraph Co.*, 608 F.2d 327, 333 (9th Cir. 1979)

(emphasis added).  The federal laws plaintiffs cite—the Rehabilitation Act, the Americans with

Disabilities Act, the Affordable Care Act, and the McKinney-Vento Homeless Assistance Act—

may generally show that Congress has *legislated* in areas like disability, homelessness, and drug-

use, and perhaps even that some of the Stabbin' Wagon's clients qualify for certain *benefits* under

these laws.  But nothing in those laws embodies a Congressional determination that "advocates,

supporters, and service providers" like the Stabbin' Wagon warrant "special assistance" to

protect their civil rights.  *Cf. Maynard v. City of San Jose*, 37 F.3d 1396, 1403–04 (9th Cir. 1994)

(citing Title VII provisions 42 U.S.C. § 2000e-5 and 42 U.S.C. § 2000e-3(a) as examples of laws

giving "special protections" to whites who are denied association with other racial groups and to

those who face retaliation for assisting race discrimination workplace investigations).

Plaintiffs' invocations of state law—Measure 110 and ORS 195.530—are irrelevant to the

analysis; the question of what "classes" are entitled to special protection under Section 1985(3) is

determined by reference to congressional enactments, not state law.  *Trerice v. Pedersen*, 769

F.2d 1398 at 1402–03 (9th Cir. 1985) (principle underlying § 1985(3) is governmental

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

determination that some groups require and warrant special *federal* assistance in protecting their civil rights); *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("we require… that *Congress* has indicated through legislation that the class required special protection" (emphasis added)); *DeSantis*, 608 F.2d at 333 (same).

The United States Congress has not indicated through legislation that plaintiffs (or the Stabbin' Wagon's clients) belong to a class requiring federal protection or special assistance in protecting their civil rights.  Recognizing a cause of action for plaintiffs on the pleaded facts would be a step towards turning Section 1985(3) into the boundless "general federal tort law" that the Supreme Court has rejected.  *Gerritsen*, 819 F.2d at 1518-19.

> ### C.    Plaintiffs fail to sufficiently allege any 1983 violation defeats the 1985(3) conspiracy claim because plaintiffs have not alleged suffering the deprivation of any right or privilege of a citizen of the United States.

Finally, because, as discussed, plaintiffs' Section 1983 claims fail to state a claim for relief, their Section 1985(3) conspiracy claim also fails as a matter of law.  *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004) ("[T]o state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983."); *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations."); *Cassettari v. Nev. Cnty.*, 824 F.2d 735, 739 (9th Cir. 1987) ("The insufficiency of these allegations to support a section 1983 violation precludes a conspiracy claim predicated upon the same allegations.").

### VI.    The "Doe" defendants must be dismissed.

The use of "Doe" defendants is disfavored in the Ninth Circuit.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980).  "There is no provision in the Federal Statutes or Federal Rules

**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

of Civil Procedure for use of fictitious parties." *Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970).

The only allegation in the complaint about the Doe Defendants is as follows: "Defendants John and Jane Does 1–9 are unidentified employees or agents of the City of Medford who participated in the events described in this Complaint.  Plaintiffs will amend this Complaint to identify the Defendants once their identities are known."  (SAC at ¶ 23.)  This is insufficient to plausibly state a claim against any Doe Defendant.  *See Quinn v. Legacy Health*, No. 3:23-cv-00331-JR, 2024 U.S. Dist. LEXIS 26802, at *16 (D. Or. Feb. 13, 2024) (dismissing Doe Defendants and stating: "Plaintiffs do not make any factual allegations regarding the Doe defendants' conduct.  Even if the Doe defendants were later identified, the allegations against them would be insufficient.").

If plaintiffs are aware of relevant facts about other individuals, but are unaware of their identities, then plaintiffs must specifically state the facts they are aware of as to each Doe Defendant in order to plausibly state a claim and in order for defendants to be able to fairly defend.  (*E.g.*, "John Doe 1 is an officer who participated [in doing X to plaintiff Y].").  *See Kealoha v. Espinda*, No. 16-cv-00486, 2017 WL 741570, at *5 (D. Haw. Feb. 24, 2017) (explaining that "[i]f the names of individual defendants are unknown at the time a complaint is filed, . . . a plaintiff may refer to the unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege facts to support how each particular Doe defendant violated his constitutional rights[.]")

If instead—as appears plain—plaintiffs are simply naming Doe Defendants upon the speculative hypothesis that others *might have* been involved, then their use of Doe Defendants is

entirely inappropriate: plaintiffs simply have no facts to plausibly state a claim against any other unknown individual.

## **CONCLUSION**

For the foregoing reasons, the Medford City Defendants respectfully ask that plaintiffs' claims against them and the Doe Defendants be dismissed under Fed. R. Civ. P. 12(b)(6).

DATED this 9th day of March, 2026.

HART WAGNER, LLP

By:  /s/ Stephanie C. Kucera

Stephanie C. Kucera, OSB No. 165509
sck@hartwagner.com
Zachariah H. Allen, OSB No. 122729
zha@hartwagner.com
*Attorney for Defendants City of Medford, Brian Sjothun, Randy Sparacino, Justin Ivens, Darrell Graham, Geoff Kirkpatrick, Trevor Arnold, and Arturo Vega*

**HART WAGNER LLP**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 9th day of March, 2026, I served the foregoing

**DEFENDANTS CITY OF MEDFORD, BRIAN SJOTHUN, RANDY SPARACINO,**

**JUSTIN IVENS, DARRELL GRAHAM, GEOFF KIRKPATRICK, TREVOR ARNOLD**

**AND ARTURO VEGA'S MOTION TO DISMISS** on the following parties at the following

addresses:

Alicia LeDuc Montgomery
LeDuc Montgomery LLC
2210 W. Main St., Ste 107 #328
Battle Ground, WA  98604
alicia@leducmontgomery.com

Marianne Dugan
Civil Liberties Defense Center
1711 Willamette St., Ste 301 No. 359
Eugene, OR  97402
mdugan@cldc.org

*Attorneys for Plaintiffs*

Casey Murdock
Frohnmayer, Deatherage, Jamieson,
 Moore, Armosino & McGovern, PC
2492 E. Barnett Road
Medford, OR  97504
murdock@fdfirm.com

*Attorney for Defendant Ryan Mallory*

by electronic means through the Court's Case Management/Electronic Case File system.

*/s/ Stephanie C. Kucera*
Stephanie C. Kucera, OSB No. 165509

Page 1 –  **CERTIFICATE OF SERVICE**