**ALICIA LEDUC MONTGOMERY, OSB # 173963**
Email: alicia@leducmontgomery.com
**LEDUC MONTGOMERY LLC**
2210 W Main Street, Suite 107 #328
Battle Ground, Washington 98604
Telephone: 704.702.6934
www.leducmontgomery.com

**MARIANNE DUGAN, OSB # 932563**
Email: mdugan@cldc.org
**CIVIL LIBERTIES DEFENSE CENTER**
1711 Willamette Street Ste 301 No. 359
Eugene, Oregon 97402
Telephone: 541.687.9180
www.cldc.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| STABBIN WAGON, an Oregon public benefit corporation; MELISSA JONES, an individual; and SAMANTHA STRONG, an individual, | Case No. 1:25-cv-1632-MTK |
| Plaintiffs, | **PLAINITFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS** |
| v. | |
| CITY OF MEDFORD, a municipal corporation; BRIAN SJOTHUN, an individual; RANDY SPARACINO, an individual; JUSTIN IVENS, an individual; DARRELL GRAHAM, an individual; GEOFF KIRKPATRICK, an individual; TREVOR ARNOLD, an individual; ARTURO VEGA, an individual; RYAN MALLORY, an individual; and JOHN and JANE DOES 1-9, individual employees or agents of the City of Medford, | **Oral Argument Requested** |
| Defendants. | |

PAGE 1 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ 2

TABLE OF AUTHORITIES ............................................................................................... 3

CERTIFICATION ............................................................................................................... 7

I.    INTRODUCTION ...................................................................................................... 7

II.   FACTS ......................................................................................................................... 8

III.  STANDARD OF REVIEW ....................................................................................... 9

IV.   POINTS AND AUTHORITIES............................................................................... 10

   A.    Mallory's "Color of Law" Argument Misreads Plaintiffs' § 1985(3) Claim .................... 10

   B.    The SAC Plausibly Alleges Mallory Knowingly Joined and Furthered a Conspiracy ..... 13

   C.    SAC Adequately Pleads That Mallory's Overt Acts Caused Injury and Deprivation....... 17

      1.    SAC alleges specific overt acts by Mallory. .................................................... 18

      2.    SAC plausibly alleges causation as to both personal harm and deprivation of rights. . 19

      3.    SAC alleges harm as to all three plaintiffs...................................................... 21

   D.    SAC Adequately Alleges a Cognizable Class Under 42 U.S.C. § 1985(3) ...................... 22

      1.    SAC alleges a class based on disability........................................................... 24

         i.    SMI and SUD are recognized disabilities under the ADA. .................................... 25

         ii.   Congress has made a governmental determination that disabled people require special federal assistance in protecting their rights......................................................... 27

         iii.  Multiple federal appellate circuits and district courts recognize disability as a valid class for 1985(3) purposes. ........................................................................ 29

      2.    SAC adequately alleges Plaintiffs were targeted as supporters of the class. ............... 35

      3.    SAC Contains Sufficient Allegations of Class-Based Discriminatory Animus ........... 38

      4.    SAC Need Only Plausibly Allege the Class and Discriminatory Animus.................... 42

   E.    Mallory's Speech is Not Protected When It Furthers a Conspiracy and Causes Harm .... 42

   F.    Qualified Immunity Is Not Available to Mallory as a Private Actor ............................... 45

   G.    At Minimum, Plaintiffs Should Be Granted Leave To Amend......................................... 46

V.    CONCLUSION.......................................................................................................... 46

## TABLE OF AUTHORITIES

**CASES**

*Abadi v. Am. Airlines, Inc.*, No. 23-cv-4033 (LJL), 2024 U.S. Dist. LEXIS 59889 (S.D.N.Y. Mar. 29, 2024) .................................................................................................................. 31

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)................................................................ 44

*Al-Kidd v. Ashcroft*, 580 F.3d 949 (9th Cir. 2009) ................................................................ 43

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) .............................................................................. 43

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................................... 10

*Bd. of Trs. v. Garrett*, 531 U.S. 356 (2001) .......................................................................... 29

*B.D.S. v. Southold Union Free Sch. Dist.*, 2009 U.S. Dist. LEXIS 55981, 2009 WL 1875942 (E.D.N.Y. June 24, 2009) .................................................................................................... 30

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................... 10

*Black Unity v. City of Springfield*, No. 6:21-cv-00346-AA, 2026 WL 183363 (D. Or. Jan. 23, 2026) ................................................................................................... 14, 37

*Bonner v. Lewis*, 857 F.2d 559 (9th Cir. 1988)...................................................................... 29

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263(1993) ......................................... 37

B*retz v. Kelman*, 773 F.2d 1026 (9th Cir. 1985)................................................................... 12

*Cal. Ass'n of Physically Handicapped, Inc. v. FCC*, 721 F.2d 667 (9th Cir. 1983) .................... 29

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985) ............................................ 29

*Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir. 1995)................................................. 26

*Cusker v. Or. Health Auth.*, No. 6:24-cv-00998-MTK, 2025 U.S. Dist. LEXIS 102968 (D. Or. May 30, 2025).................................................................................................................. 9

*D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir. 1985) ...................................... 33, 34

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ........................................... 9

*De La O v. Arnold-Williams*, No. CV-04-0192-EFS, 2007 U.S. Dist. LEXIS 57 (E.D. Wash. Jan. 3, 2007) ............................................................................................................................. 46

*Debolt v. Rose*, No. 4:15-CV-00215-TUC-JAS, 2017 U.S. Dist. LEXIS 217054 (D. Ariz. Mar. 31, 2017) .......................................................................................................................... 12

*Dennis v. Sparks*, 449 U.S. 24 (1980)................................................................................... 44

*DeSantis v. Pacific Telephone & Telegraph Company,* 608 F.2d 327 (9th Cir. 1979) ............... 23

*Doe v. Yorkville Plaza Assocs.*, 1994 U.S. Dist. LEXIS 13234, 1994 WL 509903 (S.D.N.Y. Sept. 19, 1994) .......................................................................................................................... 30

*Emanuel Displaced Persons Ass'n 2 v. City of Portland*, 704 F. Supp. 3d 1088 (D. Or. 2023)... 11

*Fonda v. Gray*, 707 F.2d 435 (9th Cir. 1983)........................................................................ 14

*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) ..................................................................... 12

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)................................................... 44

*Gonzalez v. Spencer*, 336 F.3d 832 (9th Cir. 2003)............................................................... 46

*Griffin v. Breckenridge*, 403 U.S. 88 (1971).................................................................. passim

*Heller v. Doe*, 509 U.S. 312 (1993) ...................................................................................... 29

*Hernandez v. Hughes Missile Sys. Co.*, 298 F.3d 1030 (9th Cir. 2002) ...................................... 26

*Jones v. Hous. Auth.*, CIVIL ACTION NO. 93-0717-BH-C, 1995 U.S. Dist. LEXIS 13384 (S.D. Ala. Aug. 9, 1995)............................................................................................................. 46

*Keating v. Carey*, 706 F.2d 377 (2d Cir. 1983) ..................................................................... 36

*Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996)....................................................................... 46

*Klamut v. Cal. Highway Patrol*, No. 15-cv-02132-MEJ (N.D. Cal. Dec. 16, 2015).................... 26
*Kraemer v. Harding*, 976 P.2d 1160 (1999) ................................................................ 45
*L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795 (9th Cir. 2017) ............................................. 9, 10
*Lake v. Arnold*, 112 F.3d 682 (3d Cir. 1997)........................................................... 31, 35
*Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 2023 WL 2537626 (N.D.N.Y. 2023) ...... 30
*Lapin v. Taylor*, 475 F. Supp. 446 (D. Haw. 1979) .............................................................. 24
*Larson by Larson v. Miller*, 55 F.3d 1343 (8th Cir.) ........................................................... 31
*Larson v. Miller*, 67 F.3d 148 (8th Cir. 1995) .................................................................. 31
*Lesley v. Bennett*, 778 F. Supp. 3d 1201 (D. Wyo. 2025)....................................................... 37
*Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) ................................. 24, 29, 30
*Long v. Cty. of L.A.*, 442 F.3d 1178 (9th Cir. 2006) ........................................................ 11
*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .......................................................... 46
*Maynard v. City of San Jose*, 37 F.3d 1396 (9th Cir. 1994) ................................................. 24
*McGanty v. Staudenraus,* 901 P.2d 841 (1995).............................................................. 45
*Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283 (9th Cir. 1999) ...................... 14, 15, 45
*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)..................................................... 46
*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) ..................................................... 44
*Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008)........................................ 10
*Payton v. Cox*, No. 2:20-cv-4838 (S.D. Ohio Dec. 1, 2020) ................................................. 33
*People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34 (2d Cir. 1982)............................................ 30
*People of State of N.Y. by Abrams v. 11 Cornwell Co.*, 718 F.2d 22 (2d Cir. 1983).................... 30
*PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) ............................................................... 29
*Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262 (10th Cir. 1989).......................................... 37
*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) ................................................. 29
*Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists*,
    290 F.3d 1058 (9th Cir. 2002) ................................................................ 45
*Schultz v. Sundberg*, 759 F.2d 714 (9th Cir. 1985)............................................................ 29
*Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 LX 186565 (E.D. Cal. Mar. 10,
    2022) .................................................................................................... 34
*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) ...................................... passim
*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010)............................ 9
*Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080 (9th Cir. 2001) ....................................... 26
*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................................ 10
*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)............................................................ 42
*Tennessee v. Lane*, 541 U.S. 509 (2004)..................................................................... 29
*Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002)............................................................ 26
*Trautz v. Weisman*, 819 F. Supp. 282 (S.D.N.Y. 1993)................................................... 30, 33
*Tyus v. Ohio Department of Youth Services*, 606 F. Supp. 239 (S.D. Ohio 1985) ...................... 33
*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825 (1983)
    .............................................................................................................. passim
*United States v. Stevens*, 559 U.S. 460 (2010).............................................................. 44
*United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir. 1989)....... 11, 14, 45
*Univ. of Or. v. Phillips*, 593 F. Supp. 3d 1062 (D. Or. 2022)......................................................... 9
*Vickerman v. Dep't of Hous. & Urban Dev. (Hud)*, No. 03:03-CV-0222-LRH (VPC), 2006 U.S.
    Dist. LEXIS 102714 (D. Nev. Nov. 3, 2006) .......................................................... 33
*Virginia v. Black*, 538 U.S. 343 (2003)..................................................................... 45

PAGE 4 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

*Waller v. Butkovich*, 584 F. Supp. 909 (M.D.N.C. 1984).............................................................. 38
*Watkins v. U.S. Army*, 837 F.2d 1428 (9th Cir. 1988) ............................................................... 30
*Weaving v. City of Hillsboro*, No. 10-CV-1432-HZ (D. Or. Feb. 16, 2012) ............................... 27
*Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir. 1983) ..................................... 33, 34
*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)............................................ 9, 35
*Wilson v. Mount Diablo Unified Sch. Dist./Special Educ. Local Plan Area*, No. 19-cv-03441-
     MMC, 2020 U.S. Dist. LEXIS 33788 (N.D. Cal. Feb. 27, 2020)........................................... 35
*Wyatt v. Cole*, 504 U.S. 158 (1992) ........................................................................................ 46

## STATUTES

42 U.S.C. § 10801(a) ............................................................................................................... 26
42 U.S.C. § 12101.............................................................................................................. 27, 28
42 U.S.C. § 12101(a)(7)..................................................................................................... 27, 32
42 U.S.C. § 12102(1), (4)(A)..................................................................................................... 25
42 U.S.C. § 12114(a) ............................................................................................................... 26
42 U.S.C. § 12114(b) ............................................................................................................... 26
42 U.S.C. § 1983...............................................................................................................passim
42 U.S.C. § 1985(3) ..........................................................................................................passim
42 U.S.C. § 290dd-2 ................................................................................................................ 26
42 U.S.C. 1983 ........................................................................................................................ 10
42 USC § 1985 ........................................................................................................................ 38
42 USCS § 1985(3) .................................................................................................................. 36
5 U.S.C. §§ 1201-09 (1978)..................................................................................................... 24
Americans with Disabilities Act ................................................................................. 26, 27, 34, 35
Civil Service Reform Act of 1978 ............................................................................................. 24
Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001(a) ................ 28
Fair Housing Act, 42 U.S.C. § 3604(f) ..................................................................................... 28
Individuals with Disabilities Education Act, 20 U.S.C. § 1400(c) .............................................. 28
Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801(a)........... 28
Rehabilitation Act of 1973, 29 U.S.C. § 701(a).......................................................................... 28
Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) ................................................................. 24
Section 706 of Title VII, 42 U.S.C. § 2000e-5 .......................................................................... 24
ORS 163.730............................................................................................................................ 45
ORS 166.065............................................................................................................................ 45
ORS 30.835.............................................................................................................................. 45
ORS 30.866.............................................................................................................................. 45

## RULES

Rule 12(b)(6)....................................................................................................................... 7, 43

## TREATISES

Ken Gormley, *Private Conspiracies and the Constitution: A Modern Version of 42 U.S.C.
     Section 1985(3)*, 64 Tex. L. Rev. 527, 550 (1985) ................................................................ 32

**REGULATIONS**

29 C.F.R. § 1630.2(j)(3)(iii)................................................................................................ 25
29 C.F.R. § 1630.2(h)(2).................................................................................................... 25

**CONSTITUTIONAL PROVISIONS**

First Amendment ....................................................................................................... 21, 44

## CERTIFICATION

This brief does not comply with LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 40 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel. Plaintiff filed an unopposed Motion for Leave to File Excess Pages, requesting 5 additional pages for a total of 40 pages. ECF 40. This brief conforms to that request and contains 40 pages.

## I.    INTRODUCTION

Defendant Mallory's motion asks the Court to do what Rule 12(b)(6) forbids: disregard detailed factual allegations, draw inferences in the movant's favor, and fragment a coordinated course of conduct into isolated acts of "independent" behavior. The Second Amended Complaint ("SAC") alleges a sustained, multi-actor campaign to retaliate against Plaintiffs for their protected advocacy, undermine their public health work, and deprive them of constitutional rights, and it pleads specific facts showing Mallory knowingly joined and furthered that effort. Plaintiffs' claim arises under 42 U.S.C. § 1985(3), which reaches private conspiracies and does not require state action; the SAC plausibly alleges agreement, overt acts, causation, class-based animus, and resulting injury under well-established Supreme Court and Ninth Circuit standards. The SAC alleges a viable class consisting of disabled persons with substance use disorder and/or serious mental illness, both of which are recognized disabilities under the ADA and Ninth Circuit authority. Mallory's attempt to recast his alleged conduct as constitutionally protected speech fails because Plaintiffs do not challenge his viewpoints, but his alleged participation in a coordinated conspiracy involving doxxing, targeted harassment, and interference with Plaintiffs' operations and funding—conduct that is not immunized by the First Amendment when used to carry out unlawful objectives. At this stage, Plaintiffs need only plausibly allege, not prove, their claims,

PAGE 7 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

and the SAC more than satisfies that standard. Accordingly, the motion should be denied in its entirety, or at minimum, Plaintiffs should be granted leave to amend.

## II.    FACTS

The SAC alleges a years-long retaliation campaign by City officials and their allies against Plaintiffs because Plaintiffs publicly opposed Medford's treatment of unhoused people, drug users, and harm-reduction advocates, and because Plaintiffs criticized police practices and City policy. SAC ¶¶ 1-7, 154-162. Regarding Defendant Mallory specifically, the SAC alleges that he is one of those City allies and co-collaborators, not merely a detached commentator. Mallory operates ThiefHunter Labs and the "Jackson County Scanner — Oregon" Facebook group, presents himself as a bridge between the public and law enforcement, features current and former City law-enforcement personnel on his platform, and publicly aligns his business and media activity with the City police interests. SAC ¶¶ 22, 101-113.

The SAC further alleges that Mallory was aware of the City's hostility to Plaintiffs and of the Medford Defendants' campaign to undermine Plaintiffs' OHA grant; that he amplified the same accusations, parroted the same language and calls to action, and timed his conduct to coincide with the City's actions against Plaintiffs. SAC ¶¶ 101-104, 120-125.

The SAC identifies several overt acts by Mallory in furtherance of that campaign, including that on August 4, 2023, Mallory allegedly published Plaintiffs' home addresses and dates of birth using "Busted" graphics mimicking booking-log releases, in a manner that mirrored official law-enforcement disclosures and was designed to lend the appearance of official sanction to the City's retaliatory narrative. SAC ¶¶ 114-119.

Further, on September 7, 2023, during the height of the City's effort to interfere with Plaintiffs' OHA funding, Mallory allegedly posted a video urging the public to oppose Plaintiffs'

receipt of the grant, request an audit, and redirect funds elsewhere, while repeating the same attacks on Plaintiffs' legitimacy and anti-police advocacy that City officials were allegedly advancing through other channels. SAC ¶¶ 120-127.

Plaintiffs allege that from late 2023 into 2025, Mallory continued to foment animosity toward Plaintiffs by allowing and amplifying hostile commentary, posting additional attacks tied to Plaintiffs' grant and criminal matters, and asserting Stabbin' Wagon "shouldn't be in business at all" because it "worsens the problem." SAC ¶¶ 133-140.

The SAC alleges that Mallory's conduct was not independent, but was aligned with and in furtherance of the conspiracy to suppress Plaintiffs' protected speech, undermine Stabbin Wagon's operations, and intimidate supporters of homelessness rights, drug decriminalization, and harm reduction. SAC ¶ 128. The SAC alleges resulting harassment and injury, including intensified hostility from members of Mallory's scanner group, threats, disruption of Plaintiffs' work, damage to reputation and professional relationships, and delay in OHA grant execution. SAC ¶¶ 129-144.

### III.   STANDARD OF REVIEW

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017); *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Univ. of Or. v. Phillips*, 593 F. Supp. 3d 1062, 1068 (D. Or. 2022); *Cusker v. Or. Health Auth.*, No. 6:24-cv-00998-MTK, 2025 U.S. Dist. LEXIS 102968, at *5 (D. Or. May 30, 2025).  In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.; Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir.

2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *L.A. Lakers*, 869 F.3d at 800; *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556)

## IV.    POINTS AND AUTHORITIES

### A.  Mallory's "Color of Law" Argument Misreads Plaintiffs' § 1985(3) Claim

Mallory argues that he is not a state actor for purposes of 42 U.S.C. § 1983. This argument misses the mark. Plaintiffs *do not* assert a claim against Mallory under 42 U.S.C. 1983. Plaintiffs' claim against Mallory is a § 1985(3) conspiracy claim. Thus Mallory's argument fails because acting "under color of law" is not an element of a § 1985(3) claim, private actors may be properly named as defendants in § 1985(3) claims, and Plaintiffs do not allege, and need not prove, Mallory

PAGE 10 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

was a state actor to properly allege a § 1985(3) claim.

First, acting "under color of law" is an element of a § 1983 claim, *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006), but it is not an element of a § 1985(3) claim. "The four elements of a claim under § 1985(3) are: (1) a conspiracy; (2) undertaken to deprive, either directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) injury to a plaintiff's person, property, or other protected rights." *Emanuel Displaced Persons Ass'n 2 v. City of Portland*, 704 F. Supp. 3d 1088, 1106 (D. Or. 2023) (citing *United Brotherhood of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)). State action is not required to allege a § 1985(3) conspiracy claim. *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971); *Emanuel Displaced Persons Ass'n 2 v. City of Portland*, 704 F. Supp. 3d 1088, 1106 (D. Or. 2023) ("Emanuel first argues that Plaintiffs have not alleged state action, at least as against Emanuel. The Court rejects this argument for two independent reasons. First, state action is not required for a claim under § 1985(3)[.]"). Accordingly, the "under color of law" requirement is not applicable to Plaintiffs' existing legal claim against Mallory.

Similarly, Plaintiffs do not allege that Mallory exercised state authority; they allege he conspired with those who did.[1] Mallory's motion devotes pages to analyzing whether he qualifies as a state actor under § 1983 standards, citing tests such as "public function," "joint action," and "governmental nexus." ECF 37 at 6-9.  That analysis is irrelevant to Plaintiffs' 1985(3) claim. Plaintiffs do not, and need not, plead Mallory was a state actor to properly allege a 1985(3) claim.

---

[1] Even if Plaintiffs were required to prove Mallory was a state actor under 1985(3), the SAC pleads sufficient facts. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989) ("Actions may be brought pursuant to 42 U.S.C. § 1983 to redress constitutional violations under color of state law. Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights. Private parties involved in such a conspiracy may be liable under section 1983.") (citations omitted).

PAGE 11 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

Second, private actors like Mallory may be properly named as defendants in § 1985(3) conspiracies. *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971) ("It is thus evident that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies."); B*retz v. Kelman*, 773 F.2d 1026, 1027 n.3 (9th Cir. 1985) ("The first clause of § 1985(3) provides a cause of action for a private conspiracy to deny equal protection of the laws."); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) ("there is no question today that the statute covers private conspiracies"); *Debolt v. Rose*, No. 4:15-CV-00215-TUC-JAS, 2017 U.S. Dist. LEXIS 217054, *4, at *4 (D. Ariz. Mar. 31, 2017) ("42 U.S.C. § 1985(3) does reach the activity of private actors in certain circumstances, unlike 42 U.S.C. § 1983."). The statute imposes liability on "two or more persons" who conspire to deprive others of protected rights, without limiting those persons to state actors. 42 U.S.C. § 1985(3). Mallory goes too far suggesting that his private status defeats the claim. It does not.

Moreover, even if some degree of state involvement or joint action is relevant to the Court's analysis of the rights at issue, the SAC plausibly alleges it. The Ninth Circuit recognizes that a private party may be treated as acting jointly with the state where there is sufficient factual basis to infer willful participation in joint action with state officials. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). The SAC alleges Mallory's sustained collaboration with Medford police figures, his self-positioning as a private adjunct to law enforcement, his knowledge of the City's pressure campaign against Plaintiffs, and his affirmative steps to advance that campaign. SAC ¶¶ 22, 101-105, 107-113, 120-128, 196. Further, that Mallory used his platform to "dox, harass, and intimidate Plaintiffs," amplified and coordinated messaging aligned with City Defendants, and acted "in coordination with the City of Medford Defendants" to incite opposition and retaliation. SAC, ¶¶ 22, 103, 114-128. At the pleading stage, these allegations must be taken as true and construed in

Plaintiffs' favor. That is enough to cross the plausibility threshold. Mallory's insistence that Plaintiffs must also show he acted under color of law or as a state actor improperly raises the bar beyond what § 1985(3) requires.

In sum, Mallory's "color of law" argument fails because it attacks a § 1983 claim Plaintiffs have not brought against him, it imposes an element that is not required to be proven under § 1985(3), and it ignores well-settled law permitting liability for private actors who conspire with state actors in violation of § 1985(3). The Complaint expressly pleads Mallory as a private actor joined and furthered a conspiracy with state actors against Plaintiffs in violation of 42 U.S.C. § 1985(3), a theory allowed under the statute. SAC ¶¶ 127-128, 196, 201-203. Plaintiffs' § 1985(3) claim against Mallory does not require state action, his argument provides no basis for dismissal.

**B. The SAC Plausibly Alleges Mallory Knowingly Joined and Furthered a Conspiracy**

Mallory's primary argument is that the SAC alleges only independent political speech by a private citizen. But that is not the only reasonable inference from the pleading, and at this stage it is not the inference the Court must adopt.

"Establishing liability for a conspiracy between a private actor and a state actor is no different from establishing liability for a conspiracy between two state actors. The plaintiff must show 'an agreement or meeting of the minds to violate constitutional rights,' and '[t]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (citations omitted). A conspiracy may be pleaded through circumstantial factual allegations showing a meeting of the minds or tacit understanding; direct evidence of an express agreement is not required at the pleading stage. A plaintiff must demonstrate the existence of "an agreement or 'meeting of the minds' to violate constitutional

PAGE 13 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

rights." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) (quoting *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983)); *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am*. v. *Phelps Dodge Corp*., 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc). The defendants must have, 'by some concerted action, intended to accomplish some unlawful objective for the purpose of harming another which results in damage." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (citations omitted). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Mendocino*, 192 F.3d at 1301. "For example, a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement' may allow a jury to infer the existence of a conspiracy." *Id*. "Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only rarely be available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Id.* at 1302. As Judge Aiken recently stated:

> Whether defendants were involved in an unlawful conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a possibility that the jury can infer from the circumstances that the alleged conspirators had a meeting of the minds and thus reached an understanding to achieve the conspiracy's objectives. The conspiracy must have as its conscious objective the impairment of the plaintiff's right. And the plaintiff must state specific facts to support the existence of the claimed conspiracy.

*Black Unity v. City of Springfield*, No. 6:21-cv-00346-AA, 2026 WL 183363 (D. Or. Jan. 23, 2026) (internal quotations and citations omitted).

The Ninth Circuit's decision in *Mendocino* makes clear that Plaintiffs may demonstrate a conspiracy claim through circumstantial evidence showing a shared objective to suppress protected activity. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283 (9th Cir. 1999). The court indicated that ability and opportunity to conspire can serve as circumstantial evidence of participation, that direct evidence of improper motive or agreement is rarely available, and that inference from circumstantial facts or coordinated action is generally how such claims are established. *Id*. at 1301–02. The court held that a combination of facts, including officers' reliance on questionable evidence despite firsthand knowledge, their inclusion of misinformation and omissions in warrant materials, their public dissemination of a narrative portraying activists as dangerous, and their close coordination with other actors engaged in the same effort, permitted a reasonable inference of an agreement to interfere with plaintiffs' political expression. *Id*. at 1302–03. Critically, the Ninth Circuit emphasized that such evidence need not be the most compelling or exclusive explanation; it need only support a "reasonable" inference of conspiratorial intent, and competing inferences are for the jury, not the court, to resolve. *Id*. at 1303.  Applying that framework, the court concluded that coordinated investigative actions, shared misinformation, and conduct consistent with an intent to discredit and suppress a political group created a triable issue as to both retaliatory motive and conspiratorial agreement. *Id*. at 1302–03. Although *Mendocino* arose in a summary judgment posture, it is relevant to demonstrating the types of facts that can support an inference of agreement to sufficiently plead a 1985(3) conspiracy.

Taken together, the pleading standard is whether the SAC contains enough factual matter to support a plausible inference that Defendants reached at least a tacit understanding to accomplish the unlawful objective. Direct proof of a formal agreement is not required, only factual allegations from which coordinated, unlawful agreement can reasonably be inferred.

PAGE 15 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

The SAC meets this pleading standard. As in *Mendocino*, Plaintiffs alleged facts suggesting coordinated conduct, dissemination of false or misleading narratives, and actions consistent with a shared goal of chilling protected advocacy, sufficient to preclude dismissal at this stage. The SAC alleges a sustained City-led retaliation campaign against Plaintiffs based on their advocacy, criticism of police, protest activity, and harm reduction work on behalf of individuals with SUD and SMI. SAC ¶¶ 62-76, 82-100. It then alleges Mallory knowingly joined and advanced that campaign. Specifically, Plaintiffs allege Mallory knew of the City's effort to undermine Stabbin' Wagon's OHA grant, and "amplified the same accusations, parroted the City Defendants' same language and calls to action, and timed his conduct to coincide with the City's actions against Plaintiffs." SAC ¶¶ 101-103. The SAC also alleges Mallory operated a law-enforcement-adjacent platform that publicly aligned itself with MPD: ThiefHunter Labs marketed itself as a bridge to law enforcement, featured MPD personnel and former Chief/Mayor Sparacino on its podcast, and described law enforcement as the "second line of defense." SAC ¶¶ 107-113.

Against that backdrop, the SAC alleges that in August 2023, Mallory published Plaintiffs' home addresses and dates of birth in "Busted" graphics mimicking law enforcement booking disclosures, just one day after Plaintiffs' arrest and using information not available through a public records request. SAC ¶¶ 114-115. Further, that in September 2023, during the City's campaign against the OHA grant, Mallory posted a video urging the public to contact OHA, demand an audit, and oppose Plaintiffs' award of the grant contract while repeating the same core accusations the City was making through nonpublic channels, including that Plaintiffs were illegitimate, unqualified, anti-police, and misusing grant funds. SAC ¶¶ 120-125.

These allegations permit the reasonable inference that Mallory was acting in concert with the City Defendants to further the same retaliatory objective. The SAC expressly alleges that

Mallory "used his law-enforcement-adjacent platform, access, and selective enforcement of group rules to assist the City Defendants in suppressing Plaintiffs' protected activity," and that his conduct "was not independent, but aligned with and in furtherance of the conspiracy." SAC ¶¶ 127-128. Those allegations are supported by the detailed factual allegations preceding them.

At the pleading stage, Plaintiffs need not prove an express agreement. Circumstantial facts and coordinated acts are enough to plausibly allege a tacit meeting of the minds. Reading the SAC as a whole and drawing reasonable inferences in Plaintiffs' favor, Plaintiffs have adequately alleged that Mallory joined a conspiracy with the City Defendants to suppress Plaintiffs' First Amendment rights. Mallory insists the SAC fails because it does not quote a specific communication or identify a particular meeting between him and City officials. But Rule 8 does not require Plaintiffs to plead internal communications that are uniquely within Defendants' possession before discovery. At the motion to dismiss stage, Plaintiffs' allegations of coordination based on circumstantial evidence are sufficient where they plausibly suggest joint action.

### C.    SAC Adequately Pleads That Mallory's Overt Acts Caused Injury and Deprivation

Mallory argues, in substance, that the SAC does not plausibly connect his conduct to any cognizable injury. That argument fails under the text of 42 U.S.C. § 1985(3), the Supreme Court's construction of the statute, and the well-pleaded factual allegations of the SAC.

Section 1985(3) expressly creates a cause of action where conspirators commit "any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States." *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971) (quoting § 1985(3) verbatim). The Supreme Court distilled the pleading elements accordingly: a plaintiff must allege (1) a conspiracy, (2) for the prohibited purpose, (3) an act in furtherance, and (4) resulting injury to person or property or

deprivation of a federal right. *Id.*; *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983) (repeating the same four-element formulation); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (same).

At the motion to dismiss stage, Plaintiffs need not prove that Mallory's conduct was the sole cause of each injury, nor negate every competing inference. They need only plead facts that make it plausible that Mallory committed overt acts in furtherance of the alleged conspiracy and that those acts caused injury or contributed to the deprivation of protected rights. Under *Griffin*, injury and deprivation are part of the statutory claim; under ordinary federal pleading rules, those elements are satisfied where the complaint ties identified acts to identified harms in a nonconclusory way. The SAC does exactly that.

### 1. SAC alleges specific overt acts by Mallory.

The SAC does not rely on bare labels that Mallory was merely "aligned with" City actors. It pleads a sequence of specific conduct by him in furtherance of the conspiracy. The SAC alleges Mallory operates and moderates the Jackson County Scanner — Oregon Facebook group with over 100,000 members, presents himself as a law enforcement-adjacent "crime fighter," and repeatedly collaborated with and platformed Medford Police, including Defendants Sparacino, Kirkpatrick, and Wulff. SAC ¶¶ 22, 106-113. It further alleges Mallory knew of the City's campaign to undermine Stabbin Wagon's OHA grant, then "amplified the same accusations," "parroted the City Defendants' same language and calls to action," and "timed his conduct to coincide with the City's actions against Plaintiffs." SAC ¶¶ 101-104, 120-125, 129-132, 141-144.

The SAC identifies several such additional acts by Mallory, including the August 2023 post publishing Plaintiffs' home addresses and dates of birth under "Busted" graphics mimicking law enforcement booking records designed to lend "the appearance of official sanction" to the

retaliatory narrative. SAC ¶¶114-16. The SAC alleges his conduct violated his own group rules prohibiting doxxing, personal digs, and posting without verified case information, evidence of malintent supporting a conspiratorial motive. SAC ¶¶ 117-118. Mallory continued the same course in January 2024, posting additional commentary about Plaintiffs and the state grant, while allowing and fostering hostile and threatening responses in his online spaces, including threats to blow up the Stabbin' Wagon van. SAC ¶¶ 136-138. These are well-pleaded overt acts, with dates, content, and asserted consequences.

### 2. SAC plausibly alleges causation as to both personal harm and deprivation of rights.

Mallory's causation argument improperly slices the SAC into isolated events and ignores the conspiracy theory actually pleaded. Under § 1985(3), the question is whether the complaint plausibly alleges that one or more of the conspirators did, or caused to be done, any act in furtherance of the conspiracy whereby another was injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). The SAC clears that bar.

As to doxxing and intimidation, the SAC alleges that Mallory published Jones's and Strong's personal identifying information, including home addresses and dates of birth, to an audience of more than 100,000 people under booking-style "Busted" graphics. SAC ¶ 114. A reasonable inference from those facts is not speculative at all: public dissemination of residential addresses and other identifying information in a hostile, law-enforcement-themed forum foreseeably subjects the targets to fear, harassment, intimidation, reputational injury, and increased risk of in-person confrontation. The statute expressly recognizes injury to "person or property," and the Supreme Court in *Griffin* treated terror, physical distress, and personal injury as paradigmatic forms of § 1985(3) harm. *Griffin*, 403 U.S. at 91.

The SAC goes further and ties that publication to later hostility. It alleges that after Mallory's publication, Plaintiffs experienced harassment by Scanner Group members, increased public hostility, and ongoing retaliatory treatment, including a September 13, 2023, incident when a known pro-police member of the Scanner Group appeared at a Stabbin Wagon outreach site, yelled at staff, threatened to call Medford Police to report them for violating the exclusion zone, behaved aggressively, and made staff fearful. SAC ¶¶ 129-131.

That chronology is important. Mallory used his platform to portray Plaintiffs as illegitimate and criminal, then mobilized the public to act against them through a series of defamatory social media posts, and within days a known member of his Scanner Group appeared on site and threatened police action against Plaintiffs in a hostile manner. SAC ¶¶ 120-130. Those factual allegations are sufficient to connect the doxxing and criminal portrayal and media posts to ensuring intimidation and fear, and more than enough to plausibly plead that Mallory's conduct was a producing cause of at least some of the harassment and fear Plaintiffs experienced.

As to grant interference and economic injury, the SAC expressly alleges that Mallory's September 7, 2023 call-to-action occurred at the height of Defendants' campaign to interfere with the OHA grant, echoed the same demands for audit and rescission, used the same wording as the City's non-public correspondence, and was made with the understanding and intent that it would amplify and legitimize the City's pressure campaign. SAC ¶¶ 124-125. The SAC then alleges that following Defendants' campaign and shortly after Mallory's post to his 100,000-plus-member group, Plaintiffs experienced delay of OHA grant execution, and that OHA in fact delayed the grant execution process in apparent response to Defendants' campaign, and negatively impacted Plaintiffs' economic relationships with third parties. SAC ¶¶ 129, 132. The SAC's theory is that Mallory's megaphone was part of the mechanism used to generate political and public pressure

PAGE 20 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

against the grant. SAC ¶¶ 103, 120-125, 128-132. That is a classic allegation of contributory causation within a conspiracy claim. At minimum, those allegations plausibly connect Mallory's public mobilization effort to economic and operational harm. Mallory need not be alleged as the sole actor who delayed the grant. Section 1985(3) reaches conspirators whose acts in furtherance of a joint objective cause injury. *Griffin*, 403 U.S. at 102–03.

As to deprivation of rights, the SAC alleges that Mallory's conduct was undertaken to assist City Defendants "in suppressing Plaintiffs' protected activity," undermining Stabbin Wagon's operations, and intimidating supporters of homelessness rights, drug decriminalization, and harm reduction. SAC ¶¶ 127-128. Section 1985(3) is satisfied where a plaintiff is "deprived of having and exercising any right or privilege of a citizen of the United States." *Id.*

The SAC pleads that Mallory's doxxing, criminal stigmatization, and public exhortations to pressure state officials were intended to chill Plaintiffs' expressive activity and interfere with their public-health advocacy, and that they did in fact result in harassment, hostility, and operational disruption, and ultimately, Plaintiffs leaving employment with Stabbin' Wagon and thus ceasing some First Amendment activity due to the hostility and emotional distress. SAC ¶¶ 114–125, 127–131, 143. At the pleading stage, that is sufficient to allege injury and deprivation.

### 3. *SAC alleges harm as to all three plaintiffs.*

Even if the court scrutinizes each Plaintiff separately, the SAC alleges harm to all three. As to Melissa Jones, the SAC alleges publication of her home address and date of birth under booking-style graphics, criminal stigmatization, targeted public attacks concerning the OHA grant, harassment by Scanner Group members, and increased public hostility. SAC ¶¶ 114-125, 129. Those allegations plead personal injury, intimidation, reputational harm, and interference with her advocacy and organizational work.

PAGE 21 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

As to Sam Strong, the SAC alleges the same doxxing and booking treatment, the same targeting in the grant recission campaign, and the same resulting hostility. SAC ¶¶ 114-125, 129. It further quotes Mallory's September 7 post naming Strong and accusing Plaintiffs of misusing grant money and protesting police rather than helping people. SAC ¶ 123. Those allegations plausibly plead personal and reputational, as well as chill and interference with protected activity.

As to Stabbin Wagon, the SAC alleges operational and economic harm, that Mallory's conduct allegedly furthered efforts to undermine the organization's legitimacy, mobilized public opposition to its funding, generated harassment at its outreach operations, and contributed to delay in OHA grant execution. SAC ¶¶ 120-125, 129-132. Whatever Defendant may ultimately argue about proof, those are plainly allegations of injury to the organization's operations and economic interests, and of deprivation through interference with its expressive and advocacy activities.

These allegations are concrete, chronological, and causally linked. They are more than sufficient to state the injury-and-causation component of Plaintiffs' § 1985(3) claim against Mallory and to defeat dismissal under Rule 12(b)(6).

### D. SAC Adequately Alleges a Cognizable Class Under 42 U.S.C. § 1985(3)

Mallory argues that Plaintiffs have not alleged a protected class for purposes of 42 U.S.C. § 1985(3). That argument fails at the pleading stage. The SAC alleges a coordinated campaign directed at Plaintiffs because they are publicly identified with, support and advocate for, and provide services to populations Medford has historically targeted for exclusion and punishment: unhoused persons, drug users, and those associated with harm reduction, drug decriminalization, and related advocacy, but more specifically, Plaintiff's alleged class of disabled persons with Substance Use Disorder (SUD) and/or Serious Mental Illness (SMI). SAC ¶¶ 1-7, 22, 24-25, 128.

The governing standard for determining whether a class falls within the protections of 1985(3) begins with *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971), which requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." The Ninth Circuit has recognized that, "[i]n the years since *Griffin,* courts have struggled to determine whether and when § 1985(c) applies in contexts not involving race, and have produced opinions that are all over the map." *Sever* 978 F.2d 1529, 1536 (9th Cir. 1992), *cert. denied,* 454 U.S. 967 (1981). The Ninth Circuit takes the following approach:

> Generally, our rule is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights. More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (internal citations and quotations omitted). Thus in the Ninth Circuit coverage of § 1985(3) is to be determined by the "principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights." *DeSantis v. Pacific Telephone & Telegraph Company,* 608 F.2d 327 at 333 (9th Cir. 1979).

The Supreme Court has recognized 1985(3) claims for classes based on race. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (holding that § 1985(3) reaches private conspiracies motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus"); *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 836 (1983) (describing *Griffin* as involving animus against, "Negroes and *those who championed their cause*, most notably Republicans.") (emphasis added).

In line with its approach of accepting court-recognized suspect or quasi-suspect classes, as

well as classes consisting of persons for whom a government determination or federal legislation has been implemented to provide special protection for their rights, the Ninth Circuit has recognized 1985(3) claims for classes based on gender, including women purchasers of disability insurance, *Life Insurance Co. of North America v. Reichardt,* 591 F.2d 499, 505 & n.16 (9th Cir. 1979) (it is "well established that gender-based classifications may result in invidious discrimination"), as well as determinations based on special protections in federal statute, including white people subjected to retaliation for assisting in the investigation of discriminatory employment practices, *Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994):

> Maynard also has standing under Section 1985. Plaintiffs have standing under Section 1985 only if they can show they are members of a class that the government has determined requires and warrants special federal assistance in protecting their civil rights Section 706 of Title VII, 42 U.S.C. § 2000e-5, grants special protection to whites who are denied association with members of other groups because of an employer's discriminatory practices. Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), grants special protection to all employees - regardless of race - who are subjected to retaliation for assisting in the investigation of discriminatory employment practices. Thus, assuming Maynard's allegations are true, he is a member of a class that has standing to bring a Section 1985 claim.

*Maynard* 37 F.3d at 1403-04. *See also Lapin v. Taylor*, 475 F. Supp. 446, 449 (D. Haw. 1979) ("the requisite 'Governmental determination' of warranted 'special federal assistance' is incorporated in the Civil Service Reform Act of 1978 whereby Congress created the Merit Systems Protection Board to protect whistle blowers. 5 U.S.C. §§ 1201-09 (1978). . . . Therefore, I conclude that whistle blowers as defined herein are a 'class' within the meaning of § 1985(3)").

### 1. SAC alleges a class based on disability.

Plaintiffs allege a class consisting of individuals with Substance Use Disorder (SUD) and/or Serious Mental Illness (SMI), and those who advocate for and provide services to that

PAGE 24 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

population, including Plaintiffs.[2] SAC, ¶¶ 178, 190–191. This is not a class defined by political activity, viewpoint, or conduct. Nor is it a class defined merely by "drug use" in the abstract. Rather, Plaintiffs expressly allege a class grounded in disability status, a characteristic that both Congress and federal courts have recognized as sufficiently immutable and historically subject to stigma and discrimination to warrant protection under federal civil rights laws.

> ### i.    *SMI and SUD are recognized disabilities under the ADA.*

Both serious mental illness and substance use disorder fall within the definition of "disability" under the Americans with Disabilities Act ("ADA") and related federal law. The ADA defines disability broadly to include "a physical or mental impairment that substantially limits one or more major life activities," and directs that this definition "shall be construed in favor of broad coverage." 42 U.S.C. § 12102(1), (4)(A).

Federal regulations implementing the ADA confirm that "mental impairment" includes "emotional or mental illness," and identify conditions such as major depressive disorder, bipolar disorder, and schizophrenia—paradigmatic forms of SMI—as impairments that will, in virtually all cases, substantially limit major life activities such as thinking, concentrating, and brain function. 29 C.F.R. §§ 1630.2(h)(2), 1630.2(j)(3)(iii).

---

[2] Plaintiffs do not define the § 1985(3) class as "homeless persons." The SAC acknowledges that many individuals served by Plaintiffs are unhoused, but it does not limit the class to that group. It alleges that SUD and SMI disabling conditions are the defining characteristics, and that homelessness frequently overlaps with those conditions both in practice, in Plaintiffs' outreach work, and in Defendants' own policies, perceptions, and framing of the relevant population. The SAC further alleges that the City of Medford treats homelessness, addiction, and mental illness as intertwined issues to be addressed through enforcement and incarceration. SAC, ¶ 193. Plaintiffs' advocacy and services are not confined to individuals experiencing homelessness. The relevant class, therefore, is properly understood as disabled individuals with SUD and/or SMI, not a socioeconomic category.

SUD is recognized as a covered impairment, subject only to the ADA's narrow exclusion, in the employment and applicant context, for individuals, "currently engaging in the illegal use of drugs." 42 U.S.C. § 12114(a). Congress expressly preserved protection for individuals with a history of substance use disorder who are in recovery, participating in treatment, or regarded as having such an impairment. *Id*. § 12114(b); *see also* 29 U.S.C. § 705(20)(B) (Rehabilitation Act).

Other federal statutes reinforce this understanding by recognizing individuals with mental illness and substance use disorders as vulnerable populations in need of protection and services. 42 U.S.C. § 10801(a) (finding individuals with mental illness are particularly vulnerable to abuse and unable to protect their own interests); 42 U.S.C. § 290dd-2 (treating substance use disorder as medical condition warranting confidentiality and treatment protections). These authorities confirm both SUD and SMI are recognized disabilities under federal law.

The Ninth Circuit recognizes drug addiction as a disability under the ADA when it substantially limits a major life activity, and also recognizes protection for people with a record of past addiction or who are wrongly regarded as current users, subject to the ADA's exclusion for persons currently engaging in illegal drug use when the defendant acts on that basis. *Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002); *Hernandez v. Hughes Missile Sys. Co.*, 298 F.3d 1030 (9th Cir. 2002); *Collings v. Longview Fibre Co.*, 63 F.3d 828 (9th Cir. 1995).

The Ninth Circuit likewise recognizes that severe mental illness including depression, PTSD, panic attacks, and severe depression may substantially limit working and therefore qualify as impairments under the ADA. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080 (9th Cir. 2001). District courts within the Ninth Circuit likewise state that emotional or mental illness falls within ADA mental impairment definitions, *Klamut v. Cal. Highway Patrol*, No. 15-cv-02132-MEJ (N.D. Cal. Dec. 16, 2015), and have applied those principles in cases involving perceived

PAGE 26 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

mental impairment and major life activities affected by psychiatric conditions, *Weaving v. City of Hillsboro*, No. 10-CV-1432-HZ (D. Or. Feb. 16, 2012).

> ### ii. *Congress has made a governmental determination that disabled people require special federal assistance in protecting their rights.*

Congress determined through legislation that disabled people have faced significant discrimination as a class and require special assistance in protecting their civil rights. In enacting the Americans with Disabilities Act in 1990, Congress found that:

> Individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society.

42 U.S.C. § 12101(a)(7). Today, Congress's "Findings," relating to disabled persons include that:

> (1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;
> (2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;
> . . .
> (4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination[.]

42 U.S.C. § 12101. In turn, Congress's "Purpose" in enacting the ADA includes:

> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101. Congress has thus made a governmental determination that people with disabilities have experienced and continue to experience discrimination, and require federal assistance in "enforcing" the equitable standards in the ADA aimed at stopping this discrimination and assuring their rights. *Id*.

In addition to the ADA, Congress has repeatedly recognized individuals with disabilities as a group are subjected to discrimination, exclusion, segregation, and unequal treatment, reinforcing that disability-based animus is the kind of class-based discrimination contemplated by 42 U.S.C. § 1985(3). *See, e.g.,* Rehabilitation Act of 1973, 29 U.S.C. § 701(a) (finding that individuals with disabilities are among the most disadvantaged in society and continue to face discrimination in employment, housing, education, transportation, and other areas of public life); Individuals with Disabilities Education Act, 20 U.S.C. § 1400(c) (documenting the historical exclusion of children with disabilities from public education and framing federal policy around equal opportunity, full participation, and independent living); Fair Housing Act, 42 U.S.C. § 3604(f) (prohibiting discrimination because of handicap in housing and requiring reasonable accommodations); Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001(a) (finding that individuals with developmental disabilities are especially vulnerable to discrimination, abuse, neglect, and deprivation of rights and require services and supports to achieve inclusion in community life); and Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801(a) (finding individuals with mental illness are vulnerable to abuse, neglect, and injury and often unable to protect their own interests).[3] These enactments reflect a

---

[3] *See also Tennessee v. Lane*, 541 U.S. 509 (2004) (recounting Congress's findings that individuals

PAGE 28 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

consistent congressional determination that individuals with disabilities are a distinct group that has been subject to systemic discrimination and therefore warrants special legal protection, satisfying the "class-based, invidiously discriminatory animus" requirement of § 1985(3).

### iii.    Multiple federal appellate circuits and district courts recognize disability as a valid class for 1985(3) purposes.

The Supreme Court and Ninth Circuit have traditionally approached disability as subject to rational basis review, rather than heightened scrutiny or as a suspect or quasi-suspect class for equal protection purposes. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985); *Heller v. Doe*, 509 U.S. 312 (1993); *Bd. of Trs. v. Garrett*, 531 U.S. 356 (2001); *Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008).[4]

However, the equal protection doctrine does not exclusively control 1985(3) class determinations, and the Ninth Circuit does not limit 1985(3) classes to those already recognized as suspect or quasi-suspect. *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 505 & n.16 (9th Cir. 1979) (explaining that § 1985(3) is not confined to suspect classifications); *Schultz v. Sundberg*, 759 F.2d 714, 718–19 (9th Cir. 1985) (Ninth Circuit extends § 1985(3) beyond race where there has been a governmental determination that the class warrants special federal assistance in protecting its civil rights). It also recognizes 1985(3) classes where there has been a governmental determination by congress that a group of people require special assistance to protect

---

with disabilities have suffered a history of unequal treatment and exclusion from public services); *PGA Tour, Inc. v. Martin*, 532 U.S. 661 (2001) (describing the ADA as a response to widespread disability discrimination and exclusion).

[4] This line of cases stems from the Ninth Circuit not wanting to be first. *Cal. Ass'n of Physically Handicapped, Inc. v. FCC*, 721 F.2d 667, 670 (9th Cir. 1983) ("No appellate court, however, has held that the handicapped are a suspect class. We decline to be the first.) (internal citation omitted); *Bonner v. Lewis*, 857 F.2d 559, 565 (9th Cir. 1988) (citing *Cal. Ass'n of Physically Handicapped Inc.* to summarily conclude "Handicapped individuals are not a suspect class."). These cases were decided prior to enactment of the ADA in 1990.

PAGE 29 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

their civil rights. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536–37 (9th Cir. 1992) (a non-racial class may qualify where either the courts have designated it suspect or quasi-suspect, or Congress has indicated through legislation that the class requires special protection); *see also Watkins v. U.S. Army*, 837 F.2d 1428, 1435–36 (9th Cir. 1988) (recognizing that § 1985(3) class status may be shown through congressional enactments specially protecting the class). The Ninth Circuit has not ruled on whether disability qualifies as a protected class for § 1985(3) purposes, and the issue before this Court is therefore an open question.

Multiple federal Appellate Circuits recognize disability as a 1985(3) class. The Second Circuit stated in 1982 that the claim that the "mentally retarded" were a class protected by section 1985(3) was "colorable." The court noted that, "Cases since *Griffin v. Breckenridge* have been generous in applying section 1985(3) to nonracial classifications, even though some of the classifications would not receive strict scrutiny under the equal protection clause," citing the Ninth Circuit's acceptance of a gender-based class in *Life Insurance Co. of North America v. Reichardt*, 591 F.2d at 505. *People by Abrams v. 11 Cornwell Co.*, 695 F.2d 34, 42 (2d Cir. 1982), *vacated on other grounds sub nom. People of State of N.Y. by Abrams v. 11 Cornwell Co.*, 718 F.2d 22 (2d Cir. 1983). The decision has never been overruled by the Second Circuit.[5]

---

[5] District courts in this Circuit have found disabled individuals are a class within 1985(3) protection. *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 2023 WL 2537626, at *16 (N.D.N.Y. 2023); *Doe v. Yorkville Plaza Assocs.*, 1994 U.S. Dist. LEXIS 13234, 1994 WL 509903, at *9 (S.D.N.Y. Sept. 19, 1994); *Trautz v. Weisman*, 819 F. Supp. 282, 290 (S.D.N.Y. 1993); *cf. B.D.S. v. Southold Union Free Sch. Dist.*, 2009 U.S. Dist. LEXIS 55981, 2009 WL 1875942, at *20 n.8 (E.D.N.Y. June 24, 2009) ("the Second Circuit has recognized mental disability as a class protected by Section 1985, and, thus, it logically follows that persons with other types of disabilities, i.e., learning and developmental disabilities, would also be part of a class protected by Section 1985") (internal citations omitted); *Abadi v. Am. Airlines, Inc.*, No. 23-cv-4033 (LJL), 2024 U.S. Dist. LEXIS 59889, at *67 (S.D.N.Y. Mar. 29, 2024).

PAGE 30 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

The Eighth Circuit has stated that "§ 1985(3)'s protection extends to the handicapped as a class as well as to females" in *Larson by Larson v. Miller*:

> We believe that Sec. 1985(3)'s protection extends to the handicapped as a class as well as to females.… With due respect to the Seventh and Tenth Circuits, we agree with the Second Circuit's conclusion that Sec. 1985(3) encompasses conspiracies motivated by an invidious discriminatory animus against the handicapped as a class. While cases such as *D'Amato* reject the handicapped as a class that has historically faced invidious discrimination, 760 F.2d at 1486, Congress' passage of the Americans With Disabilities Act convinces us otherwise."

*Larson by Larson v. Miller*, 55 F.3d 1343, 1352 (8th Cir.), *reh'g granted, judgment vacated sub nom. Larson v. Miller*, 67 F.3d 148 (8th Cir. 1995), and *on reh'g*, 76 F.3d 1446 (8th Cir. 1996).

The Third Circuit likewise recognized disability as a 1985(3) class in *Lake v. Arnold*, 112 F.3d 682 (3d Cir. 1997). The Third Circuit's position is highly instructive and persuasive. There, the court considered the history and scope of 1985(3) litigation and reversed dismissal of a § 1985(3) claim premised on the district court's conclusion that disabled persons were not entitled to the statute's protection. *Id*. at 686. The court noted the Supreme Court left open the door for classes other than race, and women were already recognized as a class in § 1985(3) jurisprudence.

The *Lake* court observed that, "When the language and intent of section 1985(3) are examined in light of the relatively recent recognition of current and historic prejudice directed toward the handicapped, it is clear that much of our discussion of gender discrimination in [prior cases] applies with equal force." *Lake v. Arnold*, 112 F.3d at 687. Thus, "To ensure that private conspirators do not strip other citizens of the equal protection of the laws, we must be particularly concerned with those discrete and insular minorities who have traditionally borne the brunt of prejudice in our society." *Id.* at 687 (quoting Ken Gormley, *Private Conspiracies and the Constitution: A Modern Version of 42 U.S.C. Section 1985(3)*, 64 Tex. L. Rev. 527, 550 (1985)).

The Third Circuit grounded its analysis in Congress's findings in the ADA, stating that:

In reaching this conclusion we are influenced by a number of factors which lie outside our own conjecture or analysis. We begin with the explicit statement of Congress itself. In enacting the Americans With Disabilities Act, Congress found that:

> Individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society.

42 U.S.C. § 12101(a)(7).  Increasingly, legislators and courts have recognized that:

> The history of discrimination against individuals with disabilities, while less noted than racial or sex discrimination, is no less a story of a group that has traditionally suffered not only physical barriers but the badge of inferiority emplaced by a society that often shuns their presence.

*Id. at* 688. It concluded that disabled people are included within 1985(3) protections.

The Third Circuit's reasoning and recognition of disability as a class, grounded in Congressional determinations to protect a recognized minority class of individuals with characteristics beyond their control from historical unequal treatment, is highly persuasive in view of the Ninth Circuit's approach to 1985(3) claims which expressly allows a class where "Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

Many district courts have recognized 1985(3) classes premised on disability status. *See Payton v. Cox*, No. 2:20-cv-4838 (S.D. Ohio Dec. 1, 2020) (recognizing that disability-based discrimination can satisfy § 1985(3)'s class-based animus requirement and that plaintiffs alleging conspirators acted out of hostility toward persons with disabilities are within the statute's protection); *Trautz v. Weisman*, 819 F. Supp. 282 (S.D.N.Y. 1993) (holding that persons with learning disabilities sufficiently alleged a cognizable class under § 1985(3)), with a later opinion

PAGE 32 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

expressly stating the 1993 decision held that individuals with disabilities may form a protected class, *Trautz v. Weisman*, 846 F. Supp. 1160 (S.D.N.Y. 1994)); *Tyus v. Ohio Department of Youth Services*, 606 F. Supp. 239 (S.D. Ohio 1985) (mentally disabled individuals are a protected class within the scope of § 1985(3), denying dismissal of § 1985(3) claim).

Plaintiffs recognize the cases cited by Mallory demonstrate a circuit split among courts that have addressed the issue, which not all circuits have. But courts like the Third Circuit in *Lake* have grappled with this disparity and still, in Plaintiff's view correctly, ruled that disabled people fall within the scope of those to be protected by 1985(3).

Mallory cites two cases in which district courts in the Ninth Circuit have declined a 1985(3) class premised on disability. Upon review, neither case supplants Plaintiff's reasoning.

First, Mallory cites to *Vickerman v. Dep't of Hous. & Urban Dev. (Hud)*, No. 03:03-CV-0222-LRH (VPC), 2006 U.S. Dist. LEXIS 102714, at *8 (D. Nev. Nov. 3, 2006). There the court noted the Ninth Circuit has provided no specific rulings on the issue of whether disabled persons constitute a protected class for 1985(3) purposes. The court asked the parties to brief the issue on summary judgment. The defendant cited *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir. 1985) and *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir. 1983), both of which predated the Americans with Disabilities Act, however the court observed that, "Plaintiff has failed to rebut SRA's argument on this point" and, "Plaintiff has provided no support to the contrary."

The plaintiff was *pro se*, and failed to present sufficient evidence of discriminatory animus, therefore the court granted summary judgment against him. The outcome was driven largely by the plaintiff's lack of sufficient legal briefing, rather than a reasoned analysis between competing authorities in an open area of the law.  Applying the Ninth Circuit framework stated in *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992), the court stated only that, had it reached

the issue, it would have held disabled individuals do not constitute a class for which § 1985 relief is available. *Id*. at \*8–9. That statement was therefore not necessary to the judgment. *Vickerman* does not discuss whether Congress's disability-rights legislation satisfies the legislative-protection branch of the *Sever* test. Accordingly, *Vickerman* does not foreclose Plaintiffs' theory here.

Second, Mallory cites to *Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 LX 186565, at \*6 (E.D. Cal. Mar. 10, 2022). The case also involved a 79-year-old, disabled *pro se* plaintiff who sought a temporary restraining order to enjoin proceedings in a pending Solano County divorce matter while he pursued disability accommodations. Because plaintiff was proceeding in forma pauperis, the court screened the complaint, also addressing plaintiff's pending motion for a temporary restraining order. As in *Vickerman*, the court noted that plaintiff *Serris'* 1985(3) allegations were insufficient and conclusory, and that the plaintiff had failed to allege "a class-based invidious discriminatory animus for the conspiracy." The court then cited *D'Amato* and *Wilhelm* for the proposition that disabled individuals do not constitute a class within the meaning of § 1985(3) without applying the Ninth Circuit's *Sever* framework in analyzing the § 1985(3) issue, although the case involved ADA claims.

But not all Ninth Circuit district courts presented with the issue have ruled this way. The recent case of *Wilson v. Mount Diablo Unified Sch. Dist./Special Educ. Local Plan Area*, No. 19-cv-03441-MMC, 2020 U.S. Dist. LEXIS 33788, at \*12-13 (N.D. Cal. Feb. 27, 2020), again involved a *pro se* plaintiff alleging a 1985(3) claim based on disability. The district court dismissed the case, with leave to amend, because the plaintiff failed to allege sufficient facts to support the requisite invidious discriminatory animus. In doing so, the court "assum[ed] a 1985 claim can be based on disability," noting in a footnote that, "Courts of Appeals that have considered the question

PAGE 34 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

have reached differing conclusions as to whether a § 1985 claim may be based on animus toward the disabled. *See Lake v. Arnold*, 112 F.3d 682, 686 (1997) (citing conflicting authorities). To date, the Ninth Circuit has not addressed the issue in a published opinion." *Id*. *Wilson* did not apply the *Sever/Holgate* framework to decide the class question; it treated the issue as an open question and dismissed on pleading grounds instead.

Thus district courts within the Ninth Circuit have not taken a uniform approach, have mostly been presented with insufficient briefing on the topic from *pro se* plaintiffs, and some have recognized the Third Circuit's approach relying on Congressional text in the Americans with Disabilities Act as the persuasive authority. The current state of Ninth Circuit law thus leaves open the door for disabled individuals to qualify as a class for §1985(3) protection.

Plaintiffs' position is that because the Ninth Circuit has not resolved the issue and intra-circuit precedent is not consistent or dispositive, and where the Ninth Circuit's approach to recognizing classes for 1985(3) purposes clearly allows for a class where Congress provides legislative protection for the class's rights, and multiple federal statues provide for the protection of the alleged disabled class's rights, Plaintiffs have met the standard of plausibly alleging a class, consisting of disabled persons with SUD and SMI, for purposes of a 1985(3) claim.

### 2.  *SAC adequately alleges Plaintiffs were targeted as supporters of the class.*

Mallory contends that the Plaintiffs fail to allege *membership* in a cognizable class for purposes of § 1985(3). ECF 37 at 9-13. That argument rests on an overly narrow reading of both the statute and SAC, and ignores well-established principles permitting claims based on discrimination against protected classes *and* their supporters who champion them.

First, 1985(3) is not textually limited to plaintiffs who themselves belong to the class that is the object of the conspirators' discriminatory animus. The statute authorizes suit by "the party

so injured" when conspirators act "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws," and an overt act in furtherance of the conspiracy injures "another." 42 USCS § 1985(3). Thus, where a plaintiff alleges personal injury inflicted because of the plaintiff's association with, support for, or advocacy on behalf of the targeted class, the plaintiff may proceed so long as the complaint plausibly ties the injury to a conspiracy animated by the requisite class-based discriminatory purpose, even if the plaintiff is not a member of that class. *Id*.

The legislative history of 42 USC § 1985, as detailed in *Farber v. City of Paterson*, "underscores the view that a § 1985(3) plaintiff need not be a member of the class against which a conspiracy directs its invidiously discriminatory animus, even if in practice this is most often the case[.]" *Farber v. City of Paterson*, 440 F.3d 131, 141 (3d Cir. 2006); see *also Keating v. Carey*, 706 F.2d 377, 388 (2d Cir. 1983) (providing a detailed review of the legislative history and intent of the statute in relation to retaliation against supporters of changed law and social policy during the reconstruction era). This interpretation aligns with the statute's broad remedial purpose.

Consistent with the statute's text and legislative history, the Supreme Court has construed § 1985(3) to require that the conspiracy be driven by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), but has also acknowledged that the deprivation may be accomplished "directly or indirectly," *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 314, 113 S. Ct. 753, 782, 793 (1993) (J. Souter, dissent). The Supreme Court likewise stated that, "The predominate purpose of § 1985(3) was to combat the prevalent animus against Negroes *and their supporters*. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro*." United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v.*

*Scott*, 463 U.S. 825, 836 (1983) (emphasis added); *Bray v. Alexandria Women's Health Clinic*, 506 at 271 n.2 (assuming for sake of argument that the position, "a racial conspiracy against blacks does not lose that character when it targets in addition white supporters of black rights" was correct). Taken together, the law recognizes that conspirators may target a either the protected class directly, or indirectly via proxies or supporters engaged in advocacy conduct, and provides recourse for either form of attack on the class.

Appellate and district courts have allowed 1985(3) claims for plaintiffs who are not a member of the asserted protected class. *See Black Unity v. City of Springfield*, No. 6:21-cv-00346-AA, 2026 WL 183363 (D. Or. Jan. 23, 2026) (denying summary judgment on 1985(3) claim where Plaintiffs "allege that they are a protected class of Black people *and their supporters*, who were targets of a racially motivated conspiracy, including 'racial violence' perpetrated by an 'Anti-BLM mob[]' that was 'facilitated' by Defendants.") (emphasis added); *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1272 (10th Cir. 1989) (Plaintiff adequately alleged a 1985(3) claim showing "discriminatory animus against blacks *and those who help blacks*") (emphasis added); *Lesley v. Bennett*, 778 F. Supp. 3d 1201, 1216 (D. Wyo. 2025) ("relief under Section 1985(3) … extends to supporters and advocates of protected groups, including non-race-based classes . . . . neither Defendants nor this Court has found any textual support nor caselaw that would require an arbitrary line to be drawn between advocates of racial groups and advocates of other protected classes"); *Waller v. Butkovich*, 584 F. Supp. 909, 937 (M.D.N.C. 1984) ("The Court holds that the "advocates of equal rights for black people" alternative provides the requisite animus allegation. The Court notes, however, that to succeed on this ground the plaintiffs must prove that they were identifiable in the defendants' eyes as members of a class of *advocates* of equal rights for black people. Otherwise the defendants could not have singled them out as objects of a conspiracy on this

ground. This is, nevertheless, a matter of proof, and not properly resolvable on motions to dismiss.") (emphasis added, internal citation omitted).

Mallory's argument to the contrary sits in tension with § 1985(3)'s express "directly or indirectly" language and its focus on whether "another" was injured by an act in furtherance of a class-animated conspiracy, and case law allowing 1985(3) claims by "supporters" or advocates of the alleged class, which provides liability where conspirators retaliate against nonmembers because they aid, associate with, or otherwise champion the targeted class. 42 USC § 1985.

Here, Plaintiffs allege they were supporters and advocates for the identified protected class and were harmed by a conspiracy motivated by discriminatory animus against that class. The SAC pleads that Plaintiffs provide harm reduction and public health services to individuals with SUD and SMI, SAC, ¶¶ 11-13, 57, 59, 61, 178-180, 187-191, 200; that Plaintiffs are publicly identified with and advocate for that population; *Id.*, ¶¶ 53–56, 61–64, 67, 72, 135, 190-191, 200; that Defendants were aware of this association and opposed Plaintiffs' work for that reason, *Id.*, ¶¶ 3–5, 40, 54, 63, 69–71, 82–85(a), 97–99, 120–128, 194, 200, 202, and that Defendants engaged in a coordinated campaign of retaliation, surveillance, and interference directed at Plaintiffs because of that work, *Id.*, ¶¶ 5, 7, 73-76, 81-85, 95, 97-99, 103, 114-125, 127-132, 141-143, 153, 155, 158, 194, 196, 201, 203. These allegations support a reasonable inference that Plaintiffs were targeted not merely for speech, but due to their services and support on behalf of a stigmatized population associated with drug use and mental illness.

### 3. *SAC Contains Sufficient Allegations of Class-Based Discriminatory Animus*

Mallory argues the SAC fails to plausibly allege that he, as distinct from the City Defendants, acted with discriminatory animus toward the protected class. In doing so, Mallory's motion again asks the Court to construe the SAC in the narrowest possible way while ignoring the

broader allegations it contains. The SAC alleges Mallory knowingly joined the campaign against Plaintiffs because of the very work Plaintiffs performed on behalf of persons with SUD and SMI.

First, the SAC alleges that Mallory acted with awareness of Plaintiffs' role as harm-reduction advocates and service providers for the class. The complaint alleges that Stabbin' Wagon provides harm reduction and public health services, including syringe services, overdose prevention, HIV testing, and a peer respite program. SAC, ¶ 57. It further alleges that Stabbin' Wagon's model is "peer-led, non-clinical harm reduction services with no requirement for abstinence," and that this work had drawn hostility from Medford police and police-aligned providers. *Id*., ¶¶ 59, 61. The SAC also alleges that Jones and Strong were well known for supporting unhoused communities and were publicly identified with Stabbin' Wagon's work. *Id*., ¶ 54. Against that backdrop, the SAC alleges Mallory "was aware of the City of Medford's disdain for and undermining of Plaintiffs' advocacy and Stabbin' Wagon's operations" and "was aware of MPD's campaign to undermine the Stabbin' Wagon OHA grant." *Id*., ¶¶ 101–102.

Second, the SAC alleges that Mallory did not merely comment on an unrelated controversy, but instead adopted and amplified the same anti-Plaintiff, anti-harm-reduction campaign being pursued by others. The SAC alleges Mallory "amplified the same accusations, parroted the City Defendants' same language and calls to action, and timed his conduct to coincide with the City's actions against Plaintiffs." *Id*., ¶ 103. It further alleges that, during the campaign to block the OHA grant for Stabbin' Wagon's peer-run respite center, Mallory posted a video urging the community to oppose the grant and "demonizing Stabbin' Wagon's harm reduction work." *Id*., ¶ 120. The SAC then quotes Mallory's own statements that: "Nothing about these folks qualifies them to do that [open a peer respite center]. If it was Jackson County Health Authority or one of the many recovery organizations doing this, [I] probably wouldn't say much." *Id*., ¶ 121. The distinction is

PAGE 39 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

critical, because other providers in Jackson County emphasized drug abstinence and clinical treatment and worked directly with Medford Police, including allowing police to determine who was allowed access to services, SAC ¶¶ 45–46, 51, 60, whereas Stabbin' Wagon's peer respite and outreach services did not require abstinence, were low-barrier, and did not coordinate with police. SAC ¶¶ 59, 61. Mallory described Plaintiffs as "[u]nqualified people that fill our Parks in greenways with needles, keep people addicted by promoting drug use," while urging the money instead go to "a qualified recovery agency or the Jackson County health authority." *Id*., ¶ 123.

Those allegations plausibly support an inference of discriminatory animus toward the class and Plaintiffs as its advocates. Mallory criticized Plaintiffs' qualifications, while attacking the substance of their harm reduction work as "keep[ing] people addicted," contrasted Plaintiffs with more acceptable "recovery" actors, and sought to strip funding from a low-barrier peer respite center intended to serve people with SUD and/or SMI. *Id*., ¶¶ 96, 120–123.[6] At the pleading stage, those allegations permit the inference that Mallory was hostile to the population Plaintiffs served and to Plaintiffs because they served and advocated for that population.

Third, the SAC alleges that Mallory's conduct was intentional, coordinated, and directed at suppressing Plaintiffs' advocacy for the class. It alleges Mallory's September 7 post occurred "during the height of Defendants' campaign to interfere with the OHA grant" and "echoed the same claims, requests for audits, and demands for rescission being advanced by City officials through nonpublic channels." *Id*., ¶ 124. It alleges Mallory acted "with the understanding and intent that it would amplify and legitimize the City's pressure campaign." *Id*., ¶ 125. It further

---

[6] Ironically, none of the other recovery agencies nor the Jackson County Health Authority referenced by Mallory qualified for the grant precisely because they did not offer peer services, and indeed, none of them had applied for the grant. They, Mallory, and the City of Medford were simply outraged that Plaintiffs' approach to harm reduction work – which had not been blessed by City and police leadership – had been further legitimized through a $1.5 million grant.

PAGE 40 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

alleges that Mallory "did not act as a neutral commentator or moderator, but as a knowing participant" who used his platform to assist in suppressing Plaintiffs' protected activity. *Id.*, ¶ 127. And it alleges his conduct was "aligned with and in furtherance of the conspiracy by City of Medford Defendants to suppress Plaintiffs' protected speech, undermine Stabbin' Wagon's operations, and intimidate supporters of homelessness rights, drug decriminalization, and harm reduction." *Id.*, ¶ 128. The SAC also alleges Mallory's hostility continued beyond a single post. He later posted that Stabbin' Wagon "shouldn't be in business at all, it worsens the problem" and that "[t]hey get $1M to sit in the trailer and hand out needles." *Id.*, ¶ 140. Those allegations further support the inference that Mallory's animus was directed not just at Plaintiffs personally, but at the harm reduction mission Plaintiffs carried out for persons with SUD and related conditions.

Finally, the SAC expressly ties Defendants' animus, including Mallory's, to Plaintiffs' support for the protected class. It alleges Defendants undertook a conspiracy to "punish those who supported or embodied" the rights at issue and "targeted Plaintiffs for their direct support of this legally protected class." *Id.*, ¶ 194. It alleges Plaintiffs "supported, protected, and defended this class, through public health work, activism, recording of police activity, and policy advocacy," and thereby "became the focus of Defendants' animus." *Id.*, ¶ 200. And it alleges Plaintiffs were targeted "because they were helping the very class that Defendants sought to exclude, punish, and suppress from public life in Medford," *Id.*, ¶ 202, while citing to historical articles demonstrating Medford's history of enforcing sundown town policies of exclusion against disfavored groups, SAC ¶¶ 24–25. On a motion to dismiss, those allegations must be taken as true and read together with the specific factual allegations concerning Mallory's statements and conduct.

In short, the SAC does not rely on conclusory group pleading as to Mallory. It alleges his knowledge of Plaintiffs' advocacy, his adoption of anti-harm reduction rhetoric, his targeted effort

PAGE 41 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

to block funding for services intended for people with SUD and/or SMI, his portrayal of Plaintiffs as illegitimate because they served that population through harm reduction rather than abstinence-based recovery, and his active participation in a broader effort to suppress Plaintiffs' advocacy. That is sufficient to plausibly allege discriminatory animus by Mallory himself.

### 4. *SAC Need Only Plausibly Allege the Class and Discriminatory Animus*

At this stage, Plaintiffs need not prove that their asserted class will ultimately prevail under § 1985(3) or that Mallory conclusively acted with animus; they need only allege facts that, taken as true, plausibly support the existence of a protected class and class-based animus. Courts have long treated this as a pleading question, not a merits determination. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). At this stage, a claimant's allegations need only "nudge . . . the claim across the line from conceivable to plausible." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 976 (9th Cir. 2009), *rev'd on other grounds sub nom., Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). Rule 12(b)(6) does not require Plaintiffs to conclusively establish the success of their class theory before discovery.  Plaintiffs allege discrimination tied to a  stigmatized disabled population, and retaliation against those advocating for it. Under governing precedent, those allegations are sufficient to plead a cognizable class and discriminatory animus.

### E.  Mallory's Speech is Not Protected When It Furthers a Conspiracy and Causes Harm

Here, the SAC repeatedly alleges that Plaintiffs engaged in protected advocacy critical of Medford police and City policy; that Defendants and their allies sought to suppress that advocacy through surveillance, arrests, disparagement, funding interference, and intimidation; and that

PAGE 42 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

Mallory used his own platform to assist that campaign. SAC ¶¶ 3-7, 62-76, 81-85, 95-103 114-144, 153. Those allegations provide the retaliatory context that makes Mallory's conduct plausible as conspiratorial participation, not mere detached commentary.

Mallory's motion attempts to flip that theory by characterizing his conduct as protected counter-speech. However, the issue is not whether Mallory was free to disagree with Plaintiffs in the abstract, but whether the SAC plausibly alleges that he knowingly participated in a coordinated campaign to retaliate against protected advocacy and to deprive Plaintiffs of equal protection and equal privileges under law. It does.

Defendant Mallory's First Amendment argument fails because it misstates the theory of the claim. Plaintiffs do not seek to impose liability based on Mallory's viewpoint, criticism, or participation in public debate. Rather, Plaintiffs allege that Mallory joined and advanced a coordinated conspiracy with City Defendants to retaliate against Plaintiffs for protected activity, interfere with their operations and funding, and deprive them of constitutional rights. SAC ¶¶ 97-99, 103-105, 119-128, 140-143, 194, 196-205. The First Amendment does not immunize speech acts that are alleged to be the means of carrying out unlawful conduct.

The Supreme Court has long held that speech is not protected when it is "an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949). The Court has likewise recognized a historical category of unprotected speech for speech "integral to criminal conduct." *United States v. Stevens*, 559 U.S. 460, 468 (2010). Thus, where a plaintiff alleges that speech was used to form, advance, or implement an unlawful conspiracy, the First Amendment does not require dismissal.

Here, Plaintiffs allege coordinated action undertaken with City Defendants to retaliate against Plaintiffs and undermine their work. SAC ¶¶ 97-99, 103, 119-128, 196, 201-203. Section

PAGE 43 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

1985(3) reaches private conspiracies, *Griffin*, 403 U.S. at 101, and private parties who act jointly with state actors may be held liable for constitutional wrongdoing. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (Even if the state actor were entitled to immunity, it would not follow that actions against private parties must be dismissed); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

Nor does the First Amendment protect speech that authorizes, directs, or advances unlawful acts. It does not immunize a defendant who "authorized, directed, or ratified" unlawful conduct. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 927 (1982). That distinction favors Plaintiffs. The SAC alleges Mallory used his platform to dox Plaintiffs, SAC ¶¶ 114-118, 130-141, 196, 203; spread defamatory accusations, *Id.*, ¶¶ 114–125, 127–128, 140–141, 203; incite intentional interference with Stabbin' Wagon's economic relations, *Id.*, ¶¶ 119–125, 127–128, 140–143, 203(c), and act in furtherance of the conspiracy alleged against the City Defendants. *Id.*, ¶¶ 114-127, 196-205. Doxxing, harassment, defamation, and intentional interference with economic relations are all unlawful conduct in Oregon. *See* ORS 30.835, 30.866, 163.730, 166.065; *Kraemer v. Harding*, 976 P.2d 1160 (1999); *McGanty v. Staudenraus,* 901 P.2d 841 (1995). And speech used to threaten or intimidate identifiable persons is not categorically protected. *Virginia v. Black*, 538 U.S. 343, 359 (2003). Speech may lose protection where, in context, it constitutes a true threat directed at specific individuals. *Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1071-73, 1109 (9th Cir. 2002) (en banc). These authorities foreclose any argument that alleged doxxing and targeted intimidation are automatically immunized simply because they occurred through speech.

Finally, conspiracy may be pleaded and proved through circumstantial evidence. Public-facing speech and publication can form the basis of acts in furtherance of an unlawful conspiracy. *Mendocino,* 192 F.3d at 1302-3 ("appellees have presented sufficient circumstantial evidence that

PAGE 44 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**

the appellants intended to inhibit their First Amendment activities, and that they entered a conspiracy to further this goal, to survive a motion for summary judgment. . . . the appellants actively publicized the inaccurate information to the media, an act which is consistent with a desire to create a negative impression of Earth First! among the public. . . . The possibility that other inferences could be drawn that would provide an alternate explanation for the appellants' actions does not entitle them to summary judgment.").

Plaintiffs allege coordinated timing, shared objectives, and interdependent conduct between Mallory and City Defendants, sufficient to present a 1985(3) claim based on Mallory's publication activity in furtherance of the City's objectives and conspiracy. SAC ¶¶ 101-105, 120-128, 196, 201-204; *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1547 (9th Cir. 1989) (company's powerful position and close relationship with law enforcement, meeting at which company urged police to treat plaintiffs harshly, inequitable treatment of plaintiffs by police, and active cooperation between company and police during strike was sufficient evidence of company's participation in conspiracy to withstand summary judgment). Taking those allegations as true, the First Amendment does not provide a basis to dismiss the conspiracy claim at this stage.

### F. Qualified Immunity Is Not Available to Mallory as a Private Actor

Mallory insists he is entitled to qualified immunity under 1983 jurisprudence. Not so. The Supreme Court held that private parties sued under 1983 cannot claim qualified immunity. *Wyatt v. Cole*, 504 U.S. 158, 168-69 (1992); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n.23 (1982); *see also Gonzalez v. Spencer*, 336 F.3d 832, 835 (9th Cir. 2003) ("Spencer is not entitled to qualified immunity. She is a private party, not a government employee, and she has pointed to 'no special reasons significantly favoring an extension of governmental immunity' to private parties in her position."); *Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996). Nor can private actors sued under

1985(3) invoke qualified immunity. "Neither public officials nor private citizens may assert a defense of qualified immunity to claims under 42 U.S.C. § 1985(3)." *Jones v. Hous. Auth.*, CIVIL ACTION NO. 93-0717-BH-C, 1995 U.S. Dist. LEXIS 13384, at \*29 (S.D. Ala. Aug. 9, 1995); *De La O v. Arnold-Williams*, No. CV-04-0192-EFS, 2007 U.S. Dist. LEXIS 57, at \*18 (E.D. Wash. Jan. 3, 2007) ("[Q]ualified immunity is not an available defense to a § 1985(3) cause of action.").

### G. At Minimum, Plaintiffs Should Be Granted Leave To Amend

If the Court determines the SAC requires additional detail, that warrants leave to amend rather than dismissal with prejudice. *Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir. 2009).

## V.    CONCLUSION

Plaintiffs respectfully request the Court deny Defendant Mallory's Motion to Dismiss.

DATED:  March 30, 2026.           Respectfully submitted,

> LEDUC MONTGOMERY LLC
>
> By: *s/Alicia LeDuc Montgomery*
> **Alicia LeDuc Montgomery, OSB # 173963**
> alicia@leducmontgomery.com
> 704.702.6934
>
> **Marianne Dugan, OSB # 932563**
> CIVIL LIBERTIES DEFENSE CENTER
> mdugan@cldc.org
> 541.687.9180
>
> *Attorneys for Plaintiffs*

PAGE 46 – **PLAINTIFFS' RESPONSE TO DEFENDANT MALLORY'S MOTION TO DISMISS**