**Stephanie C. Kucera**, OSB No. 165509
E-Mail:  sck@hartwagner.com
**Zachariah H. Allen**, OSB No. 122729
E-Mail:  zha@hartwagner.com
**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, OR  97702
Telephone: (541) 548-6044
Fax: (541) 548-6034

Of Attorneys for Defendants City of
Medford, Brian Sjothun, Randy Sparacino,
Justin Ivens, Darrell Graham, Geoff
Kirkpatrick, Trevor Arnold and Arturo Vega

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| STABBIN WAGON, an Oregon public benefit corporation; **MELISSA JONES,** an individual; and **SAMANTHA STRONG**, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF MEDFORD, a municipal corporation; **BRIAN SJOTHUN**, an individual; **RANDY SPARACINO,** an individual; **JUSTIN IVENS,** an individual; **DARRELL GRAHAM,** an individual; **GEOFF KIRKPATRICK,** an individual; **TREVOR ARNOLD,** an individual; **ARTURO VEGA,** an individual; **RYAN MALLORY,** an individual; and **JOHN AND JANE DOES 1-9,** individual employees or agents of the City of Medford,<br><br>Defendants. | Case No. 1:25-cv-01632-MTK<br><br>**REPLY IN SUPPORT OF DEFENDANTS CITY OF MEDFORD, BRIAN SJOTHUN, RANDY SPARACINO, JUSTIN IVENS, DARRELL GRAHAM, GEOFF KIRKPATRICK, TREVOR ARNOLD AND ARTURO VEGA'S MOTION TO DISMISS** |

//

//

Page 1 –    **REPLY IN SUPPORT OF MEDFORD DEFENDANTS' MOTION TO DISMISS**

## REPLY

Defendants City of Medford, Brian Sjothun, Randy Sparacino, Justin Ivens, Darrell Graham, Geoff Kirkpatrick, Trevor Arnold, and Arturo Vega ("City Defendants"), submit the following reply in support of their Motion to Dismiss.

The City Defendants urge the Court to dismiss the complaint for all the reasons stated in their motion to dismiss, and offer the following in reply to certain of the points raised in plaintiffs' response, in the order presented therein.

### 1.     Taking Noticing of What Plaintiffs Alleged in a Related Lawsuit is Not Resolving a "Disputed" Issue of Fact.

Plaintiffs do not dispute that the Court may, at the Rule 12 stage, take notice of what Jones and the Stabbin' Wagon avowed in their state-court complaint about when they discovered the alleged "surveillance." *See Harris v. County of Orange*, 682 F.3d 1126 (9th Cir. 2012) (under Fed. R. Evid. 201, courts may take judicial notice of undisputed matters of public record, including documents filed in state courts).

Instead, plaintiffs object to the Court *accepting the truth* of any "disputed factual assertions" within the state court complaint.[1]   (Pl.'s Resp. at p. 4.)  However, there are no "disputed factual assertions": Jones and the Stabbin' Wagon affirmatively alleged—and continue to allege—that they learned of the unlawful surveillance from a whistleblower more than two years before filing this action.  (Kucera Dec. at Ex. 1, pp. 11–12.)  That avowal to the state court,

---

[1] Plaintiffs also object to this Court considering its own opinion and order in a separate matter involving John Malaer.  (Pl.'s Resp. at pp. 4–5.)  Plaintiff's argument is legally incorrect, *e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006), but, in view of plaintiffs' concession that their Fourth Amendment *Monell* claims cannot survive the motion to dismiss, it is unnecessary for the Court to address that issue at all.

Page 2 –     **REPLY IN SUPPORT OF MEDFORD DEFENDANTS' MOTION TO DISMISS**

**HART WAGNER LLP**
**Trial Attorneys**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

which they do not repudiate and continue to press in their state case, is *consistent* with everything plaintiffs allege in their federal complaint.

There is no dispute of fact for the Court to resolve; defendants' motion merely asks the Court to accept the truth of what plaintiffs *themselves* allege to be true.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, *and matters of which a court may take judicial notice*." (Emphasis added.)); *see id.* (the inquiry is "whether *all* the facts alleged, taken collectively" survive a motion to dismiss) (emphasis in original).

### 2.    Plaintiffs' First Amendment Claim Fails to State a Claim for Relief.

Plaintiffs' arguments in support of their First Amendment claims illustrate the perils of offering lengthy "shotgun pleadings" in lieu of "short and plain" statements for relief under Fed. R. Civ. P.  8.  Plaintiffs' complaint proposes to hold each individual defendant liable for First Amendment retaliation and alleges that *each* defendant retaliated against all plaintiffs with, *inter alia*, "pretextual stops, unlawful arrests, and targeted citations."  (SAC at ¶ 155 g.)

Now, plaintiffs explain that they only included the (extensive) allegations about that untimely conduct as "context" to "demonstrate a pattern of discriminatory animus."  (Pl.'s Resp. at p. 11.)  That explanation is false: the complaint plainly and undeniably alleged that the stops, arrests, and citations *themselves* violated each plaintiff's respective First Amendment rights and entitled each plaintiff to damages.  (SAC at ¶¶ 154–162.)

That explanation also offers small comfort for Officer Vega, because the *only* factual allegation about him concerned a 2021 stop that plaintiffs now say was only included as

Page 3 –    **REPLY IN SUPPORT OF MEDFORD DEFENDANTS'
MOTION TO DISMISS**

"context." Officer Vega should never have been named in this suit on the basis of untimely allegations offered only for "context," and he should be dismissed from this suit with prejudice.

The response objects to "isolat[ing] each factual allegation" and addressing that allegation "standing alone." (Resp. at p. 6 (formatting altered).) This fails to recognize that the "shotgun complaint"—which alleges that different defendants engaged in different alleged retaliatory acts at different times and then alleges that all defendants are liable for *all* alleged acts—makes this necessary to determine whether the complaint plausibly states a claim against each defendant. *See Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009) (government officials are responsible for the consequences of *their own* actions).

Plaintiffs later acknowledge the necessity of isolating the allegations about each discrete form of alleged retaliation when they argue that the complaint adequately identifies each defendant's "role." (Pl.'s Resp. at p. 25.) For instance: "Sjothun, Ivens, Arnold, and Kirkpatrick are specifically identified as participants in the coordinated effort to undermine the OHA grant." (Resp. at p. 10.) As discussed below, however, this alleged *form* of retaliation does not suffice to state a claim because constitutionally protected opposition to the Stabbin' Wagon's state OHA grant cannot serve as the basis for a First Amendment retaliation claim.

There, as at all other points, the First Amendment retaliation claim fails to allege facts plausibly establishing that each individual City Defendant, through *that* defendant's actions, caused a violation of plaintiffs' First Amendment rights.

### 3. Plaintiffs Cannot Base Their Claims on Constitutionally Protected Counterspeech.

Plaintiffs do not dispute that the defendants alleged to be involved in opposing the OHA grant were opposing that grant through First Amendment-protected means¸ *e.g.*, counter-speech. Instead, plaintiffs attempt to distinguish *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041

Page 4 –     **REPLY IN SUPPORT OF MEDFORD DEFENDANTS'
MOTION TO DISMISS**

**HART WAGNER LLP**
**Trial Attorneys**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

(9th Cir. 1994) by claiming that, unlike *Gini*, their lawsuit is not a "'damage to reputation'" case, but instead a "non-employment First Amendment retaliation case." (Pl.'s Resp. at p. 7.) Although plaintiffs never explain *why* this distinction matters, the oversight is immaterial: the complaint repeatedly asserts that plaintiffs suffered reputational harm. (SAC at ¶¶ 98, 141, 159, 173, 195, 206, 207.)

At all events, *Gini* holds that speech by government actors who did not "make any decision or take any state action affecting [plaintiffs'] rights, benefits, relationship, or status with the state" is not actionable retaliation. *Id.* at 1045. Plaintiffs never counter the point that defendants had their own First Amendment rights to voice opposition to a *state* OHA grant that was outside the defendants' power to award or deny. And, on top of that, plaintiffs assert only that the OHA Grant was "delayed," which is not a meaningful enough result to curtail defendants' protected speech activities to oppose the OHA grant. (Resp. at p. 9.)

Plaintiffs also dispute the applicability of *Gini* by citing cases establishing that the right to be free from unlawful governmental retaliation for protected speech is "clearly established," which is a proposition as accurate as it is inadequate. (Pl.'s Resp. at pp. 7–8 (citing *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) and *Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013).). Observing that plaintiffs had a clearly established First Amendment right does not answer the point that City Defendants did too.

### 4.    Plaintiffs Abandon Their Fourth Amendment *Monell* Claim.

Plaintiffs offer no defense of their Fourth Amendment *Monell* claim, and the Court should accept this as a concession that the claim is not stated. *See Lancaster v. Or. Health*, No. 3:24-cv-00916-SB, 2025 U.S. Dist. LEXIS 148286, at *5 (D. Or. Jan. 10, 2025) (A plaintiff who

Page 5 –    **REPLY IN SUPPORT OF MEDFORD DEFENDANTS'
MOTION TO DISMISS**

makes a claim in a complaint but fails to raise the issue in response to a defendant's motion to dismiss that claim has effectively abandoned it. (And citing cases.)).

### 5.    Plaintiffs Do Not Allege Facts to Plausibly Allege any *Monell* Claim.

Plaintiffs' invocation of pre-2009 caselaw regarding the pleading standards for *Monell* claims (at pp. 12–13) is unavailing. "Since [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] courts have repeatedly rejected conclusory *Monell* allegations that lack factual content from which one could plausibly infer *Monell* liability." *King v. City of Portland*, No. 3:22-cv-00801-AR, 2023 U.S. Dist. LEXIS 172959, at *9 (D. Or. Aug. 23, 2023) (internal quotation marks omitted). To withstand a motion to dismiss, a *Monell* claim must consist of more than mere formulaic recitations of the existence of unlawful policies, conduct, or habits. *Id.* (internal quotation marks omitted).

Instead of identifying which *facts* in the complaint plausibly allege a *Monell* theory of relief, the response simply points to the complaints' legal conclusions. For example, the response argues that the "SAC expressly alleges that the City, through final policymakers, including the City Manager, Mayor, and Chief of Police, approved, directed or ratified the retaliatory surveillance, arrests, and interference described in the complaint. SAC at 43." And so it does: "Defendant City of Medford, through its final policymakers (including, but not limited to the City Manager, Chief of Police, and Mayor) approved, directed, or ratified the retaliatory conduct, surveillance, arrests, and interference detailed in this Complaint." (SAC at p. 43, ¶ 166.) Those, however, are not facts plausibly showing a final policymaker "ratifying" any unconstitutional conduct, but instead merely a "formulaic recitation" that some (unspecified) conduct was ratified by some (unspecified) members of the City Manager, Mayor, and Chief of Police at some (unspecified) point in time.

**HART WAGNER LLP**
**Trial Attorneys**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

The same is true of plaintiffs' failure-to-train or -supervise allegations.  A failure to train or supervise can lead to *Monell* liability only where the training or supervision is inadequate to the point of "deliberate indifference" to citizens' constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197 (1989) (failure to train); *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) (failure to supervise).  Deliberate indifference is "a stringent standard of fault," requiring proof that a municipality disregarded a known or obvious consequence of its action or inaction.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997); *Horton*, 915 F.3d at 603.

The complaint offers no facts about the training/supervision/discipline of any city agent, nor how any City Defendant was responsible for that training/supervision/discipline, nor how any shortcoming in training/supervision/discipline caused any constitutional violations.  Instead, again here, the response merely offers citations to the complaint's wholly conclusory assertions that the City failed to train, supervise, or discipline some unspecified employees at some unspecified point in time in response to some unspecified circumstance.  (Pl.'s Resp. at pp. 15 – 16 (citing SAC at pp. 43–44 )

Similarly, to establish *Monell* liability based on a "ratification" theory, a plaintiff must offer factual allegations plausibly demonstrating that a final policymaker for the City "knew of and specifically made a deliberate choice to approve" a constitutional violation.  *Santos v. Naphcare, Inc.*, 3:21-cv-00131, 2022 U.S. Dist. LEXIS 49121, at *11 (D. Or. Feb. 4, 2022); *King v. City of Portland*, No. 3:22-cv-00801, 2023 U.S. Dist. LEXIS 172959, at *13 (D. Or. Aug. 23, 2023).  Here, too, plaintiffs merely point to the legal conclusions at pages 43–44 of the complaint.  (Resp. at pp. 14–15 (citing SAC at p. 43.).)  Plaintiffs add that the complaint alleges "direct involvement by senior officials in the OHA grant campaign, including Sjothun, Ivens,

Page 7 –     **REPLY IN SUPPORT OF MEDFORD DEFENDANTS'
MOTION TO DISMISS**

**HART WAGNER LLP**
Trial Attorneys
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

Arnold, and Kirkpatrick." (*Id.* citing SAC at p. 28.)  But neither the conclusory assertion of "direct involvement," nor any other of these legal conclusions, plausibly allege that a final policymaker made a "deliberate choice" to approve a constitutional violation.

### 6. Plaintiffs Fail to Allege a Conspiracy Against a Protected Class.

Plaintiffs' attempt to allege a conspiracy fails for all the reasons discussed in defendants' motion.  Many of the main deficiencies with plaintiffs' theory of an actionable "meeting of the minds" between Mallory and the City Defendants are seen in the following passage of the response:

> "Critically, the SAC does not stop at alleging shared viewpoints.  It alleges that Mallory amplified the same accusations, parroted the City Defendants' same language and calls to action, and timed his conduct to coincide with the City's actions against Plaintiffs.  *Id.* ¶ 103.  That is a direct allegation of *coordinated action*."

(Pl.'s Resp. at p. 18 (emphasis added).)  That is not, in fact, a direct allegation of "coordinated action."  It is an allegation, primarily, that the City Defendants were not the only ones in Medford who opposed the Stabbin' Wagon's receipt of $1.5 million in state grant funds.  This alone, however, does not establish a "meeting of the minds."  Generally, "lawful parallel conduct fails to bespeak unlawful agreement.  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to state a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The passage also highlights how plaintiffs are attempting to impose liability on the basis of a "conspiracy" among defendants to engage in *constitutionally protected counter-speech*.  The City Defendants had a constitutionally protected right to oppose the Stabbin' Wagon's grant by making "accusations," and by using "language and calls to action."  Just as surely, Mallory had

Page 8 –   **REPLY IN SUPPORT OF MEDFORD DEFENDANTS' MOTION TO DISMISS**

his own constitutional right to "amplify[ ]" those accusations and "parrot[ ]" the City Defendants' language.

And all defendants enjoyed a constitutional right to associate for expressing their respective viewpoints. *Kusper v. Pontikes*, 414 U.S. 51, 56, 94 S. Ct. 303 (1973) (there can be "no doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments." (Internal quotation marks omitted.)). Even if there were allegations to plausibly allege a meeting of the minds and coordination (and there are not), any "conspiracy" to engage in protected First Amendment activities regarding a matter of public importance could not plausibly support a Section 1985 conspiracy claim.

### 7.    Plaintiffs Fail to Plausibly Allege Animus Towards Any Protected Class.

The response asserts that plaintiffs only bring their 42 U.S.C. § 1985(3) conspiracy claim as "supporters of people with SUD [Substance Use Disorder] and/or SMI [Serious Mental Illness]," disavowing the complaint's broader allegations that the "Stabbin' Wagon's clients… constitute a protected class under § 1985(3)." (SAC at ¶ 198.) (Pl.'s Resp. at p. 31.)

By purporting to narrow their claimed protected class to a distinct subset of the Stabbin' Wagon's "clients," the response reveals the fundamental implausibility of plaintiffs' conspiracy claim, which requires plaintiffs to demonstrate a deprivation of a legally protected right motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790 (1971).

The complaint offers many different formulations of the Stabbin' Wagon's clients, but at bottom, plaintiffs purport to represent "vulnerable persons in Jackson County." (SAC at ¶ 57.)

**HART WAGNER LLP**
**Trial Attorneys**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

The complaint also alleges that the defendants disliked or disagreed with a *galaxy* of different "protected outreach and expressive activities" and viewpoints by plaintiffs, including many that have nothing to do with plaintiffs' support for those suffering a SUD or SMI.  (SAC at ¶¶ 11, 12, and 13.)

Out of (1) that diversity of Stabbin' Wagon's clients and (2) that galaxy of plaintiffs' viewpoints and expressive activities, plaintiffs attempt to conjure a conspiracy by singling out one narrow subset of "clients" and alleging that each defendant agreed to retaliate against plaintiffs specifically because of animus for plaintiff's support of that *one, specific subset* of "clients," *e.g.*, those suffering SUD and SMI.[2]

The Supreme Court has disapproved of defining "class" for Section 1985(3) claims in this way.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269, 113 S. Ct. 753 (1993) ("Whatever may be the precise meaning of a 'class' for purposes of *Griffin*'s speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.").  Allowing plaintiffs to allege a class on the basis that *some* of their clients are SUD and SMI sufferers, and that *some* of their wide-ranging advocacy embraces non-abstinence harm reduction for drug users would be a step towards turning Section 1985(3) into a source of general tort law.  *See id.* ("innumerable tort plaintiffs would be able to assert causes of action under §

---

[2] This is directly contrary to some of the complaint's allegations about why MPD, generally, did not agree with plaintiffs' viewpoints.  SAC at ¶ 69: "MPD did not like Plaintiffs publicly exposing video footage of police sweeps of homeless people[.]"  SAC at 71: Describing MPD officer Kirkpatrick acting hostile and displaying "animosity towards Jones, Stabbin' Wagon, and other *housing rights activists*." (Emphasis added.);  SAC at ¶ 199: Discussing the MPD's views of the "rural, medically disabled, and economically marginalized" as "an unworthy criminal class."

Page 10 –    **REPLY IN SUPPORT OF MEDFORD DEFENDANTS' MOTION TO DISMISS**

1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with" (internal quotation marks omitted)).  Put another way, there are no facts alleged to plausibly support that defendants reached a meeting of the minds specifically to retaliate against plaintiffs because of their "support" for one discrete sub-group among all the diverse groups of people plaintiffs claim to have "supported."

In fact, there are not even facts to plausibly allege that any defendant harbored *animus* for those suffering from SUD or SMI.  To the contrary, plaintiffs allege that certain "co-conspirators" and other MPD members were *themselves supporters* of SUD and SMI sufferers, serving on the boards of "addiction and homeless service providers in Medford."  (SAC at ¶ 42.) Defendant Ivens "served on the Board of Directors of Addictions Recovery Center" and Arnold was the President of the Board of Directors of OnTrack Rogue Valley "which provides behavioral health treatment and addiction recovery services in Medford." (SAC at ¶¶45, 46.)  At most, plaintiffs have alleged that City Defendants may have disagreed with plaintiffs about the *best way* to "support" SUD and SMI sufferers; but this is not the same thing as alleging facts that City Defendants held animus for plaintiffs specifically because SUD/SMI sufferers happened to be among the many groups and people that plaintiffs advocated for.

Finally, whatever evidence plaintiffs have presented that Congress has passed legislation indicating that SUD and SMI sufferers need special assistance in protecting their civil rights (and City Defendants dispute that plaintiffs have produced evidence showing that they have, under the Ninth Circuit precedents cited in the motions to dismiss), they have not, in any event, presented any law on the relevant question, which is whether Congress has indicated that *supporters* of SUD and SMI sufferers need such special assistance.

**HART WAGNER LLP**
**Trial Attorneys**
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

## CONCLUSION

Plaintiffs request leave to amend if "the Court concludes more precision is needed." (Pl.'s Resp. at p. 34.)  Defendants object.  The original complaint was filed on September 11, 2025.  The First Amended Complaint was filed four days later.  (ECF 4).  After several conferrals and exchange of drafts, the Second Amended Complaint was filed on February 11, 2026.  (ECF 32).  Plaintiffs' counsel was well aware of the deficiencies of their pleading before the SAC was filed.  By the time this Court granted the unopposed motion for extension of time to file an initial response (dated 10/23/2025, ECF 27), counsel had conferred on the issues outlined in Defendants' motions to dismiss.  Plaintiffs evaluated the issues, additional conferral was completed, and plaintiffs' counsel continued their evaluation finally filing the SAC more than three months after conferral began.  They have been given an opportunity to attempt to cure the deficiencies and have failed to do so.

For the foregoing reasons, in addition to all of those stated in the motions to dismiss, the Medford City Defendants respectfully ask that plaintiffs' claims against them and the Doe Defendants (about whom, the complaint offer no facts) be dismissed under Fed. R. Civ. P. 12(b)(6).

DATED this 13th day of April, 2026.

HART WAGNER, LLP

By:  */s/ Stephanie C. Kucera*

Stephanie C. Kucera, OSB No. 165509
sck@hartwagner.com
Zachariah H. Allen, OSB No. 122729
zha@hartwagner.com
*Attorney for Defendants City of Medford, Brian Sjothun, Randy Sparacino, Justin Ivens, Darrell Graham, Geoff Kirkpatrick, Trevor Arnold, and Arturo Vega*

Page 12 –    **REPLY IN SUPPORT OF MEDFORD DEFENDANTS' MOTION TO DISMISS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 13th day of April, 2026, I served the foregoing **REPLY IN**

**SUPPORT OF DEFENDANTS CITY OF MEDFORD, BRIAN SJOTHUN, RANDY**

**SPARACINO, JUSTIN IVENS, DARRELL GRAHAM, GEOFF KIRKPATRICK,**

**TREVOR ARNOLD AND ARTURO VEGA'S MOTION TO DISMISS** on the following

parties at the following addresses:

Alicia LeDuc Montgomery
LeDuc Montgomery LLC
2210 W. Main St., Ste 107 #328
Battle Ground, WA  98604
alicia@leducmontgomery.com

Marianne Dugan
Civil Liberties Defense Center
1711 Willamette St., Ste 301 No. 359
Eugene, OR  97402
mdugan@cldc.org

*Attorneys for Plaintiffs*

Casey Murdock
Frohnmayer, Deatherage, Jamieson,
 Moore, Armosino & McGovern, PC
2492 E. Barnett Road
Medford, OR  97504
murdock@fdfirm.com

*Attorney for Defendant Ryan Mallory*

by electronic means through the Court's Case Management/Electronic Case File system.

/s/ Stephanie C. Kucera
Stephanie C. Kucera, OSB No. 165509

Page 1 –  **CERTIFICATE OF SERVICE**