**ALICIA LEDUC MONTGOMERY, OSB # 173963**
Email: alicia@leducmontgomery.com
**LEDUC MONTGOMERY LLC**
2210 W Main Street, Suite 107 #328
Battle Ground, Washington 98604
Telephone: 704.702.6934
www.leducmontgomery.com

**MARIANNE DUGAN, OSB # 932563**
Email: mdugan@cldc.org
**CIVIL LIBERTIES DEFENSE CENTER**
1711 Willamette Street Ste 301 No. 359
Eugene, Oregon 97402
Telephone: 541.687.9180
www.cldc.org

      *Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| STABBIN WAGON, an Oregon public benefit corporation; MELISSA JONES, an individual; and SAMANTHA STRONG, an individual,<br><br>  Plaintiffs,<br><br>    v.<br><br>CITY OF MEDFORD, a municipal corporation; BRIAN SJOTHUN, an individual; RANDY SPARACINO, an individual; JUSTIN IVENS, an individual; DARRELL GRAHAM, an individual; GEOFF KIRKPATRICK, an individual; TREVOR ARNOLD, an individual; ARTURO VEGA, an individual; RYAN MALLORY, an individual; and JOHN and JANE DOES 1-9, individual employees or agents of the City of Medford,<br><br>  Defendants. | Case No. 1:25-cv-1632-MTK<br><br><br>**PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS** |

PAGE 1 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

## I.    INTRODUCTION

At the June 23, 2026 oral argument on Defendants' motions to dismiss, the Court authorized supplemental briefing on Plaintiffs' supplemental authorities provided to the Court at the hearing. The Court requested supplemental briefing. ECF 48.

Plaintiffs' supplemental response below addresses three issues raised during oral argument: (1) Plaintiffs' citation to U.S. Department of Justice guidance regarding the Americans with Disabilities Act's protections of supporters and advocates of persons experiencing Opioid Use Disorder (OUD), a form of Substance Use Disorder (SUD) which is a disabling condition at issue in Plaintiffs' operative complaint; (2) Defendants' citation at oral argument to *Chasse v. Humphreys*, No. CV-07-189-HU, 2008 U.S. Dist. LEXIS 90139 (D. Or. Nov. 3, 2008); and (3) authorities recognizing that supporters, advocates, and service providers of a targeted class have standing to bring § 1985(3) claims where they are injured because defendants identify them with, target them for supporting, or retaliate against them for serving the protected class. Plaintiffs appreciate the opportunity to provide these supplemental points and authorities.

## II.    SUPPLEMENTAL POINTS AND AUTHORITIES

### A. Federal Statutes Protect Individuals and Entities Associated with Persons with Disabilities

Defendants, particularly City of Medford, argue that Plaintiffs cannot proceed on a § 1985(3) theory based on their support, advocacy, and services unless Plaintiffs themselves independently constitute a suspect class or Congress has specifically protected them in that role.

*First*, Plaintiffs disagree with this framing. The question is not whether Plaintiffs themselves must independently constitute a suspect or quasi suspect class. The question is whether Plaintiffs plausibly allege that Defendants targeted them because they supported, advocated for,

PAGE 2 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

served, and were publicly associated with a class protected by § 1985(3). *See* ECF 41 (Pls.' Resp. to Def. Mallory at 35–38); ECF 42 (Pls.' Resp. to City Defs. at 27–29). Plaintiffs have alleged as much. They allege Stabbin Wagon, Melissa Jones, and Samantha Strong were targeted because they provided harm reduction, public health outreach, crisis support, protest, and policy advocacy for people with SUD and/or SMI, including unhoused people with those disabilities, and because Defendants associated Plaintiffs with those populations. SAC ¶¶ 11–13, 57–64, 96–99, 178–91, 193–205.

That framing follows from § 1985(3)'s text and Reconstruction purpose. In *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971), the Supreme Court held that § 1985(3) reaches conspiracies motivated by racial, or perhaps otherwise class based, invidiously discriminatory animus. *Griffin* allowed claims arising from an attack on Black travelers where the defendants acted under the mistaken belief that the driver was a civil rights worker. The Supreme Court later confirmed that § 1985(3)'s central concern included conspiracies against Black citizens and "those who supported them." *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 836 (1983).

Federal courts have applied that principle to protect advocates and supporters of a targeted class. *See Maynard v. City of San Jose*, 37 F.3d 1396, 1403–04 (9th Cir. 1994) (holding that a white employee had standing under § 1985 where he alleged retaliation for assisting a Black applicant in an employment discrimination investigation, while reversing the verdict because the record did not prove intentional racial animus); *Waller v. Butkovich*, 584 F. Supp. 909, 936–38 (M.D.N.C. 1984) (holding that animus against "advocates of equal rights for black people" can satisfy § 1985(3), while noting plaintiffs must prove they were identifiable to defendants as members of that advocate class); *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (noting cases

PAGE 3 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

suggesting supporters of racial minorities may be protected from retaliatory treatment, but rejecting the claim because the plaintiff's association was too attenuated and she was not perceived as such a supporter); *Sines v. Kessler*, 558 F. Supp. 3d 250, 264–65 (W.D. Va. 2021) (allowing § 1985(3) claims by plaintiffs allegedly targeted in a racially and antisemitically motivated conspiracy, including plaintiffs targeted as supporters of Black and Jewish people).

Plaintiffs' § 1985(3) "support and advocacy" theory therefore turns on whether Defendants plausibly targeted Plaintiffs because of their association with, services to, or advocacy for the protected class they served. The cases do not require the injured plaintiff to be a formal member of the underlying protected class. They ask whether the conspiracy was animated by invidious class based animus and whether the plaintiff was injured because defendants identified the plaintiff with, targeted the plaintiff for supporting, or injured the plaintiff for serving that class. At the pleading stage, whether Plaintiffs can prove Defendants identified them as supporters, advocates, and service providers for disabled people with SUD and/or SMI is a factual question, not a Rule 12(b)(6) basis for dismissal.

**Second,** even assuming *arguendo* that Defendants' framework applied, Defendants' argument fails on its own terms. Even if Plaintiffs must identify federal law protecting them in their role as supporters, service providers, and advocates for disabled persons, the ADA provides such association based protection. The authorities Plaintiffs cited at oral argument show federal law protects individuals and entities from discrimination because of their known relationship or association with persons with disabilities, including persons with OUD.

At the motion to dismiss hearing, Plaintiffs' counsel cited *The Americans with Disabilities Act and the Opioid Crisis: Combating Discrimination Against People in Treatment or Recovery*, United States Department of Justice, Civil Rights Division (April 2022),

https://archive.ada.gov/opioid_guidance.pdf. *See also Press Release*, *Justice Department Issues Guidance on Protections for People with Opioid Use Disorder under the Americans with Disabilities Act*, United States Department of Justice, Civil Rights Division (April 5, 2022).

The ADA provisions cited by DOJ confirm that federal disability law protects not only disabled persons themselves, but also individuals and entities discriminated against because of their known relationship or association with disabled persons. That is the role Plaintiffs occupy as supporters, service providers, and advocates for people with SUD and SMI, including unhoused people with those disabilities.

Specifically, the DOJ guidance, in Q & A question no. 8, states:

8) Does the ADA protect individuals from discrimination based on their association with individuals who have opioid use disorder?

Yes. The ADA protects individuals from discrimination based on their known association or relationship with an individual who has a disability, such as a friend, coworker, or family member. The ADA also protects organizations, such as OUD treatment clinics, from discriminatory enforcement of zoning rules based on the organization's known association with or relationship to individuals with OUD.

*Id.* at 5. As Plaintiffs' counsel noted at oral argument, the DOJ cited authorities for its Q&A response in footnote 22, including: 42 U.S.C. § 12112(b)(4); 42 U.S.C. § 12182(b)(1)(E); 28 C.F.R. §§ 35.130(g), 36.205; 29 C.F.R. § 1630.8. Each is described below.

### 1.  42 U.S.C. § 12112(b)(4)

Section 12112(b)(4) is the ADA's Title I associational discrimination provision. It defines prohibited employment discrimination to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

Thus Congress did not limit ADA protection to people who themselves have disabilities. It also protected non disabled people who are punished, excluded, or denied equal treatment

PAGE 5 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

because of their relationship or association with a disabled person. This provision demonstrates that federal disability law expressly recognizes discrimination against supporters and associates of disabled people as discrimination within the ADA's scope. That congressional protection directly undermines Defendants' suggestion that Plaintiffs' association with people with SUD/OUD and SMI is legally irrelevant unless Plaintiffs themselves constitute a separate suspect class. It also supports Plaintiffs' argument that, under the congressional protection pathway recognized in *Sever* and *Schultz*, their supporter/service provider theory is at least plausible at the pleading stage. Under the ADA, association with disabled persons is itself a protected relationship when it is the basis for discriminatory treatment.

As applied to the SAC, Plaintiffs were targeted because they were publicly identified with and provided services to populations Defendants sought to exclude and punish, including unhoused and drug using residents with SUD and/or SMI. Section 12112(b)(4) confirms that federal law treats discrimination against such associated persons as prohibited cognizable disability discrimination under the ADA.

### 2.  42 U.S.C. § 12182(b)(1)(E)

Section 12182(b)(1)(E) is the ADA Title III associational discrimination provision governing public accommodations. It provides that it is discriminatory "to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

This provision protects both an "individual" and an "entity." Congress therefore extended associational protection not only to family members, friends, or companions of disabled persons, but also to organizations whose work, services, or public presence is tied to disabled persons. The

PAGE 6 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

text fits the DOJ guidance Plaintiffs cited at oral argument, which explains that the ADA protects organizations (such as OUD treatment clinics) from discriminatory treatment because of their known association with individuals with OUD.

Here, Stabbin Wagon is an organization providing harm reduction, public health outreach, crisis support, and advocacy for drug using and unhoused residents, including people with SUD and SMI. SAC ¶¶ 11, 57–61, 178–80. This includes Stabbin Wagon's efforts to establish a peer respite center facility via an OHA grant, specifically to serve the needs of persons with SUD and/or SMI. SAC ¶¶ 96–99, 186–87. The SAC alleges that Defendants targeted Plaintiffs because of that work and because of the population Plaintiffs served, supported, and advocated for. SAC ¶¶ 73–75, 96–99, 120–29, 178–91, 193–205. Section 12182(b)(1)(E) confirms that federal disability law protects an organization from being denied opportunities or otherwise treated adversely because of its known association with disabled persons. It therefore supports Plaintiffs' position that supporters, service providers, and advocates for people with SUD and SMI occupy a federally protected associational role.

### 3.  28 C.F.R. § 35.130(g)

Section 35.130(g) is the DOJ regulation implementing ADA Title II, which applies to public entities, including municipalities and their departments. It provides: "A public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 35.130(g).

This regulation is directly relevant because the public entity Defendant in this case is the City of Medford, and the SAC alleges misconduct by City officials and the Medford Police Department. The regulation expressly forbids a public entity from denying equal services,

PAGE 7 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

programs, or activities to an individual or entity because of that person's or entity's association with a disabled person. The regulation protects both individuals and entities, encompassing individual advocate plaintiffs, Jones and Strong, and the organizational plaintiff, Stabbin Wagon.

In context, § 35.130(g) supports Plaintiffs' supplemental point in two ways. First, it confirms that the ADA's associational protections apply in the public entity context most analogous to Plaintiffs' allegations against the City. Second, it refutes Defendants' narrow framing that Plaintiffs' advocacy for disabled persons is legally unprotected unless Plaintiffs themselves are members of the disabled class. DOJ's Title II regulation recognizes that when a public entity targets an advocate, service provider, or organization because of its association with disabled persons, that conduct falls within federal disability discrimination protections.

The SAC alleges that the City and MPD excluded Stabbin Wagon from official communications sent to other service providers, monitored and maintained information about Plaintiffs' associations and advocacy, sought to undermine Plaintiffs' public health work, undertook multiple actions to undermine, reverse, rescind, block, or delay Plaintiffs' OHA grant funding to establish a peer respite center to serve SUD and SMI clients in Jackson County, and used law enforcement power to punish Plaintiffs' outreach and advocacy. SAC ¶¶ 5, 7, 73–85, 94–99, 120–34, 141–44, 155–73, 186–87, 193–205. At the pleading stage, § 35.130(g) confirms that federal law protects entities and individuals from discriminatory public entity treatment based on their known association with people with SUD and SMI.

### 4. 28 C.F.R. § 36.205

Section 36.205 is the DOJ Title III regulation titled "Association." It provides: "A public accommodation shall not exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the

PAGE 8 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

known disability of an individual with whom the individual or entity is known to have a relationship or association." 28 C.F.R. § 36.205.

Although this case is not a Title III public accommodations case, § 36.205 is relevant because it reinforces the same federal rule across ADA contexts: discrimination because of association with a disabled person is prohibited, and the protection extends to both individuals and entities. The regulation's title, "Association," makes explicit that the ADA protects the relationship between disabled persons and the people or organizations connected to them.

Here, § 36.205 supports Plaintiffs' argument by showing the DOJ guidance relied on a consistent statutory and regulatory scheme at the federal level that recognizes organizations and advocates serving people with OUD, SUD, SMI, and other disabilities can themselves be subjected to unlawful discrimination because of such work and affiliation. Thus, when Plaintiffs allege they were targeted because they served, supported, and advocated for people with SUD and SMI, they are describing the kind of associational relationship federal ADA regulations recognize and protect.

### 5.  29 C.F.R. § 1630.8

Section 1630.8 is the EEOC regulation implementing the ADA's Title I association provision. It provides: "It is unlawful for a covered entity to exclude or deny equal jobs or benefits to, or otherwise discriminate against, a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a family, business, social or other relationship or association." 29 C.F.R. § 1630.8.

This regulation clarifies the breadth of the protected association. The protected relationship includes family members as well as "business," "social," and "other" relationships or associations. Here, Plaintiffs' relationship with people with SUD and SMI is that of harm reduction workers,

PAGE 9 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

service providers, public health advocates, and community organizers whose work supports and advocates for unhoused residents and residents with SUD/SMI.

Accordingly, § 1630.8 supports Plaintiffs' response to Defendants' standing argument by showing that federal law recognizes non familial, advocacy based, service based, and organizational relationships with disabled persons as protected associations. Plaintiffs' association with people with SUD and SMI as alleged in the operative complaint is the type of "other relationship or association" that the ADA's implementing regulations recognize as legally meaningful.

Taken together, these statutes and regulations show that the ADA protects more than the disabled individual in isolation. Across employment, public accommodations, and public entity contexts, federal law prohibits adverse treatment of individuals and entities because of their known relationship or association with disabled persons. That is why DOJ's OUD guidance states that the ADA protects individuals from discrimination based on known association with a person with OUD and also protects organizations, such as OUD treatment clinics, from discriminatory government action based on their known association with individuals with OUD.

That principle defeats Defendants' contention that Plaintiffs' role as supporters, service providers, and advocates for people with SUD/OUD and SMI is legally irrelevant. At minimum, DOJ's guidance and the ADA association provisions make Plaintiffs' § 1985(3) supporter/service provider theory plausible at the Rule 12 stage.

Plaintiffs allege they were targeted because they were publicly identified with, provided services to, and supported and advocated for people with SUD and SMI, disabilities recognized under federal law. The ADA provisions cited by DOJ demonstrate that Congress and federal

PAGE 10 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

agencies have specifically protected the associational role that Defendants attempt to dismiss as legally irrelevant.

On a Rule 12(b)(6) motion, that is sufficient to reject Defendants' effort to dismiss Plaintiffs' § 1985(3) claim on the ground that Plaintiffs' association with disabled populations is categorically unprotected. Instead, these provisions support Plaintiffs' assertion that, under the "federal determination" prong of the Ninth Circuit's *Sever* test, Plaintiffs plausibly plead that Defendants targeted a protected associational relationship with people with SUD and SMI.

**B.  Defendants' Citation to *Chasse v. Humphreys* Does Not Defeat Plaintiffs' Claims**

At oral argument, Defendants' cited to the Judge King case of *Chasse v. Humphreys*, No. CV-07-189-HU, 2008 U.S. Dist. LEXIS 90139 (D. Or. Nov. 3, 2008) for the proposition that disabled persons are not a protected class for purpose of a § 1985(3) claim. Defendants' reliance on *Chasse* overstates both *Chasse* and the governing Ninth Circuit standard. *Chasse* is a persuasive district court decision, not controlling authority. More importantly, it addressed a different theory than the one Plaintiffs advance here.

In *Chasse*, the plaintiffs alleged that defendants conspired to deprive James Chasse Jr. of equal protection because of his known or perceived mental illness. The court rejected that theory, reasoning that the ADA did not make disabled persons a suspect or quasi suspect constitutional class and that, absent controlling Supreme Court or Ninth Circuit authority recognizing disability as a § 1985(3) class, *Cleburne*, *Garrett*, and *Lane* controlled the analysis. *Chasse*, 2008 U.S. Dist. LEXIS 90139, at *9–13. But *Chasse* did not hold that Congress must expressly invoke § 1985(3) before a class can satisfy the congressional protection prong, nor did it address the ADA associational discrimination provisions Plaintiffs rely on here.

PAGE 11 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

The controlling Ninth Circuit framework comes from *Sever, Schultz*, and *Holgate*. Under those cases, the § 1985(3) class recognition inquiry is disjunctive. A non racial class may fall within § 1985(3) where either "the courts have designated the class in question a suspect or quasi suspect classification requiring more exacting scrutiny" or "Congress has indicated through legislation that the class required special protection." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992); *Schultz v. Sundberg*, 759 F.2d 714, 718–19 (9th Cir. 1985); *see also Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). Nothing in that formulation requires Congress to mention § 1985(3) by name. The question is whether Congress has indicated, through legislation, that the class requires special federal protection.

*City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), and *Tennessee v. Lane*, 541 U.S. 509 (2004), answer only the constitutional classification question: they hold that disability is not a suspect or quasi suspect class for equal protection purposes and that disability classifications generally receive rational basis review. *See Chasse*, 2008 U.S. Dist. LEXIS 90139, at *8–13. However, they do not displace the Ninth Circuit's separate § 1985(3) framework. Thus, even if *Cleburne*, *Garrett*, and *Lane* foreclose the suspect class path, they do not foreclose Plaintiffs' independent congressional protection theory under *Sever*, *Schultz*, and *Holgate*.

Defendants' contrary reading would collapse the Ninth Circuit's disjunctive test into a single suspect class inquiry. If *Cleburne, Garrett,* and *Lane* were enough to defeat any § 1985(3) claim involving disability, regardless of Congress's independent statutory determinations, then the second *Sever*/*Schultz*/*Holgate* pathway–whether Congress has indicated through legislation that the class requires special protection–would do no work. That cannot be the rule. *Sever*, *Schultz*, and *Holgate* do not require Congress to mention § 1985(3) by name, nor do they require Congress

PAGE 12 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

to convert a class into a suspect or quasi suspect constitutional classification. They ask whether Congress has indicated through legislation that the class requires special federal protection. As multiple federal circuits have recognized, the ADA does exactly that.

The ADA satisfies that congressional protection pathway. Congress found that individuals with disabilities have been subjected to "a history of purposeful unequal treatment," have been "relegated to a position of political powerlessness," and continue to face discrimination in major areas of life, including public services, health services, housing, education, employment, transportation, and access to public accommodations. 42 U.S.C. § 12101(a). Congress further declared a national mandate to eliminate disability discrimination and invoked federal authority, including Fourteenth Amendment enforcement authority, to address that discrimination. 42 U.S.C. § 12101(b). Those findings and purposes are the kind of legislative determination of special federal protection contemplated by *Sever*, *Schultz*, and *Holgate*.

The ADA's findings also speak directly to § 1985(3)'s animus inquiry. Section § 1985(3) requires "some racial, or perhaps otherwise class based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The ADA does not merely create isolated statutory accommodations; it records Congress's finding that people with disabilities have been subjected to purposeful unequal treatment, political powerlessness, segregation, exclusion, and discrimination based on stereotypes. 42 U.S.C. § 12101(a). Those findings describe the type of class based prejudice and invidious discrimination that § 1985(3)'s animus requirement is designed to capture. At minimum, they satisfy the Ninth Circuit's alternative requirement that Congress indicate through legislation that the class requires special federal protection. *Sever*, 978 F.2d at 1536; *Schultz*, 759 F.2d at 718–19; *Holgate*, 425 F.3d at 676.

Nor does *Holgate* compel a different result. *Holgate* rejected a proposed class of

PAGE 13 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

"consumers looking to build their dream home," a group with no recognized history of civil rights discrimination and no congressional determination of special federal protection. 425 F.3d at 676. But Congress expressly found that people with disabilities have experienced purposeful unequal treatment, segregation, political powerlessness, and discrimination across major areas of life, and enacted a comprehensive federal statutory scheme to remedy that discrimination. 42 U.S.C. § 12101(a)–(b). Treating *Holgate* as foreclosing Plaintiffs' theory would extend it far beyond its facts and erase the congressional protection pathway the Ninth Circuit preserved.

*Chasse* reached a contrary conclusion on a disability status theory, but it does not control here. In *Chasse*, the plaintiffs alleged that defendants conspired to deprive James Chasse Jr. of equal protection because of his known or perceived mental illness. The court rejected that theory, reasoning that the ADA did not make disabled persons a suspect or quasi suspect constitutional class and that, absent controlling Supreme Court or Ninth Circuit authority recognizing disability as a § 1985(3) class, *Cleburne*, *Garrett*, and *Lane* guided the analysis. *Chasse*, 2008 U.S. Dist. LEXIS 90139, at *8–13 (discussing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985), *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), and *Tennessee v. Lane*, 541 U.S. 509 (2004)). But *Chasse* did not hold that Congress must expressly invoke § 1985(3) before a class can satisfy the congressional protection prong, nor did it address the ADA associational discrimination provisions Plaintiffs rely on here.

Plaintiffs' theory is narrower and stronger than the disability status only theory rejected in *Chasse*. Plaintiffs allege that Defendants targeted Stabbin Wagon, Jones, and Strong because of their known association with, services to, and advocacy for people with SUD/OUD and SMI. The ADA expressly protects individuals and entities from discrimination because of the known disability of persons with whom they have a relationship or association. 42 U.S.C. §§ 12112(b)(4),

PAGE 14 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

12182(b)(1)(E); 28 C.F.R. §§ 35.130(g), 36.205; 29 C.F.R. § 1630.8. DOJ's OUD guidance confirms that these protections extend to OUD related disability discrimination and to organizations, such as OUD treatment providers, targeted because of their association with people with OUD.

The post-*Chasse* federal enforcement landscape further supports Plaintiffs' argument. *Chasse* predates DOJ's 2022 OUD guidance, which confirms that OUD may be a protected disability under the ADA and that the ADA protects individuals and organizations from discrimination based on known association with people with OUD. U.S. Dep't of Just., C.R. Div., *The Americans with Disabilities Act and the Opioid Crisis: Combating Discrimination Against People in Treatment or Recovery* 5 & n.22 (Apr. 5, 2022), https://archive.ada.gov/opioid_guidance.pdf. DOJ's subsequent OUD related enforcement materials, including the *Ready to Work* settlement and the *Strickland v. Delaware County* Statement of Interest, likewise confirm DOJ's position that categorical denial of services, treatment, or access because of OUD or medication for OUD can constitute disability discrimination. *Settlement Agreement Between the United States of America and Ready to Work, LLC Under the Americans with Disabilities Act*, DJ No. 202-13-342 (Mar. 17, 2022), https://www.justice.gov/crt/case-document/file/1490111/dl; *Statement of Interest of the United States of America, Strickland v. Delaware County*, No. 2:21-cv-04141 (E.D. Pa. Dec. 11, 2023), https://www.justice.gov/d9/2023-12/statement_of_interest-strickland_v._delaware_county.pdf. These materials are not binding § 1985(3) authority, but they support Plaintiffs' Rule 12 argument that discrimination against people with OUD/SUD, and against entities associated with them, falls within the federal disability protections Congress enacted through the ADA.

*Chasse* also predates this District's recent decision in *Black Unity v. City of Springfield*,

PAGE 15 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

2026 U.S. Dist. LEXIS 12592, at *120–27 (D. Or. Jan. 23, 2026), which allowed § 1985(3) claims to proceed for Black protesters and their supporters. *Black Unity* confirms that § 1985(3) supporter and advocate theories are not categorically limited to voting rights or candidate support cases. That principle matters here because Plaintiffs allege they were targeted not merely for abstract policy views, but because Defendants identified them with and retaliated against them for serving and advocating for a federally protected population.

*Chasse* also did not decide the sufficiency of conspiracy allegations. The City defendants in *Chasse* argued that the plaintiffs failed to plead conspiracy facts, but the court did not reach that argument because it dismissed on the class theory. *Chasse*, 2008 U.S. Dist. LEXIS 90139, at *16–17. It therefore provides no basis to dismiss Plaintiffs' allegations of coordination, surveillance, doxxing, grant interference, and retaliation at Rule 12.

For these reasons, *Chasse* does not foreclose Plaintiffs' § 1985(3) claims. At most, *Chasse* limits a bare argument that mental illness or disability status alone is a suspect or quasi suspect constitutional class. It does not foreclose Plaintiffs' narrower theory that Defendants targeted them because of their known association with, services to, and advocacy for people with SUD/OUD and SMI, a relationship expressly protected by federal disability law. If the Court concludes that the SAC should plead that associational theory with greater precision, the appropriate remedy is leave to amend, not dismissal with prejudice.

## C. Courts Recognize § 1985(3) Claims by Supporters, Advocates, and Service Providers

At oral argument, Defendants also asserted that § 1985(3) claims may be brought by supporters or advocates of a class only where the issue concerned access to voting or political candidates. The authorities do not support that categorical limitation. Courts have recognized that plaintiffs injured because defendants identify them with, or target them for serving, a protected

class may proceed under § 1985(3), subject to proof of class-based animus and the other statutory elements.

Ninth Circuit and persuasive authority recognize that § 1985(3) can protect plaintiffs injured because defendants identify them with a protected class. In *Maynard*, the Ninth Circuit held that a white employee had standing under § 1985 where he alleged retaliation for assisting a Black applicant in a discrimination investigation, although it reversed the verdict because the record did not prove racial animus. *Maynard*, 37 F.3d at 1403–04. *Black Unity* likewise treated "Black people and their supporters" as the protected class for a § 1985(3) claim in this District. *Black Unity*, 2026 U.S. Dist. LEXIS 12592, at *120–27. Persuasive authorities including *Waller*, *Lamb Foundation*, *Lesley*, and *Sines* similarly recognize that advocates, service providers, and organizations may be injured by conspiracies targeting the protected populations they serve. See *Waller*, 584 F. Supp. at 936–38; *Lamb Found. v. N. Wales Borough*, 2001 U.S. Dist. LEXIS 18797, at *44–47 (E.D. Pa. Nov. 16, 2001); *Lesley v. Bennett*, 778 F. Supp. 3d 1201, 1216 (D. Wyo. 2025); *Sines v. Kessler*, 558 F. Supp. 3d 250, 264–65 (W.D. Va. 2021).

Provider and organizational plaintiffs have also been recognized in the related hindrance clause context. *See Nat'l Abortion Fed'n v. Operation Rescue*, 8 F.3d 680 (9th Cir. 1993); *Libertad v. Welch*, 53 F.3d 428 (1st Cir. 1994). Plaintiffs do not rely on those authorities to erase § 1985(3)'s class animus requirement. Plaintiffs rely on them to show that plaintiffs injured because defendants identified them with, targeted them for serving, or retaliated against them for advocating for a protected class may proceed when the requisite class based animus is plausibly alleged.

These authorities collectively show that supporter, advocate, and service provider theories are not categorically limited to voting rights or candidate support cases. At the pleading stage, Plaintiffs have plausibly alleged that Defendants targeted them because of their known association

PAGE 17 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

with and advocacy for people with SUD/OUD and SMI.

The authorities are not limited to voting rights or candidate support cases. Courts have recognized claims by plaintiffs injured because defendants identified them with, targeted them for supporting, or retaliated against them for serving a protected class.

### 1. Supreme Court Authorities

a. *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (holding that § 1985(3) reaches private conspiracies motivated by racial, or perhaps otherwise class based, invidiously discriminatory animus; supporting Plaintiffs' supporter/advocate theory because the pleaded conspiracy targeted Black travelers while also arising from defendants' belief that the driver was a civil rights worker).

b. *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825 (1983) (rejecting § 1985(3) liability for economic or commercial animus, but explaining that § 1985(3)'s predominant Reconstruction purpose was to combat animus against Black people and "those who supported them").

c. *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) (holding that § 1985(3) does not create substantive rights and cannot be used to vindicate rights created solely by Title VII; relevant limiting authority because Plaintiffs' theory should be framed as a § 1985(3) conspiracy motivated by class based disability animus and supported by independent federal disability protections).

d. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) (holding that opposition to abortion, without more, did not establish sex based animus against women for § 1985(3) purposes; distinguishable because Plaintiffs allege animus toward a federally protected disability class and toward Plaintiffs because they serve and advocate for that class).

PAGE 18 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

### 2. Appellate Circuit Authorities

a.  *Maynard v. City of San Jose*, 37 F.3d 1396, 1403–04 (9th Cir. 1994) (holding that a white employee had standing under § 1985 where he alleged retaliation for assisting a Black applicant in an employment discrimination investigation, while reversing the verdict because the record did not prove intentional racial animus).

b.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1208 (3d Cir. 1988) (noting cases suggesting supporters of racial minorities may be protected from retaliatory treatment, but rejecting the claim because plaintiff's association was too attenuated and she was not perceived as such a supporter).

c.  *Nat'l Abortion Fed'n v. Operation Rescue*, 8 F.3d 680 (9th Cir. 1993) (post *Bray* decision allowing abortion provider and organizational plaintiffs to proceed on a § 1985(3) hindrance clause theory where defendants allegedly sought to hinder law enforcement from securing women's constitutional rights).

d.  *Libertad v. Welch*, 53 F.3d 428 (1st Cir. 1994) (holding that clinics, provider plaintiffs, and a reproductive rights organization had standing to pursue a § 1985(3) hindrance clause claim).

### 3. District Court Authorities

a.  *Black Unity v. City of Springfield*, 2026 U.S. Dist. LEXIS 12592, at *120–27 (D. Or. Jan. 23, 2026) (denying summary judgment on § 1985(3) claims by Black protesters and their supporters alleging a racially motivated conspiracy involving police and counter protesters).

b.  *Waller v. Butkovich*, 584 F. Supp. 909, 936–38 (M.D.N.C. 1984) (holding that animus against "advocates of equal rights for black people" can satisfy § 1985(3), while noting plaintiffs must prove they were identifiable to defendants as members of that advocate class).

c.  *Sines v. Kessler*, 324 F. Supp. 3d 765 (W.D. Va. 2018), and *Sines v. Kessler*, 558 F. Supp. 3d 250, 264–65 (W.D. Va. 2021) (allowing § 1985(3) claims arising from Unite the Right violence

PAGE 19 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**

against Black and Jewish people and their supporters/counter protesters to proceed at the pleading and summary judgment stages).

d. *Lamb Foundation v. North Wales Borough*, 2001 U.S. Dist. LEXIS 18797, at *44–47 (E.D. Pa. Nov. 16, 2001) (denying dismissal of § 1985(3) claims by a nonprofit and property owner allegedly injured by a conspiracy to drive disabled residents and their service provider from the borough).

e. *Lesley v. Bennett*, 778 F. Supp. 3d 1201, 1216 (D. Wyo. 2025) (denying dismissal of § 1985(3) claim where plaintiff alleged she was targeted because of advocacy and association with LGBTQ+ patrons and materials, while recognizing that supporter theories are not categorically limited to race based classes).

### III.    CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motions to Dismiss. In the alternative, Plaintiffs respectfully request leave to amend.

**DATED:**  July 1, 2026.                    Respectfully submitted,

<div style="margin-left:40%">

LEDUC MONTGOMERY LLC

By: *s/Alicia LeDuc Montgomery*
    **Alicia LeDuc Montgomery, OSB # 173963**
    alicia@leducmontgomery.com
    704.702.6934

    **Marianne Dugan, OSB # 932563**
    CIVIL LIBERTIES DEFENSE CENTER
    mdugan@cldc.org
    541.687.9180

    *Attorneys for Plaintiffs*

</div>

PAGE 20 – **PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS**