**Casey S. Murdock, OSB #144914**
Murdock@fdfirm.com
FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, PC
2592 East Barnett Road
Medford, OR  97504
Phone: (541) 772-2333
Fax:    (541) 779-6379
Of Attorneys for Defendant Ryan Mallory

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

|  |  |
|---|---|
| STABBIN WAGON, an Oregon public benefit corporation; MELISSA JONES, an individual; and SAMANTHA STRONG, an individual,<br><br>            Plaintiffs,<br><br>v.<br><br>CITY OF MEDFORD, a municipal corporation; BRIAN SJOTHUN, an individual; RANDY SPARACINO, an individual; JUSTIN IVENS, an individual; DARRELL GRAHAM, an individual; GEOFF KIRKPATRICK, an individual; TREVOR ARNOLD, an individual; ARTURO VEGA, an individual; RYAN MALLORY, an individual; and JOHN and JANE DOES 1-9, individual employees or agents of the City of Medford,<br><br>            Defendants. | Case No.  1:25-cv-1632-MTK<br><br>**DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS** |

Page 1 -  **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

Defendant Ryan Mallory submits this supplemental reply to address arguments raised in Plaintiffs' Supplemental Response to Defendants' Motions to Dismiss. *ECF No. 50*. Plaintiffs' supplemental briefing fundamentally mischaracterizes federal disability law, conflates unrelated statutory frameworks, and seeks to transform § 1985(3) into a general federal tort remedy for political disagreements. Their arguments fail as a matter of law.

While Mallory believes dismissal in his favor is warranted without the need for this briefing, these issues are incredibly important, and Plaintiffs' theory must be rejected to avoid creating adverse case law and to avoid any appearance that undersigned counsel agrees with Plaintiffs' flawed analysis.

## INTRODUCTION

At oral argument, the Court requested supplemental briefing on three issues: (1) Plaintiffs' citation to DOJ guidance regarding ADA protections for supporters and advocates of persons with Opioid Use Disorder; (2) Defendants' citation to *Chasse v. Humphreys*; and (3) authorities recognizing that supporters of a targeted class have standing under § 1985(3). Plaintiffs' supplemental response attempts to bootstrap federal disability accommodation statutes into a § 1985(3) conspiracy claim by arguing that ADA associational discrimination provisions supply the "special federal protection" required under Ninth Circuit law. This argument fails at every level.

First, the ADA provisions Plaintiffs cite regulate *discrimination in goods, services, and employment* and have nothing to do with conspiracies to violate civil rights. Congress did not enact the ADA to supply § 1985(3) standing to advocacy organizations or their staff. Second, Plaintiffs' own pleading confirms they were not targeted because of any "association" with disabled persons, but because of their vocal opposition to City policy, their criticism of law enforcement, and their

Page 2 -  **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

receipt of substantial public funding while refusing to collaborate with police. Third, even if the ADA's associational provisions were relevant, they would not transform Plaintiffs into a protected class under *Griffin* and *Scott*, they would simply prohibit certain forms of discrimination in specific statutory contexts that are not alleged here. Plaintiffs' reliance on DOJ guidance regarding OUD treatment clinics is particularly misplaced. That guidance addresses *zoning discrimination* against treatment facilities under Title III of the ADA. Again, it has nothing to do with § 1985(3) conspiracy claims or the question of whether advocacy organizations constitute a cognizable class for equal protection purposes. The Court should reject Plaintiffs' attempt to rewrite § 1985(3) through selective citation to accommodation statutes that have no bearing on the elements of a civil rights conspiracy claim.

## ARGUMENT

I.   **The ADA's Associational Discrimination Provisions Do Not Supply § 1985(3) Standing to Advocacy Organizations.[1]**

Plaintiffs devote substantial briefing to various ADA provisions that prohibit discrimination based on association with disabled persons. They argue these provisions demonstrate that "federal disability law expressly recognizes discrimination against supporters and associates of disabled people as discrimination within the ADA's scope." This argument fails for three independent reasons.

/ / /

/ / /

---

[1] Plaintiffs make no reference to the textual issue with their assertion, which is that "advocates and supporters" are only referenced in § 1985 in relation to elections.

Page 3 -   **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.**
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

**A. The ADA regulates discrete categories of discrimination, but it does not involve, contemplate, or consider conspiracies to violate civil rights.**

The ADA's associational provisions prohibit specific forms of discrimination in defined statutory contexts: employment (Title I), public accommodations (Title III), and public services (Title II). For example, 42 U.S.C. § 12112(b)(4) makes it unlawful to exclude or deny "equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." This provision addresses employment discrimination. It does not create a § 1985(3) claim for advocacy organizations whose staff members disagree with municipal policy.

Similarly, 42 U.S.C. § 12182(b)(1)(E) prohibits excluding individuals or entities from public accommodations "because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." This addresses access to goods and services. It does not transform every nonprofit serving disabled populations into a protected class for conspiracy purposes.

The DOJ regulations Plaintiffs cite - 28 C.F.R. § 35.130(g) and 28 C.F.R. § 36.205 - simply implement these statutory provisions. They prohibit public entities and public accommodations from denying services to individuals or entities because of their association with disabled persons. None of these provisions speaks to § 1985(3) conspiracy claims, class-based animus, or equal protection.

Plaintiffs' theory would obliterate the distinction between statutory discrimination claims (which Congress crafted with specific elements, remedies, and enforcement mechanisms) and § 1985(3) conspiracy claims (which require proof of an agreement motivated by class-based, invidiously discriminatory animus). The ADA has its own remedial scheme. If Plaintiffs believe

Page 4 -   **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

they were subjected to unlawful discrimination under the ADA, they may pursue an ADA claim. But they cannot use the ADA's existence to manufacture a § 1985(3) class where none exists.

### B. Plaintiffs were not targeted because of "association" with disabled persons.

Even if the ADA's associational provisions were relevant to § 1985(3) standing, Plaintiffs' own allegations defeat their argument. The SAC alleges Plaintiffs were targeted because they "vocally oppose the City's policy agendas," "expose the ways in which the city and its police engage in what Plaintiffs believe is unlawful or morally distasteful behavior," refuse to cooperate with police, criticized police practices, organized protests, published satirical commentary mocking MPD, and received $1.5 million in state funding outside the City's law-enforcement-aligned service network.

The SAC does not allege that Defendants took any action against Plaintiffs *because of* Plaintiffs' clients' disabilities. It alleges Defendants disagreed with Plaintiffs' *approach*, which is harm reduction versus abstinence-based treatment, collaboration with police versus refusal to cooperate, public criticism versus quiet service delivery. Plaintiffs admit that other organizations serving people with SUD and SMI, which include organizations with law enforcement officers on their boards, received City support and funding. This confirms Defendants' opposition was not based on animus toward disabled persons or those who serve them, rather, it is premised on disagreement with Plaintiffs' philosophy, methods, and public attacks on law enforcement.

In other words, even under Plaintiffs' theory, there is no allegation that Mallory acted *because of* any "known association" with disabled persons. The allegations are that Mallory opposed Plaintiffs' receipt of substantial public funding, criticized their approach to addiction and homelessness, and disagreed with their anti-police advocacy. Political disagreement about how to

Page 5 -  **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

address social problems is not class-based animus, even when the social problems involve people with disabilities.

### C.  The ADA does not designate "supporters of disabled persons" as a suspect class.

Plaintiffs misunderstand the Ninth Circuit's § 1985(3) framework. Under *Sever*, *Schultz*, and *Holgate*, a non-racial class may fall within § 1985(3) where either (1) courts have designated the class a suspect or quasi-suspect classification, or (2) Congress has indicated through legislation that the class requires special federal protection. Plaintiffs attempt to satisfy the second prong by pointing to the ADA's enactment and findings.

But the ADA designates *people with disabilities* as requiring special federal protection - not advocacy organizations, not service providers, and not individuals who associate with disabled persons. The ADA's findings describe a "history of purposeful unequal treatment" and "political powerlessness" faced by individuals with disabilities. These findings say nothing about organizations that serve disabled populations or staff members who work for such organizations. Plaintiffs attempt to leapfrog from "Congress protected disabled persons" to "therefore Congress protected us" fails at the threshold.

Critically, if Plaintiffs' theory is correct, then any individual or organization that serves, supports, or advocates for *any* population protected by federal civil rights law would automatically become a protected class under § 1985(3). That interpretation would convert § 1985(3) into a general federal tort remedy for anyone who disagrees with how government officials allocate resources, regulate service providers, or respond to public criticism. The Supreme Court has repeatedly cautioned against such expansive readings. *See Bray v. Alexandria*, 506 U.S. 263, 269

Page 6 -   **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**FROHNMAYER, DEATHERAGE, JAMIESON, MOORE, ARMOSINO & McGOVERN, P.C.**
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

(1993) (cautioning against definitional ploys that "would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid.")

Plaintiffs cite no authority holding that "supporters of disabled persons" constitute a cognizable § 1985(3) class in the Ninth Circuit. Their reliance on DOJ guidance about zoning discrimination against OUD clinics is a non sequitur. That guidance interprets the ADA's prohibition on discriminatory land use regulations under Title III. It does not address § 1985(3), class-based animus, or conspiracy liability.

## II.    Plaintiffs' Reliance on DOJ OUD Guidance Is Misplaced.

Plaintiffs devote several pages to DOJ guidance titled *The Americans with Disabilities Act and the Opioid Crisis: Combating Discrimination Against People in Treatment or Recovery*. They emphasize Question 8, which states: "The ADA protects individuals from discrimination based on their known association or relationship with an individual who has a disability.... The ADA also protects organizations, such as OUD treatment clinics, from discriminatory enforcement of zoning rules based on the organization's known association with or relationship to individuals with OUD." This guidance addresses a narrow question: whether municipalities may use zoning laws to exclude OUD treatment facilities based on discriminatory motives. The guidance makes clear that Title III of the ADA prohibits public accommodations (including medical facilities) from being subjected to differential treatment in land use decisions because they serve people with OUD. This is an important principle of disability accommodation law. But it has nothing to do with § 1985(3).

First, the guidance addresses *Title III public accommodations discrimination,* which is a statutory framework with its own elements, defenses, and remedies. Plaintiffs do not bring a Title III claim. They solely asserted a § 1985(3) conspiracy claim, which requires proof of an agreement,

Page 7 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

class-based animus, overt acts, and resulting injury. The elements are entirely different. Second, the guidance concerns *zoning discrimination*, which involves exclusionary land use regulations that prevent treatment facilities from operating in certain areas. The SAC does not allege Defendants used zoning laws to exclude Stabbin' Wagon. It alleges Defendants criticized Plaintiffs, opposed their grant, published their addresses, and disagreed with their approach. None of that conduct falls within Title III's prohibition on discriminatory zoning enforcement. Third, even within the zoning context, the guidance requires proof that the challenged action was taken *because of* the facility's association with disabled persons, not because of legitimate regulatory concerns, policy disagreements, or opposition to a particular organization's methods. Here, Plaintiffs specifically allege that Defendants' opposition was based on Plaintiffs' refusal to cooperate with police, their public criticism of law enforcement, their harm reduction philosophy, and their receipt of substantial public funding. Those are not allegations of disability-based animus. Plaintiffs' attempt to import Title III accommodation principles into a § 1985(3) conspiracy case is emblematic of their larger analytical error: they conflate multiple statutory frameworks, ignore the distinct elements of each, and ask this Court to create a new hybrid cause of action that exists nowhere in the law.

## III.    *Chasse v. Humphreys* Remains Persuasive and Binding.

At oral argument, City Defendants cited *Chasse v. Humphreys*, No. CV 189-HU, 2008 U.S. Dist. LEXIS 90139 (D. Or. Nov. 3, 2008), for the proposition that disabled persons are not a protected class under § 1985(3) in the Ninth Circuit. Plaintiffs devote substantial effort to distinguishing *Chasse*, but their arguments fail.

/ / /

Page 8 -   **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**FROHNMAYER, DEATHERAGE, JAMIESON, MOORE, ARMOSINO & McGOVERN, P.C.**
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

### A. *Chasse* correctly applied Ninth Circuit law.

In *Chasse*, plaintiffs alleged defendants conspired to deprive James Chasse Jr. of equal protection because of his known or perceived mental illness. The court rejected that theory, holding that the ADA "does not make disabled persons a suspect or quasi-suspect constitutional class" and that, absent controlling authority recognizing disability as a § 1985(3) class, *Cleburne*, *Garrett*, and *Lane* controlled the analysis.

Plaintiffs argue *Chasse* is distinguishable because it addressed a "disability status only theory" rather than an associational discrimination theory. But *Chasse*'s holding is not limited to direct disability discrimination. The court held that *disability itself* is not a suspect or quasi-suspect class under the Ninth Circuit's § 1985(3) framework. If disabled persons themselves do not constitute a cognizable class, then "supporters of disabled persons" certainly do not.

Plaintiffs further argue that *Chasse* "did not hold that Congress must expressly invoke § 1985(3) before a class can satisfy the congressional protection prong." But no one argues Congress must mention § 1985(3) by name. The question is whether Congress has *indicated through legislation* that a particular class requires special federal protection for purposes of equal protection *and* civil rights conspiracy law. The ADA indicates that *people with disabilities* require protection from *discrimination in employment, public services, and public accommodations*. It does not indicate that advocacy organizations or their staff members require protection from political criticism or public disagreement.

### B. Plaintiffs' theory would render *Cleburne*, *Garrett*, and *Lane* meaningless.

The Supreme Court has consistently held that disability is not a suspect or quasi-suspect classification for equal protection purposes. As the Court explained in *Cleburne*, "it would be

Page 9 -   **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

difficult to find a principled way to distinguish" people with disabilities from "the aging, the disabled, the mentally ill, and the infirm" and a host of other groups if disability were treated as a suspect class.

*Board of Trustees of University of Alabama v. Garrett* and *Tennessee v. Lane* reaffirmed this principle. These cases hold that disability classifications generally receive rational basis review, not heightened scrutiny. Plaintiffs acknowledge these cases but argue they address only "the constitutional classification question" and do not foreclose Plaintiffs' "independent congressional protection theory."

This argument misses the point. The Ninth Circuit's § 1985(3) framework asks whether the class in question has been afforded suspect or quasi-suspect status *or* whether Congress has designated the class as requiring special federal protection. The Supreme Court has answered the first question: disability is not a suspect class. Plaintiffs cannot satisfy the second question by pointing to the ADA's accommodation mandates, which regulate specific forms of discrimination in defined contexts. If Plaintiffs' theory were correct, *Cleburne*, *Garrett*, and *Lane* would be irrelevant to § 1985(3) analysis whenever Congress has passed any statute addressing a particular group. That cannot be the rule.

### C. Post-*Chasse* developments do not support Plaintiffs' theory.

Plaintiffs argue that *Chasse* "predates DOJ's 2022 OUD guidance" and does not reflect subsequent enforcement actions. But DOJ enforcement actions interpreting Title III zoning discrimination do not alter the constitutional analysis under § 1985(3). Plaintiff's position arises from accommodation and land use discrimination, not civil rights conspiracy claims.

/ / /

Page 10 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

Similarly, Plaintiffs' citation to *Black Unity v. City of Springfield* is inapposite. That case involved allegations of racial animus and race is the paradigmatic suspect class under § 1985(3). While Judge Aiken's analysis may be interesting and even insightful, it is not binding authority. *Black Unity* does not address disability as a class, associational discrimination, or advocacy organizations. It stands for the unremarkable proposition that § 1985(3) reaches conspiracies motivated by racial animus, including against supporters of racial minorities. That principle does not extend to every statutory anti-discrimination framework Congress has enacted.

## IV.    Plaintiffs' "Equal Protection Supporter" Theory Exceeds the Bounds of § 1985(3).

Plaintiffs argue extensively that § 1985(3) protects not only members of protected classes but also "supporters," "advocates," and "service providers" for such classes. They cite *Maynard v. City of San Jose*, *Waller v. Butkovich*, and *Sines v. Kessler* in support. This argument fails for several reasons.

### A.  The supporter cases involve race, a core § 1985(3) class.

The cases Plaintiffs cite involve *racial animus* which was and is the central concern of § 1985(3). In *Griffin v. Breckenridge*, the Supreme Court held that § 1985(3) reaches conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." The Court later confirmed that § 1985(3)'s "predominant purpose was to combat animus against Negroes and those who supported them."

*Maynard* involved a white employee who alleged retaliation for assisting a Black applicant in a discrimination investigation. The Ninth Circuit held the plaintiff had standing because he alleged he was targeted for supporting a member of the paradigmatic § 1985(3) class, a racial minority. The court ultimately reversed the verdict because the plaintiff failed to prove racial

Page 11 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**FROHNMAYER, DEATHERAGE, JAMIESON,**
**MOORE, ARMOSINO & McGOVERN, P.C.**
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

animus, but it did not question that supporters of racial minorities may bring § 1985(3) claims where the conspiracy is motivated by racial animus.

*Waller* and *Sines* involved allegations of conspiracies against civil rights advocates and counter-protesters in the context of racial violence and intimidation. Again, the underlying class was race. These cases do not hold that every statutory anti-discrimination framework supplies § 1985(3) standing to advocacy organizations.

The distinction matters. Congress enacted § 1985(3) during Reconstruction to combat violent conspiracies against newly freed Black citizens and those who supported them. The statute's text, history, and purpose reflect that central concern. The Supreme Court has been reluctant to extend § 1985(3) beyond race absent clear indicia that Congress intended to protect other classes from coordinated deprivations of equal protection.

### B. Plaintiffs do not allege they were targeted as supporters of a protected class.

It warrants repetition that even if the supporter theory applied outside the racial context, Plaintiffs' allegations do not fit the theory. To state a supporter-based § 1985(3) claim, the plaintiff must allege defendants identified the plaintiff *as a supporter* of the protected class and targeted the plaintiff *because of that association*.

Here, Plaintiffs allege they were targeted because they criticized police, refused to cooperate with law enforcement, organized protests, published satirical videos mocking MPD, and received substantial state funding while advocating for policy positions the City opposed. These allegations describe *political disagreement*, but have no bearing or relation to animus toward people with SUD or SMI, let alone animus toward those who serve them.

Page 12 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**FROHNMAYER, DEATHERAGE, JAMIESON, MOORE, ARMOSINO & McGOVERN, P.C.**
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

Plaintiffs admit that other organizations serving people with SUD and SMI operated in Medford without interference, including organizations with police officers on their boards. If Defendants harbored animus toward service providers for disabled persons, why did they support and collaborate with other such providers? The obvious answer is that Defendants' opposition was based on Plaintiffs' *methods, philosophy, and public criticism* - not on the population they served.

This confirms what the SAC's own allegations demonstrate: Mallory and the City Defendants opposed Stabbin' Wagon because they disagreed with its approach, not because it served people with disabilities. That opposition may have been right or wrong, fair or unfair, but it was not motivated by class-based, invidiously discriminatory animus.

### C. Extending the supporter theory to disability would convert § 1985(3) into a general federal tort statute.

If Plaintiffs' theory were adopted, any organization receiving government funding to serve any population covered by any federal anti-discrimination statute would become a protected class under § 1985(3). That would include: organizations serving racial minorities (protected under Title VI and § 1981); organizations serving women (protected under Title IX and Title VII); organizations serving religious groups (protected under Title VII and RLUIPA); organizations serving elderly persons (protected under the Age Discrimination Act); organizations serving veterans (protected under USERRA); organizations serving LGBTQ+ individuals (protected under *Bostock* and various state laws).

Under Plaintiffs' logic, any criticism of such organizations, any opposition to their funding, any disagreement with their methods, and any public commentary questioning their effectiveness could be recast as a § 1985(3) conspiracy. That result would federalize every local political dispute about resource allocation and service delivery. It would convert § 1985(3) from a Reconstruction-

Page 13 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

era remedy for violent deprivations of civil rights into a federal defamation and interference-with-business statute.

The Supreme Court has repeatedly rejected such expansive readings of § 1985(3). In *United Brotherhood of Carpenters v. Scott*, the Court held that conspiracies motivated by "economic or commercial animus" do not fall within § 1985(3), even where the plaintiff is disadvantaged. In *Bray v. Alexandria Women's Health Clinic*, the Court held that opposition to abortion, without more, did not establish sex-based animus under § 1985(3). These cases establish that § 1985(3) is not a general tort remedy for politically motivated harm.

Plaintiffs' theory cannot be reconciled with these precedents. Their argument is that because the ADA prohibits discrimination against individuals who associate with disabled persons, and because some of Stabbin' Wagon's clients have SUD or SMI, any criticism of or opposition to Stabbin' Wagon constitutes class-based animus. This reasoning proves too much. It would federalize every dispute involving any organization that serves any protected population.

## V.    Plaintiffs' State Law References Are Irrelevant to the § 1985(3) Analysis.

Plaintiffs argue that their "SAC's State Law References Show Parallels with § 1985(3)'s Core Purpose." They reference Oregon statutes addressing disability rights and assert these "demonstrate the nexus between disability status, systemic marginalization, and need for legal protection." This argument is misplaced for three reasons.

First, state statutes do not supply the "special federal protection" required under Ninth Circuit § 1985(3) law. The question is whether *Congress* has designated the class as requiring protection, not whether Oregon has enacted disability rights laws. Second, Oregon disability statutes, like the ADA, regulate specific forms of discrimination. They do not create a general § 1985(3) class for

Page 14 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

advocacy organizations or designate "supporters of disabled persons" as a protected group. Third, even if state law were relevant, Plaintiffs do not allege violations of Oregon disability discrimination statutes. They allege violations of federal civil rights law. Their invocation of state law is an attempt to import sympathetic policy considerations into a legal framework that does not recognize their theory.

**CONCLUSION**

Plaintiffs' supplemental briefing confirms the fundamental flaw in their § 1985(3) claim: they seek to transform political disagreement and policy criticism into a federal civil rights conspiracy by selectively citing accommodation statutes that have no bearing on the elements of a conspiracy claim. The ADA protects people with disabilities from discrimination in employment, public services, and public accommodations. It does not create a § 1985(3) class for advocacy organizations or transform every criticism of a service provider into class-based animus. DOJ guidance about zoning discrimination against OUD clinics does not alter the constitutional analysis required under *Griffin*, *Scott*, and Ninth Circuit law. Plaintiffs were not targeted because they served people with disabilities. They were targeted, if at all, because they vocally opposed City policy, refused to cooperate with law enforcement, criticized police practices, and received substantial public funding while engaging in advocacy the City found objectionable. That is political disagreement. It is not invidious discrimination against a protected class. For these reasons, and for all reasons stated in Defendant Mallory's Motion to Dismiss (*ECF No. 37*) and Reply (*ECF No. 44*), the Court should grant the motion and dismiss Plaintiffs' § 1985(3) claim with prejudice.

/ / /

Page 15 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

**FROHNMAYER, DEATHERAGE, JAMIESON,**
**MOORE, ARMOSINO & McGOVERN, P.C.**
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

DATED this 9th day of July, 2026.

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.,

By:  _____
**Casey S. Murdock, OSB #144914**
Murdock@fdfirm.com
Of Attorneys for Defendant Ryan Mallory

Page 16 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN
SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I served the foregoing **CAPTION** via email upon:

Alicia Leduc Montgomery
Leduc Montgomery LLC
2210 W Main Street, Suite 107, #328
Battle Ground, WA 98604
   Email:  alicia@leducmontgomery.com
*Of Attorneys for Plaintiff*

Marianne G. Dugan
Civil Liberties Defense Center
1711 Willamette St. Suite 301, #359
Eugene, OR 97401
   Email: mdugan@cldc.org
*Of Attorneys for Plaintiff*

DATED this 9th day of July, 2026.

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.,

By:  _____

**Casey S. Murdock, OSB #144914**
Murdock@fdfirm.com
Of Attorneys for Defendant Ryan Mallory

Page 17 - **DEFENDANT RYAN MALLORY'S SUPPLEMENTAL REPLY IN SUPPORT OF HIS MOTION TO DISMISS**

FROHNMAYER, DEATHERAGE, JAMIESON,
MOORE, ARMOSINO & McGOVERN, P.C.
2592 EAST BARNETT ROAD
MEDFORD, OR 97504
FAX (541) 779-6379
TELEPHONE (541) 779-2333