**Stephanie C. Kucera**, OSB No. 165509
E-Mail: sck@hartwagner.com
**Zachariah H. Allen**, OSB No. 122729
E-Mail: zha@hartwagner.com
**HART WAGNER LLP**
15 SW Colorado Avenue, Suite 375
Bend, OR 97702
Telephone: (541) 548-6044
Fax: (541) 548-6034

    Of Attorneys for Defendants City of
Medford, Brian Sjothun, Randy Sparacino,
Justin Ivens, Darrell Graham, Geoff
Kirkpatrick, Trevor Arnold and Arturo Vega

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **STABBIN WAGON,** an Oregon public benefit corporation; **MELISSA JONES,** an individual; and **SAMANTHA STRONG**, an individual,<br><br>        Plaintiffs,<br><br>   v.<br><br>**CITY OF MEDFORD,** a municipal corporation; **BRIAN SJOTHUN,** an individual; **RANDY SPARACINO,** an individual; **JUSTIN IVENS,** an individual; **DARRELL GRAHAM,** an individual; **GEOFF KIRKPATRICK,** an individual; **TREVOR ARNOLD,** an individual; **ARTURO VEGA,** an individual; **RYAN MALLORY,** an individual; and **JOHN AND JANE DOES 1-9,** individual employees or agents of the City of Medford,<br><br>        Defendants. | Case No. 1:25-cv-01632-MTK<br><br>**DEFENDANTS CITY OF MEDFORD, BRIAN SJOTHUN, RANDY SPARACINO, JUSTIN IVENS, DARRELL GRAHAM, GEOFF KIRKPATRICK, TREVOR ARNOLD AND ARTURO VEGA'S REPLY TO PLAINTIFFS' SUPPLEMENTAL RESPONSE** |

//

//

Page 1 –    **MEDFORD DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL RESPONSE**

## REPLY

Pursuant to this Court's grant of leave to file supplemental briefing at the June 23, 2026, oral argument on defendants' motions to dismiss, the Medford Defendants offer the following reply to plaintiffs' supplemental response.

### I. Plaintiffs' Supplemental Briefing Misrepresents City Defendants' Arguments.

Plaintiffs' supplemental response misrepresents City Defendants' Section 1985(3) argument.  As alleged in the second amended complaint, plaintiffs' conspiracy claim—after citing numerous state and federal statutes, including the Americans with Disabilities Act, the Rehabilitation Act, the Affordable Care Act, the McKinney-Homeless Assistance Act—asserted *both* that "[t]hese laws demonstrate a legislative intent to *protect unhoused people* as a vulnerable class," and that "[p]laintiffs thus advocate for, support, and provide services to a class of people for whom a governmental determination that *its members require and warrant special federal assistance in protecting their civil rights*[.]"  (SAC at ¶¶ 189, 190 (emphasis added).)

Because the complaint went to great lengths to establish that Stabbin' Wagon's *clients* included various protected classes for purposes of their Section 1985(3) claim, City Defendants motion to dismiss pointed out that (1) no segment of the Stabbin' Wagon's clients, no matter how characterized, was a protected class, and that, in any event, (2) plaintiffs themselves were not members of any of the various protected classes alleged to be in their clientele.  Thus, under *Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 721 (9th Cir. 1981), plaintiffs did not have standing to assert a Section 1985(3) conspiracy claim on behalf of its clients.  (ECF 35, at pp. 30–32.)

Immediately thereafter, Medford Defendants stated: "That leaves plaintiffs to rely on their *alternative theory* that they are bringing their Section 1985(3) claim 'as advocates,

**HART WAGNER LLP**
**Trial Attorneys**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

supporters, and service providers for people experiencing SUD and/or SMI disability[.]'"

(ECF 35 at p 32 (emphasis added).)  Medford Defendants pointed out that in the Ninth Circuit,

the protections of Section 1985(3) extend to protect non-racial classes in only two circumstances,

where either (1) the courts have designated the class a suspect or quasi-suspect classification, or

(2) Congress has indicated through legislation that the class warrant special federal assistance in

protecting their civil rights.  (*Id.* at p. 24) citing *DeSantis v. Pacific Telephone & Telegraph Co.,*

608 F.2d 327, 333 (9th Cir. 1979).

Thus, Medford Defendants argued, because courts do not recognize "supporters" of the

disabled as a suspect or quasi-suspect class, the question was whether Congress had enacted

legislation showing that disability supporters constituted a "class" warranting special federal

assistance in protecting their civil rights: "The United States Congress has not indicated through

legislation *that plaintiffs* (or Stabbin' Wagon's clients) belong to a class requiring federal

protection or special assistance in protecting their civil rights."  (ECF 35, pp. 33–34.)

In response to this clear argument about the "alternative" theory, plaintiffs did not present

*any* argument or authority attempting to show a congressional determination that *supporters* of

the disabled required special protections, instead presenting an argument headed: "Congress

made a governmental determination that *disabled people* require special federal assistance in

protecting their rights."[1]  (ECF at p. 23.)  Nothing under that heading, or anywhere else in the

---

[1] In their supplemental briefing, plaintiffs continue to misunderstand and mischaracterize
defendants' position.  *Compare* ECF 50 at p 8 (referring to "Defendants' narrow framing that
Plaintiffs' advocacy for disabled persons is legally unprotected unless Plaintiffs themselves are
not members of the disabled class") *with* ECF 35 at p 32 (because plaintiffs do not allege that
they themselves are disabled, "*[t]hat leaves plaintiffs to rely on their <u>alternative theory</u> that
they are bringing their Section 1985(3) claim 'as advocates, supporters, and service providers
for people experiencing SUD and/or SMI disability[.]*'" (Emphasis added.)).

Page 3 –    **MEDFORD DEFENDANTS' REPLY TO PLAINTIFFS'
SUPPLEMENTAL RESPONSE**

**HART WAGNER LLP**
**Trial Attorneys**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

response brief, was responsive to Medford Defendants' argument that Congress had not passed legislation affording special protection to disability advocates sufficient to assert a Section 1985(3) claim.

## II.     Plaintiffs' Supplemental Arguments Relying on the ADA Defeat Their Conspiracy Claim.

At oral argument, and now in their supplemental response, plaintiffs try to remedy that omission by citing a 2022 guidance document from an *executive* agency, the U.S. Department of Justice's Civil Rights Division.  The Ninth Circuit does not recognize executive agency "guidance" as a basis for recognizing a "class" entitled to assert a Section 1985(3) claim.[2] *Sever v. Alaska Pulp. Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  The same is true of the executive agency rules that plaintiff offers; these are not a determination by "Congress" that advocates of the disabled require "special protection."  *Id.*

Plaintiffs also point to two statutes in the Americans With Disabilities Act (that they could have included with their original response to City Defendants' motion to dismiss), arguing that these supply the congressional determination needed to extend the protections of Section 1985(3) to them.  The first, 42 U.S.C. § 12112(b)(4), covers discrimination in the *employment context*: "No covered entity shall discriminate against a qualified individual on the basis of

---

[2] Nor, in any event, does this guidance apply Stabbin' Wagon or any of its clients: "The Department of Justice… has responded with a comprehensive approach prioritizing prevention, enforcement, and treatment.  This includes enforcing the Americans with Disabilities Act (ADA), which prohibits discrimination against people in recovery from opioid use disorder (OUD) *who are not engaging in illegal drug use, including those who are taking legally-prescribed medication to treat their OUD.*"  https://archive.ada.gov/opioid_guidance.pdf  at p. 1 (emphasis added).  The irony is too much to go unstated.  Plaintiffs are invoking DOJ guidance about drug treatment that plaintiffs' "service model"—which includes the facilitation of illegal drug use—*eschews*:  recovery, legally prescribed treatment medication, and refraining from illegal drug use.  *See* SAC at ¶ 59 (Stabbin' Wagon's harm-reduction services do not require "abstinence," and respects drug user's "autonomy and self-determination rather than pressuring people into treatment.'").

**HART WAGNER LLP**
**Trial Attorneys**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[3] The second, under Title III of the ADA, prohibits *private entities* discriminating against denying access to public accommodations based on a person's "association" with a disabled person. 42 U.S.C. § 12182(b)(1)(E).

This is not an employment case, and the Medford Defendants—all alleged to be acting within the scope of their employment with the City—are not private entities under the ADA. This case has nothing to do either with whether plaintiffs were denied "equal jobs or benefits" or "public accommodations" by a private entity.

Plaintiffs do not assert otherwise, but instead contend that these statutes reflect a general congressional concern for supporters of the disabled, such that their alleged status as disability supporters constitutes a "class" that Congress has determined is entitled to the "special protection" of a Section 1985(3) claim to enforce their "civil rights."

This argument fails because plaintiffs do not allege—do not even argue—that any of their rights under the ADA were violated. The reason that the white plaintiff in *Maynard v. City of San Jose*, 37 F.3d 1396, 1403 (9th Cir. 1994) was able to claim membership in a protected class of "supporters" of a black colleague was because he had alleged that the defendants had *actually violated his congressionally enacted rights*, *viz.*, a statute that barred retaliation against individuals assisting workplace discrimination investigations. *Id.* (citing Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a). *See Id.* at 1400 ("[Plaintiff] brought federal civil rights claims, in which he asserted that the defendants retaliated against him because he aided a Black

---

[3] Subsection (b)(4) extends this prohibition to excluding or otherwise denying "equal jobs or benefits" to an individual based on their association with a disabled individual.

Page 5 –    **MEDFORD DEFENDANTS' REPLY TO PLAINTIFFS'
SUPPLEMENTAL RESPONSE**

**HART WAGNER LLP**
Trial Attorneys
15 SW Colorado Avenue, Suite 375
Bend, Oregon 97702
Telephone: (541) 548-6044

person….").  It was because the *Maynard* plaintiff had alleged a retaliation claim under Title VII, based on discrimination aimed at support for a racial minority—*i.e.*, the core group that Section 1985(3) was enacted to protect—that he was deemed to fall within a "class" that Congress had enacted "special protections" for.

Plaintiffs, by contrast, cannot plausibly claim that they fall within a "class" specially protected by Congress in the ADA, without ever having claimed—or even argued—that their rights under the ADA were *actually violated.*  Put another way, plaintiffs—definitionally—fall outside the "class" Congress set out to protect under the ADA because they do not claim that their rights under the ADA were violated.  The ADA embodies a comprehensive determination about when supporters of disabled individuals are entitled to statutory protections.  *See Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999) (finding that Title II of the ADA was congruent and proportional and "targeted to remedy and prevent irrational discrimination against people with disabilities" and that "Congress made extensive factual findings regarding the widespread arbitrary and invidious discrimination which disabled people face.  *See* 42 U.S.C. § 12101(a). The ADA's particular provisions for each sector then indicate specifically the discrimination which is forbidden and the conduct needed to remedy the discrimination.").  Plaintiffs cannot logically claim that the ADA embodies a congressional determination that *they* belong to a class entitled to special protection by reference to statutory protections that *plaintiffs do not assert that they qualify for*.

Plaintiffs' position is also in conflict with the fact that plaintiffs could not assert Section 1985(3) or (Section 1983) conspiracy claims based on alleged violations of the ADA, because the ADA, like Title VII, provides its own comprehensive remedial scheme.  *Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1016 (N.D. Cal 2014) ("[E]ven if Plaintiff had sufficiently pled his

Page 6 –    **MEDFORD DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL RESPONSE**

**HART WAGNER LLP**
**Trial Attorneys**
**15 SW Colorado Avenue, Suite 375**
**Bend, Oregon 97702**
**Telephone: (541) 548-6044**

conspiracy claim, it is not cognizable under § 1985 because the Age Discrimination Act has its own comprehensive remedial structure."); *Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 U.S. Dist. LEXIS 105990, at *15 (E.D. Cal. June 13, 2022) (dismissing Section 1985(3) claim based on alleged ADA violations, stating: "plaintiff cannot assert civil rights claims premised on alleged violations of Title II of the ADA because the ADA has its own comprehensive remedial schemes for such violations."); *Sauter v. State of Nevada*, No. 97-15795, 1998 U.S. App. LEXIS 8017, 1998 WL 196630, at *1 (9th Cir. 1998) (memorandum) (section 1985 claims of a conspiracy to violate ADA rights are not cognizable because Title II has its own remedial structure); *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) (holding that the comprehensive remedial scheme of Title II of the ADA barred a claim under § 1983 for ADA Title II violations); *Okwu v. McKim*, 682 F.3d 841, 846 (9th Cir. 2012) ("By drafting a comprehensive remedial scheme for employer's violations of ADA Title I, Congress manifested an intent to preclude § 1983 remedies."); *Garity v. Apwu Nat'l Labor Org.*, 655 F. App'x 523, 526 (9th Cir. 2016) ("Both Garity and APWU agree with the district court that 42 U.S.C. § 1985 'may not be invoked to redress violations' of anti-discrimination statutes like Title VII and the ADA."); *Brownfield v. Yellow Freight Sys.*, No. 98-15775, 1999 U.S. App. LEXIS 13498, at *4 (9th Cir. June 17, 1999) ("The district court properly dismissed Brownfield's conspiracy claims brought under 42 U.S.C. § 1985(3) because the subsection creates no substantive rights and there are no possible violations of federal rights remaining with regard to any of the defendants.").

The rule underlying these decisions is that "Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S. Ct. 2345 (1979). As seen, Section 1985(3) does not provide an additional "remedy" to the "class" of disability supporters who have

Page 7 – **MEDFORD DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL RESPONSE**

*actually been harmed by an ADA violation.* It is illogical to conclude that plaintiffs—who have no claim under the ADA—are nonetheless entitled to invoke the ADA as the basis for affording them a supplemental Section 1985(3) remedy for alleged *constitutional violations.*

## CONCLUSION

With their supplemental guidance, statutes, and regulations, plaintiffs have shown, at most, that Congress legislated in the area of discrimination against supporters of the disabled. But plaintiffs cannot show that Congress intended to afford them the status of a "class" entitled to invoke the "special protection" of a Section 1985(3) conspiracy claim, when (1) plaintiffs do not allege any ADA violation, and, even if they had, (2) Section 1985(3) would not afford them any additional remedy.

For those reasons—and all of those previously asserted by defendants—the motions to dismiss should be granted.

DATED this 9th day of July, 2026.

HART WAGNER, LLP

By:  */s/ Zachariah H. Allen*

Stephanie C. Kucera, OSB No. 165509
sck@hartwagner.com
Zachariah H. Allen, OSB No. 122729
zha@hartwagner.com
*Attorney for Defendants City of Medford, Brian Sjothun, Randy Sparacino, Justin Ivens, Darrell Graham, Geoff Kirkpatrick, Trevor Arnold, and Arturo Vega*

Page 8 –   **MEDFORD DEFENDANTS' REPLY TO PLAINTIFFS' SUPPLEMENTAL RESPONSE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of July, 2026, I served the foregoing **DEFENDANTS CITY OF MEDFORD, BRIAN SJOTHUN, RANDY SPARACINO, JUSTIN IVENS, DARRELL GRAHAM, GEOFF KIRKPATRICK, TREVOR ARNOLD AND ARTURO VEGA'S REPLY TO PLAINTIFFS' SUPPLEMENTAL RESPONSE** on the following parties at the following addresses:

Alicia LeDuc Montgomery
LeDuc Montgomery LLC
2210 W. Main St., Ste 107 #328
Battle Ground, WA  98604
alicia@leducmontgomery.com

Marianne Dugan
Civil Liberties Defense Center
1711 Willamette St., Ste 301 No. 359
Eugene, OR  97402
mdugan@cldc.org

*Attorneys for Plaintiffs*

Casey Murdock
Frohnmayer, Deatherage, Jamieson,
 Moore, Armosino & McGovern, PC
2492 E. Barnett Road
Medford, OR  97504
murdock@fdfirm.com

*Attorney for Defendant Ryan Mallory*

by electronic means through the Court's Case Management/Electronic Case File system.

/s/ Zachariah H. Allen
Zachariah H. Allen, OSB No. 122729

Page 1 – **CERTIFICATE OF SERVICE**